UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

KELLY BROWN and TIFFANY STEWART,
*individually and on behalf of all others similarly
situated, as Class/Collective representative*,

                                        Plaintiffs,

                    -against-

BARNES AND NOBLE, INC.,

                                        Defendant.

-----------------------------------------------------------------X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
DOC #:_____
DATE FILED: _5/2/2017_

**OPINION AND ORDER**

**16-cv-07333 (RA) (KHP)**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Plaintiffs, individually and on behalf of all others similarly situated, assert that

Defendant Barnes & Noble, Inc. violated the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*.,

by failing to compensate its Café Managers ("CMs") for hours worked in excess of forty hours

per week. Plaintiffs now move for conditional certification of their FLSA claims as a collective

action and for leave to disseminate notice to the putative FLSA collective, pursuant to 29 U.S.C.

§ 216(b). For the reasons stated below, Plaintiffs' motion is denied without prejudice.

## BACKGROUND

Defendant owns and operates 634 bookstores in all 50 states. Defendant operates a

Barnes & Noble Café, where customers may purchase coffee and other drinks, food, and baked

goods, in 583 of its stores. Defendant employs a CM in each café. Excluding California,

Defendant has employed approximately 1,100 individuals as CMs in the past three years.[1]

---

[1] Defendant has not classified CMs in California as exempt within the past three years. Thus, the term "CM" is used throughout as excluding CMs who were employed in California during the relevant time period.

Defendant also employs hourly café employees, called "Café Servers," at all of its locations, as well as one or two "Café Leads" in many stores.[2] Café Servers and Café Leads report to the CM.

According to Defendant, CMs are management employees whose primary function is to manage the day-to-day operations of the cafés.[3] The CM job description summarizes the CM position as follows:

> As a Café Manager, you are responsible for the daily operations of the Café, ensuring consistency with our bookselling culture, world-class customer service focus, digital initiatives, and merchandising standards. You lead by example and foster an employee-centric environment and focus Café servers on maximizing sales and productivity through the delivery of our four core service principles in the Café. You select, hire and develop café servers, ensuring a talent bench which reflects the communities we serve.

(Doc. No. 27-8.) The CM job description also lists 14 "Essential Functions," including, *inter alia*:

- Manage and execute the daily operations of the Cafe; execute e-Planner to standard; customize, communicate, delegate, perform, and follow up on all tasks as the business demands.

- Drive sales by coaching and counseling Cafe servers to deliver the four core service principles in the Cafe: provide timely and friendly café[] service, upsell, maintain product presentation standards, and maintain Cafe cleanliness.

- Coach and communicate with the Cafe servers about all our products and services, enthusiastically model selling behavior, share technical knowledge, and provide recommendations about ways to connect our customers with the right products.

- Ensure that product quality and Cafe standards are executed and maintained; manage inventory levels, receiving, purchasing, waste control, and equipment maintenance and repair.

---

[2] Café Leads work in an intermediate role between the CMs and Café Servers. According to Defendant, Café Leads are responsible for the same tasks as Café Servers, but they also assist CMs with some administrative, supervising, or training functions. Plaintiffs do not dispute that Café Servers and Café Leads report to CMs.

[3] Some CMs have additional responsibilities as Café Training Managers. The distinction between CMs and Café Training Managers is not material to this Court's decision.

- Select, interview, and recommend the hiring of new Cafe servers; oversee and monitor the new hire orientation and training process, ensuring a smooth acclimation to the store and our bookselling culture in partnership with the store manager.

- Prepare and deliver performance reviews to Cafe servers; coach and counsel them on performance issues and take appropriate corrective action in partnership with the store manager.

- Maintain facility's conditions and take immediate action to correct any maintenance issues.

(Doc. No. 27-8.)

Prior to September 2016, Defendant classified CMs as exempt from the overtime provisions of the FLSA. CMs received an annual salary and were eligible for performance bonuses based on their café's performance. In September 2016, Defendant reclassified the CM position as non-exempt under the FLSA.

That same month, on September 20, 2016, Plaintiffs commenced this action alleging that they had been improperly classified as exempt employees. Plaintiffs claim that they regularly worked more than 40 hours per week and were improperly denied overtime compensation under the FLSA. Plaintiffs also bring claims under the Illinois and New York wage and hour laws.

Named Plaintiff Kelly Brown was employed as a CM in two of Defendant's Illinois stores from September 2012 to February 2015.[4] Eight additional Plaintiffs subsequently filed forms

---

[4] The other Named Plaintiff, Tiffany Stewart, has asserted claims only under the New York Labor Law, not the FLSA. The Court notes that Stewart's claim under the FLSA appears to be time-barred, as her employment with Defendant ceased in September 2013. Stewart has not consented to join this action for FLSA purposes and did not submit a declaration in support of this motion. Accordingly, this Court gives little weight to Stewart's allegations in the Complaint in connection with this motion because (i) Stewart has not asserted an FLSA claim, and (ii) her allegations have no bearing on the issue of whether all CMs across the nation are similarly situated to the Named Plaintiffs between November 22, 2013 and September 2016, the time period for which the Named Plaintiffs seek conditional certification.

consenting to become a party in this FLSA action. These eight Plaintiffs were employed as CMs in various stores located in Illinois, Connecticut, Arizona, Rhode Island, South Carolina and North Carolina at varying times between 2005 and April 2016.[5] Based on the evidence presented to the Court, none of the Plaintiffs are currently employed by Defendant. Plaintiff Christopher Corrado was the last Plaintiff to terminate his employment with Defendant in April 2016; thus, none of the Plaintiffs were employed between April 2016 and September 2016, a portion of the class period that Plaintiffs seek to certify.

On November 22, 2016, Plaintiffs moved to conditionally certify a FLSA collective action consisting of all individuals employed as CMs nationwide since November 22, 2013. In support of the motion, six Plaintiffs submitted declarations with nearly identical, cursory descriptions of their work for Defendant. Plaintiffs uniformly assert that their "primary duties" involved the performance of non-exempt tasks, such as "making coffee and other beverages, preparing food, serving customers, working on the cash register, and cleaning the café." (Doc. No. 27-2, ¶ 9; *see also* Doc. No. 27-3, ¶ 9; Doc. No. 27-4, ¶ 11; Doc. No. 27-5, ¶ 9; Doc. No. 27-6, ¶ 8; Doc. No. 27-7, ¶ 9.) Plaintiffs claim that they spent the "majority of [their] time performing these duties." (*Id.*) They also allege that the primary duties of the CM position "did not involve management of any other employees of [Barnes & Noble]," and that their "primary duties" did

---

[5] Following Plaintiffs' motion for conditional certification, three additional Plaintiffs—Tamira Murphy, Danielle Warner, and Kimberly Hegelund—filed forms consenting to join as a party in this case. Plaintiffs did not submit declarations from any of these three individuals. Plaintiffs' counsel has represented that Plaintiff Murphy worked in South Carolina and Plaintiff Warner worked in North Carolina, but counsel did not identify their dates of employment. Plaintiffs' counsel also did not submit any information regarding where or when Plaintiff Hegelund was employed as a CM. The Court also notes that a CM in Pennsylvania previously asserted similar misclassification claims under state law. *See Hartpence v. Barnes & Noble, Inc.*, No. 16-cv-04034 (E.D. Pa.).

not include hiring, firing, promoting or setting the rates of pay for other employees. (Doc. No. 27-2, ¶ 11; *see also* Doc. No. 27-3, ¶ 11; Doc. No. 27-4, ¶ 13; Doc. No. 27-5, ¶ 11; Doc. No. 27-6, ¶ 10; Doc. No. 27-7, ¶ 11.) Plaintiffs further allege that they are aware of other CMs at different locations who also performed the same or similar "primary duties."

Plaintiffs also contend that Defendant maintained detailed policies, procedures, and rules that controlled how CMs performed their duties and established uniform operating standards for the stores and cafés. As examples, Plaintiffs allege there are policies governing how to perform customer service, the pricing of café products, how to prepare the food and beverages sold in the café, how to process register transactions, what types of food and drinks are sold in the café, and the hours of operation at the café, among other things. Plaintiffs did not, however, submit copies of any of these policies as part of their motion.

In opposition to Plaintiffs' motion, Defendant submitted performance reviews for several of the Plaintiffs and the "Café Manager Competency Model," which sets forth the skills CMs are expected to possess and against which their performance is assessed. Defendant also annexed emails from Plaintiff Brown which show that she planned the work schedules for café employees and conducted performance assessments of café workers.[6]

---

[6] Defendant also submitted declarations from 12 CMs who describe their duties in detail—duties that are consistent with the job description for the CM position—and contradict Plaintiffs' assertions as to the nature of the CM position. While this evidence suggests that Plaintiffs may ultimately struggle on the merits of their claims, this Court does not rely on these declarations in reaching its decision on the instant motion. *See Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (at the conditional certification stage, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.").

## DISCUSSION

### I. LEGAL STANDARD

#### A. *The FLSA And The Executive Exemption*

The FLSA states in relevant part that:

> no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). Employees who work in a "bona fide executive . . . capacity" are exempt

from the FLSA's overtime requirements. 29 U.S.C. § 213(a)(1). Employees are classified as an

executive if:

> 1) they are "[c]ompensated on a salary basis"; 2) their "primary duty is management of the enterprise ... or of a customarily recognized department or subdivision thereof"; 3) they "customarily and regularly direct[ ] the work of two or more other employees"; and 4) they "ha[ve] the authority to hire or fire other employees or" if their "suggestions and recommendations" on personnel decisions "are given particular weight."

*Myers v. Hertz Corp.*, 624 F.3d 537, 548 (2d Cir. 2010) (citing 29 C.F.R. § 541.100(a)(1)-(4)). The

FLSA regulations list a non-exclusive set of characteristic "management" activities that can

determine whether an employee's "primary duty is management." *Id.*

#### B. *Collective Action Certification*

Section 216(b) of the FLSA provides that parties suing for unpaid overtime

compensation under Section 207 may proceed "for and in behalf of himself or themselves and

other employees similarly situated." 29 U.S.C. § 216(b). A proceeding brought under Section

216 is traditionally referred to as a "collective action." *Jenkins v. TJX Cos. Inc.*, 853 F. Supp. 2d

6

317, 320 (E.D.N.Y. 2012). Although the statute itself does not prescribe the process for

collective action approval, "district courts have discretion, in appropriate cases, to implement

29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." *Hoffman-La Roche Inc. v.*

*Sperling*, 493 U.S. 165, 169 (1989). Orders authorizing notice to potential collective action

members are often referred to as orders conditionally "certifying" a collective action, even

though the FLSA itself does not mandate certification. *See, e.g., Guillen v. Marshalls of MA, Inc.*,

750 F. Supp. 2d 469, 475 (S.D.N.Y. 2010) ("*Guillen I*"); *Myers*, 624 F.3d at 555, n.10. Accordingly,

the dissemination of notice in an FLSA collective action is a case management tool that courts

may employ in "appropriate cases," including where notice will facilitate swift and economic

justice. *See id.*

The Second Circuit has endorsed a two-stage process for certification of a collective

action under Section 216(b) of the FLSA. *Myers*, 624 F.3d at 554-55. "The first step involves the

court making an initial determination to send notice to potential opt-in plaintiffs who may be

'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has

occurred." *Id.* at 555. Plaintiffs can meet this burden by making "a modest factual showing

sufficient to demonstrate that they and potential plaintiffs together were victims of a common

policy or plan that violated the law." *Guillen I*, 750 F. Supp. 2d at 475 (quoting *Hoffman v.*

*Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); *see also Myers*, 624 F.3d at 555 ("In a FLSA

exemption case, plaintiffs accomplish this by making some showing that "there are other

employees . . . who are similarly situated with respect to their job requirements and with

regard to their pay provisions, on which the criteria for many FLSA exemptions are based, who

7

are classified as exempt pursuant to a common policy or scheme."). If the Court finds that the potential plaintiffs appear to be similarly situated, it will issue notice and permit the case to proceed through discovery as a collective action. *Lynch*, 491 F. Supp. 2d at 368.

Because certification at this early juncture is merely "preliminary" and subject to reevaluation on a fuller record, a plaintiff's burden is low. *Id.* at 368. At this initial stage, the "court need not evaluate the underlying merits of a plaintiff's claims to determine whether the plaintiff has made the minimal showing necessary for court-authorized notice." *Damassia v. Duane Reade, Inc.*, No. 04-cv-8819 (GEL), 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006). However, certification is not automatic. *See, e.g., Guillen I*, 750 F. Supp. 2d at 476-80 (denying certification at the first stage); *Ahmed v. T.J. Maxx Corp.*, 103 F. Supp. 3d 343, 349-57 (E.D.N.Y. 2015) (affirming the denial of conditional certification). Although plaintiffs' factual showing is modest, it cannot be satisfied by unsupported assertions or conclusory allegations. *See Myers*, 624 F.3d at 555; *Morales v. Plantworks, Inc.*, No. 05-cv-2349 (DC), 2006 WL 278154, at *2-3 (S.D.N.Y. Feb. 2, 2006).

At the second stage, the district court conducts a more stringent analysis, based on the record developed through discovery, to determine whether the collective action shall proceed. *Myers*, 624 F.3d at 555. The action may be "de-certified" if the record reveals that the plaintiffs who have opted in are not actually "similarly situated" to the named plaintiffs, and the opt-in plaintiffs' claims may be dismissed without prejudice. *Id*. This second stage inquiry is more stringent because the court "is able to examine whether the *actual* plaintiffs brought into the case are similarly situated." *Gortat v. Capala Brothers, Inc*., No. 07-cv-3629 (ILG), 2010 WL

1423018, at *10 (E.D.N.Y. Apr. 9, 2010) (emphasis in original); *see also Glatt v. Fox Searchlight*

*Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016).

Finally, to warrant certification of a nationwide collective action in a case where

plaintiffs challenge the exempt classification of their position, plaintiffs must ultimately

"demonstrate a nationwide policy pursuant to which [CMs] are assigned duties that render

[Defendant's] exempt classification inappropriate." *Jenkins*, 853 F. Supp. 2d at 321 (citing

*Vasquez v. Vitamin Shoppe Indus. Inc.*, No. 10-cv-8820 (LTS) (THK), 2011 WL 2693712, at *3

(S.D.N.Y. July 11, 2011) ("As Plaintiff proposes a nationwide class, he bears the burden of

showing a nationwide policy or plan pursuant to which [Store Managers] are assigned duties

that render inappropriate Vitamin Shoppe's exempt classification of the [Store Manager]

position.")).

## II.     APPLICATION OF THE LEGAL STANDARD

Plaintiffs here seek conditional certification of a collective action comprised of all

individuals who were employed as a CM nationwide from November 22, 2013 through

September 2016. They assert that conditional certification is warranted because: (i) all CMs

were subject to Defendant's common policy of classifying CMs as exempt under the FLSA; (ii)

Defendant used a single job description for all CMs; and (iii) Defendant maintained uniform

corporate policies and procedures. They also rely on Defendant's alleged practice of leanly

staffing its cafes, as well as the number and geographic distribution of the Plaintiffs who have

joined the suit, as supporting certification. These assertions, and Plaintiffs' submissions

supporting them, however, fall short of the modest standard of proof needed to conditionally certify a collective action.

### A.   *Classification as Exempt*

First, Defendant's classification of CMs as exempt, standing alone, is insufficient to satisfy the low threshold for conditional certification. *See Costello v. Kohl's Illinois*, No. 13-cv-1359 (GHW), 2014 WL 4377931, at *4 (S.D.N.Y. Sept. 4, 2014) ("Plaintiffs cannot meet their burden for conditional certification merely by pointing to the fact that the employer has classified all employees in a particular job category as exempt."). Numerous courts in this Circuit have held that "the mere classification of a group of employees—even a large or nationwide group—as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes." *Jenkins,* 853 F. Supp. 2d at 323 (rejecting plaintiff's argument that conditional certification requires merely showing that plaintiff and the putative class were subject to the unlawful application of a facially lawful policy) (citation omitted); *see also Ahmed*, 103 F. Supp. 3d at 351 (stating that district courts in this Circuit have routinely concluded that "the mere fact of a common FLSA-exempt designation, job description or uniform training is insufficient to find [assistant store managers] 'similarly situated' for FLSA purposes"); *Vasquez*, 2011 WL 2693712, at *4 (citing *Bramble v. Wal-Mart Stores, Inc*., No. 09-cv-4932 (TNO), 2011 WL 1389510, at *4 (E.D. Pa. Apr. 12, 2011)).

Plaintiffs also contend that Defendant's decision to reclassify CMs as non-exempt employees in September 2016 supports conditional certification. For the same reason why

courts will not automatically certify a collective action simply because a group of employees are classified as exempt, *see Ahmed,* 103 F. Supp. 3d at 351, Defendant's reclassification of the CM position also is insufficient to justify conditional certification absent other evidence establishing that Plaintiffs and the potential class are similarly situated. *See Raniere v. Citigroup*, 827 F. Supp. 2d 294, 322 (S.D.N.Y. 2011), *rev'd on other grounds,* 533 F. App'x 11 (2d Cir. 2013). Moreover, there could be many legitimate business reasons for an employer to reclassify employees, including changes to the corporate structure, changes to the CM job, or anticipated regulatory changes. Plaintiffs have not presented any evidence regarding why Defendant reclassified the CM position, and this Court declines to speculate on this point.

      B.   ***Job Description***

      Second, use of a common job description does not mean that conditional certification is *per se* warranted in every case. *See Nabi v. Hudson Grp. (HG) Retail,* LLC, 310 F.R.D. 119, 124 (S.D.N.Y. 2015) ("The mere fact that Defendants created a uniform job description for this position and that operations managers may perform some of the same tasks at commuter station newsstands nationally is insufficient to create an inference that operations managers are generally misclassified."); *Costello*, 2014 WL 4377931, at *4; *Guillen I*, 750 F. Supp. 2d at 476-77; *Khan v. Airport Mgmt Servs.*, No. 10-cv-7735 (NRB), 2011 WL 5597371, at *4 (S.D.N.Y. Nov. 16, 2011). Indeed, as the court observed in *Costello*, "if a uniform job description by itself was sufficient, every business in corporate America would be subject to automatic certification of a nationwide collective action on the basis of the personal experiences of a single misclassified employee." 2014 WL 4377931, at *4.

In this case, the common CM job description is of little utility in assessing whether Plaintiffs are similarly situated to all CMs nationwide. *See Guillen I*, 750 F. Supp. 2d at 476; *Costello*, 2014 WL 4377931, at *4. This is because Plaintiffs do not argue that the CM job description in and of itself describes a non-exempt position. Rather, Plaintiffs allege that, in practice and contrary to the job description's listing of essential CM duties, their primary duties were non-exempt tasks that are not listed in the job description, such as making beverages and food, serving customers, working on the cash register, and cleaning and organizing the café. Thus, they contend they should have been classified as non-exempt because they did not perform the exempt duties listed in the job description. It is not enough for Plaintiffs to point to the job description as evidence that all CMs perform similar duties when, under Plaintiffs' own theory of the case, the job description did not accurately reflect the duties they personally performed. *See Guillen v. Marshalls of MA, Inc.* ("*Guillen II*"), 841 F. Supp. 2d 797, 800-01 (S.D.N.Y. 2012) ("Obviously, [plaintiff's] pointing to a common policy at Marshalls regarding the job duties of ASMs provides no proof that other ASMs are performing non-exempt duties, particularly given that all policies and writings from Marshalls dictate just the opposite."), *adopted*, No. 09-cv-9575 (LAP) (GWG), 2012 WL 2588771 (S.D.N.Y. July 2, 2012).

Further, Plaintiffs' declarations describe their day-to-day responsibilities as CMs in the vaguest of ways, and their factual allegations use self-serving legal terms of art. For example, Plaintiffs recite a handful of tasks that they claim are their "primary duties" because they "spent the majority of [their] time performing these duties." (*See, e.g.,* Doc. No. 27-2, ¶ 9.) While the amount of time spent on certain tasks is a factor used in determining what an

employee's primary duties are, "[t]ime alone . . . is not the sole test." 29 C.F.R. § 541.700(a)-(b)

("nothing in this section requires that exempt employees spend more than 50 percent of their

time performing exempt work"). Similarly, Plaintiffs summarily deny that their "primary duties"

involved "management," but explain this denial only by stating that their "primary duties did

not include hiring, firing, promoting other employees of B&N, or setting their rates of pay."

(*See, e.g.,* Doc. No. 27-2, ¶ 11.) Plaintiffs do not address whether they performed other duties

that fall under the broad definition of "management," including the numerous activities

enumerated in the FLSA regulations. *See* 29 C.F.R. § 541.102 (explaining that management

includes, *inter alia*, training employees, directing the work of employees, adjusting hours of

work, appraising employees' performance, and apportioning work among employees).

   Based on the performance reviews of some of the Plaintiffs, it appears that they may

have omitted from their declarations certain managerial-type tasks that they performed that

are included on the CM job description, such as developing and training hourly employees (*see*

Doc. No. 37-5), counseling employees regarding performance issues (*id.*), "determining the right

hires" (*id.*), and conducting workload planning (*see* Doc. No. 37-7), among other duties.

Plaintiffs do not dispute that the performance evaluations annexed to Defendant's opposition

are the reviews they received.

   Finally, Plaintiffs do not allege that Defendant trained CMs to engage in non-exempt

work instead of carrying out the responsibilities enumerated in the CM job description. *Cf*

*Costello*, 2014 WL 4377931, at *5 (granting conditional certification where plaintiffs presented

13

evidence that defendant's corporate documents and training materials directed managers to perform at least some non-exempt work).

In sum, neither the job description itself, nor Plaintiffs' conclusory and potentially incomplete descriptions of their duties, support Plaintiffs' theory that all CMs nationwide primarily performed non-exempt work.

### C. *Corporate Policies*

The corporate "policies, procedures, and work rules" to which Plaintiffs point also do not aid Plaintiffs' motion. (*See* Doc. No. 40, p. 1.) Plaintiffs contend in their motion papers that Defendant maintains uniform comprehensive policies, procedures, and work rules that govern how CMs perform their jobs, including the performance of customer service, pricing of items, preparation of food and beverages, processing register transactions and the hours of café operations. However, Plaintiffs did not provide copies of these policies, procedures or rules to the Court in connection with their motion. They also fail to meaningfully describe the content of these supposedly "uniform policies and procedures" and explain how they relate to Plaintiffs' claim that CMs' primarily perform non-exempt duties in contravention of the CM job description. *See Guillen I*, 750 F. Supp. 2d at 477-78. Furthermore, it is not clear whether the policies Plaintiffs reference are nationwide, regional, or even set on an individual store basis. At least one of the policies identified by Plaintiffs, Defendant's "policy" governing the cafés' operating hours, varies by store. (*See, e.g.,* Doc. No. 27-5, ¶ 2 (describing how Plaintiff Margaret Mann worked in two café locations that had different operating hours).)

Further, many of the policies identified in Plaintiffs' declarations have no apparent nexus to Plaintiffs' claim that Defendant improperly classified CMs as exempt employees. For example, Plaintiffs state that Defendant maintains "uniform" policies concerning the pricing for café goods or the preparation of food/beverages. But, Plaintiffs do not contend that these policies direct CMs to personally run the registers or prepare café food/beverages all day instead of carrying out the managerial responsibilities listed in their job description. For certification purposes, there is certainly a distinction between a policy that describes the steps a barista should follow in making a latte and a policy that instructs CMs to spend their days making lattes instead of performing managerial responsibilities. This Court cannot conclude, based on the sparse evidentiary record before it, that Defendant's operational policies directed CMs nationwide to perform principally non-exempt work. *Guillen I,* 750 F. Supp. 2d at 475 (at the conditional certification stage, plaintiff must make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.").

Plaintiffs further allege in their Amended Complaint that: "[i]n order to minimize labor costs, [Barnes & Noble] staffs its cafés leanly and strictly manages hours worked by non-exempt, hourly café workers to avoid paying them overtime. To compensate for this deliberate understaffing, [Barnes & Noble] relies heavily on its salaried CMs to staff the cafés when there are not enough hourly employees to properly do so." (Doc. No. 18, ¶ 6.) While a corporate policy shifting non-exempt work from hourly employees to managers may justify conditional certification in some cases, *see Indergit v. Rite Aid Corp.*, No. 08-cv-9361 (PGG), 2010 WL

2465488, at *5-7 (S.D.N.Y. June 16, 2010), Plaintiffs have not presented this Court with any evidence that such a policy exists in this case, aside from the vague and factually unsupported allegation in the Amended Complaint. Plaintiffs also do not address this alleged understaffing practice in their declarations or motion papers. For example, they have not explained what the alleged "lean staffing" practice specifically entails, how it is implemented, or whether it is even a company-wide practice (*i.e.,* whether it is applicable to all CMs). It appears, based on the information presented to this Court, that café staffing is inextricably intertwined with café hiring, a responsibility that Plaintiffs contend store managers "always had the final say over." (*See, e.g.,* Doc. No. 27-2, ¶ 11.) Each store also appears to handle scheduling for its own café employees, including, in some cases, where the CM is responsible for creating an appropriate schedule. (*See* Doc. No. 37-11.)

Thus, to the extent Plaintiffs rely on *Indergit v. Rite Aid Corp.* in support of their motion, their reliance is misplaced. In *Indergit*, the court conditionally certified a national class of managers, but relied upon declarations and corporate documents evidencing that Rite Aid was trying to raise profits by consistently limiting work hours for hourly employees and shifting the non-exempt work previously performed by hourly employees to managers. 2010 WL 2465488, at *5-6. The plaintiff in *Indergit* also submitted Rite Aid's "Store Management Guide, which detailed the tasks managers were expected to carry out on a weekly basis and included step-by-step instructions on how to perform common tasks like "sales floor inspection" and "one-hour photo maintenance." *Id.* at *5. The court concluded that these written policies made it "highly likely" that store managers across the country performed similar job duties. *Id.*

16

In contrast, Plaintiffs here make only threadbare allegations about an alleged lean staffing practice without presenting any facts to support the inference that Defendant actually maintained such a policy. *See Prizmic v. Armour, Inc.*, No. 05-cv-2503 (DLI) (MDG), 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006) ("A plaintiff must provide actual evidence of a factual nexus between his situation and those that he claims are similarly situated rather than mere conclusory allegations."). Further, Plaintiffs failed to meaningfully explain how the operational policies mentioned in Plaintiffs' declarations mandate the performance of specific non-exempt duties on a daily or weekly basis, unlike the policies before the court in *Indergit.*

D. ***Other Evidence That Plaintiffs Are Similarly Situated To Other CMs Nationwide***

Plaintiffs have presented evidence from six CMs who worked in four states, and three other CMs from two other states have joined in this suit. However, "the mere existence of a certain number of plaintiffs, covering a sufficiently widespread geographic area, should not be expected by itself to give rise to a legally sufficient basis to find that plaintiffs are similarly situated across the nation" absent "actual evidence of a link between plaintiffs and those across the nation." *Costello*, 2014 WL 4377931, at *6 (citations and internal quotations omitted). There must be an "'identifiable factual nexus which binds the named plaintiffs and potential class members together as victims' of a particular practice." *See Jenkins*, 853 F. Supp. 2d at 322 (quoting *Hoffman*, 982 F. Supp. at 261)).

Plaintiffs' evidence in this case is too thin to satisfy their modest burden for conditionally certifying a class. *See Guillen I*, 750 F. Supp. 2d at 476-80. This Court cannot infer that Defendant had a *de facto* policy of requiring all 1,100 CMs to perform non-exempt work

based only on the personal experiences of the nine people who have joined this suit. Nor can it

infer such a policy from general assertions in Plaintiffs' declarations. The Court notes that in

some of the Plaintiffs' cookie-cutter declarations, they assert that they are aware of other CMs

who primarily performed non-exempt duties because of their observations and discussions with

other CMs. Plaintiffs, however, fail to provide any details about these observations or

conversations, including when they occurred, how often they occurred, or the sum and

substance of what was discussed or observed. Thus, these references to others do not support

Plaintiffs' contention that they are similarly situated to other CMs nationwide. *See*, *Sanchez v.

JMP Ventures, L.L.C.*, No. 13-cv-7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014)

(information about "where or when these observations or conversations occurred . . . is critical

in order for the Court to determine the appropriate scope of the proposed class and notice

process"); *Fernandez v. Sharp Mgmt. Corp.*, No. 16-cv-0551 (JGK) (SN), 2016 WL 5940918, at *3

(S.D.N.Y. Oct. 13, 2016) (denying certification where plaintiffs failed to allege factual support to

substantiate their claim that other employees were subject to the same unlawful compensation

practices); *Ikikhueme v. CulinArt, Inc.*, No. 13-cv-293 (JMF), 2013 WL 2395020, at *2 (S.D.N.Y.

June 3, 2013) (declining to consider plaintiff's "unsupported assertions" regarding other

employees). Additionally, in all but one of Plaintiffs' declarations, they broadly assert that they

discussed their "work experiences" with other CMs, but do not aver that they discussed "work

experiences" that are relevant to the claims in this action. (*See* Doc. No. 27-2, ¶ 14; 27-3, ¶ 15;

Doc. No. 27-6, ¶ 13; *see also* Doc. No. 27-5, ¶ 15.)*; Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651,

665 (S.D.N.Y. 2013) (statements in a declaration are deemed "conclusory where they fail to identify particular employees or make specific allegations.").

While Plaintiffs are not required to establish that CMs in every single store performed primarily non-exempt duties, they must provide some evidence from which the Court can infer that they and the other potential members of the collective "together were victims of a common policy or plan that violated the law." *Guillen I,* 750 F. Supp. 2d at 475. Here, Plaintiffs represent less than one percent of CMs nationwide, and the only evidence they have proffered in support of their motion is that CMs were classified as exempt; they were subject to a common job description that allegedly did not accurately describe the duties they personally performed; and CMs were subject to some uniform operational policies, none of which appear to dictate that CMs perform non-exempt duties. The evidence they present is insufficient for the Court to find a factual nexus between Plaintiffs' personal experiences in the CM position and the experience of 1,110 CMs nationwide.

The Court is unpersuaded by Plaintiffs' argument that the evidence in this case "far exceed[s]" the volume of evidence that courts have deemed sufficient for conditional certification in other cases. (Doc. No. 40, p. 3.) For example, Plaintiffs cite to *Sanchez v. El Rancho Sports Bar Corp.*, No. 13-cv-5119 (RA), 2014 WL 1998236 (S.D.N.Y. May 13, 2014), where the court granted certification on the basis of two affidavits. But, *Sanchez* involved employees working in a single restaurant, not 1,100 individuals who worked in hundreds of stores nationwide. *See id.* at *2-3.

Plaintiffs also cite to *Ferreira v. Modell's Sporting Goods, Inc.*, No. 11-cv-2395 (DAB), 2012 WL 2952922 (S.D.N.Y. July 16, 2012), because they claim in that case the court relied on a single plaintiff's sworn statement in granting conditional certification of a collective action involving assistant store managers. But, the court in *Ferreira* in fact reviewed and relied on defendant's written corporate policies, the relevant job description, plaintiff's deposition testimony, the testimony of one of defendant's corporate executives, and defendant's motion papers, which all indicated that there was a uniform practice of requiring Assistant Managers to perform at least some non-exempt duties. *Id.* at *2-3. Here, Plaintiffs do not challenge the job description on its face and have not presented documentary evidence or testimony to support their assertion that Defendant has a *de facto* common policy of requiring CMs to perform non-exempt work.

A number of other cases Plaintiffs cite are likewise distinguishable, because the plaintiffs in those cases sought certification of a smaller collective group, presented more compelling proof that the potential collective action members were similarly situated, or both. *See, e.g., Hernandez v. Bare Burger Dio Inc.,* No. 12-cv-7794 (RWS), 2013 WL 3199292, at *1, 6 (S.D.N.Y. June 25, 2013) (granting conditional certification of tipped employees at a single location); *Zeledon v. Dimi Gyro LLC*, No. 15-cv-7301 (TPG) (DF), 2016 WL 6561404, at *1, *8-12 (S.D.N.Y. Oct. 13, 2016) (conditionally certifying a class of salaried deliverymen who worked at a single location based on the plaintiff's affidavit, but denying certification as to other categories of employees); *Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 448-51 (S.D.N.Y. 2013) (conditionally certifying a class of kitchen workers at one restaurant location based upon the

declarations of two workers, but declining to certify a class that included non-kitchen staff);

*Chang v. Clean Air Car Serv. & Parking Corp.*, No. 15-cv-4385 (MDG), 2016 WL 4487748, at *1-3

(E.D.N.Y. Aug. 25, 2016) (granting conditional certification of employees who worked at one

location based on declarations from seven plaintiffs); *Guttentag v. Ruby Tuesday, Inc.*, No. 12-

cv-3041 (HB), 2013 WL 2602521, at *1-2 (S.D.N.Y. June 11, 2013) (certifying a class of tipped

workers in 39 states for off-the-clock FLSA claims, where plaintiffs identified several uniform

corporate policies concerning overtime work and restaurant staffing and where certification

was granted after some depositions).

**<u>CONCLUSION</u>**

Thus, for all the reasons set forth above, Plaintiffs' motion for conditional certification is

denied without prejudice. To the extent discovery reveals additional evidentiary support for the

assertion that CMs nationwide are similarly situated, Plaintiffs may renew their motion.


Dated: May 2, 2017
       New York, New York

KATHARINE H. PARKER
United States Magistrate Judge