**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X

| | | |
|---|---|---|
| KELLY BROWN and TIFFANY | : | Case No.  16-cv-7333 (RA) (KHP) |
| STEWART, individually and on behalf of | : | |
| all others similarly situated, as | : | |
| Class/Collective representatives, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| BARNES & NOBLE, INC., | : | |
| | : | |
| Defendant. | : | |

------------------------------------------------------X

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL

Michael J. Palitz
SHAVITZ LAW GROUP, P.A.
800 3rd Avenue, Suite 2800
New York, New York 10022
Tel:     (800) 616-4000

Gregg I. Shavitz*
Camar Jones*
SHAVITZ LAW GROUP, P.A.
981 Yamato Road, Suite 285
Boca Raton, Florida 33431
Tel:     (561) 447-8888

Marc S. Hepworth
Charles Gershbaum
David A. Roth
Rebecca S. Predovan
HEPWORTH, GERSHBAUM & ROTH, PLLC
192 Lexington Ave, Suite 802
New York, New York 10016
Tel:     (212) 545-1199

*Attorneys for Plaintiffs and the Putative Classes*

## TABLE OF CONTENTS

INTRODUCTION…………………………………………………………………1

BACKGROUND………………………………………………………………….3

    A.    Plaintiffs' Discovery Requests…………………………………………….3

    B.    Defendant's Discovery Responses……………………………………...4

    C.    Defendant Repeatedly Denied That the Documents on the Privilege Log Exist….5

    D.    Defendant Told the Court that the Documents on the Privilege Log Did Not Exist……………………………………………………………...7

    E.    Defendant's September 24, 2019 Privilege Log…………………………..9

ARGUMENT……………………………………………………………………11

    A.    Legal Standards……………………………………………………..11

    B.    Failure to List Privileged Documents Timely on a Privilege Log Results in Waiver of the Privilege…………………………………………………...12

    C.    The Court Should Find that Defendant Waived Privilege as to All Documents on the September 24, 2019 Privilege Log…………………………...13

    D.    The Court's Review of 50 Documents on the September 24, 2019 Privilege Log……………………………………………………………15

    E.    The Court Should Award Fees and Costs to Plaintiffs…………………...19

CONCLUSION………………………………………………………………....21

# TABLE OF AUTHORITIES

**Cases**

*Bush v. Element Fin. Corp.,*
     No. 16 Civ. 1007, 2016 U.S. Dist. LEXIS 189318 (S.D.N.Y. Dec. 13, 2016)…...12, 13, 15

*FG Hemisphere Associates, L.L.C. v. Republique Du Congo,*
     No. 01-cv-8700, 2005 U.S. Dist. LEXIS 3523 (S.D.N.Y. Mar. 8, 2005)……………*passim*

*Johannes v. Lasley,*
     No. 17 Civ. 3899, 2019 U.S. Dist. LEXIS 74440 (E.D.N.Y. May 2, 2019)……...12, 13, 15

*Kogut v. Cty. of Nassau,*
     No. 06-cv-6695, 2011 WL 13284714 (E.D.N.Y. Nov. 14, 2011)………………………...12

*Leviton Mfg. Co. v. Greenberg Traurig LLP,*
     No. 09 Civ. 8083, 2010 U.S. Dist. LEXIS 128849 (S.D.N.Y. Dec. 6, 2010)…….15, 18, 20

*Klein v. Torrey Point Grp., LLC,*
     979 F. Supp. 2d 417 (S.D.N.Y. 2013)…………………………………………………19

*S J Berwin & Co. v. Evergreen Entertainment Gr.,*
     No. 92 Civ. 6209, 1994 U.S. Dist. LEXIS 12897 (S.D.N.Y. Sept. 13, 1994)……………19

*Scott v. Chipotle Mexican Grill, Inc.,*
     67 F. Supp. 3d 607 (S.D.N.Y. 2014)……………………………………………18, 20

*SEC v. Yorkville Advisors, LLC,*
     No. 12 Civ. 7728, 2015 U.S. Dist. LEXIS 24578 (S.D.N.Y. Feb. 27, 2015)………...19, 20

*United States v. Bilzerian,*
     926 F.2d 1285 (2d Cir. 1991)……………………………………………………15, 18, 20

**Rules**

Fed. R. Civ. P. 26(b)(5)………………………………………………………..2, 12

Fed. R. Civ. P. 26(e)………………………………………………………...11

Fed. R. Civ. P. 34(b)(2)(C)…………………………………………………4, 5, 12

Fed. R. Civ. P. 37(a)(5)(A)…………………………………………………..*passim*

Local Rule 26.2(b)………………………………………………………...…..*passim*

# INTRODUCTION

Plaintiffs are moving to compel all documents contained on Defendant Barnes & Noble, Inc.'s ("BN") September 24, 2019 privilege log.  Ex. A.  The Court should require that BN produce all documents on the privilege log and hold that BN waived any privilege claim due to BN's "unjustified failure to list privileged documents on the required log of withheld documents in a timely and proper manner[.]"  *FG Hemisphere Associates, L.L.C. v. Republique Du Congo*, No. 01-cv-8700, 2005 U.S. Dist. LEXIS 3523, at *14 (S.D.N.Y. Mar. 8, 2005).  Plaintiffs requested the documents listed on the privilege log on March 2, 2017.  Ex. B at Request Nos. 15, 18-21, 31.  Despite Plaintiffs' repeated requests over the course of more than two and a half years, Defendant denied that such documents existed.  Inexplicably, at the close of discovery, Defendant magically located approximately 320 documents which cut to the core of key issues in this case such as the amount of time Café Managers ("CMs") perform tasks, BN's knowledge of the tasks CMs perform and similarities of such tasks, good faith and willfulness evidence such as what BN knew about CM job duties from a time study and analysis of the position and advice of counsel BN received regarding reclassifying CMs to non-exempt status, and evidence supporting Plaintiffs' claim that BN understaffed its cafes and used CMs to save labor money.  *See* Ex. A.

In fact, BN admitted at the October 10th conference that it withheld documents showing BN received advice of counsel relating to the economic impact of classifying CMs as exempt due to the new proposed increased salary level which the Department of Labor planned to implement. Ex. C at 22:15-25.  Such evidence is directly probative of BN's good faith defense and state of mind.  BN classified CMs as exempt until it got too economically unfeasible to pay CMs a higher salary which would negatively impact BN's profits.  Then, BN reclassified CMs to non-exempt status to maintain corporate profits.  Using CMs as a way to save BN money has been Plaintiffs' theory since they filed this case (ECF No. 1 at ¶ 6).  Plaintiffs expressly asked

BN for documents relating to the reclassification decision, analyses regarding the decision, and any advice of counsel received.  Ex. B at Request Nos. 21 and 31.  BN repeatedly denied that any such documents exist, only to then list 165 such reclassification documents on a privilege log just before discovery closed.  Ex. A at pp. 9-20.

Defendant's conduct has severely prejudiced Plaintiffs.  Plaintiffs conducted their discovery and made their arguments in motions based on the assumption that none of the documents on the privilege log existed and that Defendant never received advice of counsel of any kind relating to CMs.  While Defendant tries to whitewash its discovery failures by claiming the documents do not show advice as to the "proper classification" of CMs, all of these documents are undeniably responsive to Plaintiffs' March 2, 2017 discovery requests, which is why Defendant belatedly listed them on a privilege log.  Defendant clearly discussed reclassifying CMs with numerous lawyers and none of that information was ever disclosed.  The withheld documents also identify the names of witnesses who Defendant never disclosed.

Discovery rules exist for a reason – to ensure fair play in the litigation.  Fed. R. Civ. P. 26(b)(5) requires that a party list on a privilege log any responsive documents which were withheld on the basis of privilege.  Local Rule 26.2(b) further requires that privilege logs be provided "in writing at the time of the response to such discovery or disclosure, unless otherwise ordered by the Court."  Defendant violated these rules.  **More than two and a half years after Plaintiffs served discovery requests for these documents, Defendant finally listed them on a privilege log.**  That is clear gamesmanship in express violation of the rules.

For the reasons set forth herein, Plaintiffs respectfully request that the Court find that Defendant waived privilege with respect to all documents on the September 24, 2019 privilege log and order Defendant to produce all documents within seven days of the Court's Order.

Plaintiffs also request that Defendant pay Plaintiffs' attorneys fees and costs in connection with this motion, including the status conference and work performed prior to the conference per Rule 37(a)(5)(A).[1]

## BACKGROUND

### A.     Plaintiffs' Discovery Requests

On March 2, 2017, Plaintiffs served their First Set of Production of Documents requesting the documents on Defendant's September 24, 2019 privilege log:

**Request No. 3:** Produce documents that constitute, reflect or contain job descriptions for CMs during the relevant time period.[2]

**Request No. 15**: E-mails to and from Defendant's corporate-level employees during the relevant time period regarding:

(a) the job duties and expectations of CMs;
(b) hours worked by CMs;
(c) the classification of CMs as exempt or non-exempt from overtime compensation;
(d) the compensation of CMs; and
(e) complaints that CMs were not paid overtime wages, were misclassified as exempt and/or  work excessive hours.

**Request No. 18:**   Documents that contain or reflect the amount of time required to perform a given task, assignment, duty or function performed by CMs.  (This Request is not limited by any date parameters).

**Request No. 19**:  Time studies, observational studies, and/or time and motion studies concerning time spent on tasks performed and/or hours worked by CMs.  (This Request is not limited by any date parameters).

**Request No. 20**:  Documents that refer or relate to the decision(s) to re-classify CMs as non-exempt in or about October 2016, including any reviews, audits, e-mails, communications, or analyses in connection with such decision(s).   (This Request is not limited by any date parameters).

---

[1] After resolution of this motion, Plaintiffs intend to file a motion for Rule 37 sanctions seeking an order to strike Defendant's Answer and prohibiting Defendant from submitting evidence in support of its defenses.

[2] The "relevant time period" is defined as "the period from September 20, 2013 to the present outside of New York and from November 8, 2010 to the present within New York."  Ex. B at p. 3.

3

**Request No. 31**:  Documents relating to Defendant's good faith affirmative defenses including, but not limited to, communications and advice between counsel for the Defendant and Defendant's employees relating to its good faith affirmative defenses, the classification and reclassification of Café Managers, the number of hours Café Managers work, and the manner of compensating Café Managers.

Ex. B.

On July 19, 2018, Plaintiffs served their Third Set of Requests for Production of Documents and requested:  "all documents and electronic mail relating to time studies, observational studies, and/or time and motion studies concerning time spent on tasks performed and/or hours worked by Café Managers.  (This Request is not limited by any date parameters)." Ex. D at Request No. 2.

**B.     Defendant's Discovery Responses**

On May 17, 2017, Defendant served its responses to Plaintiffs' First Set of Requests for Production of Documents.  Ex. E.  Defendant stated that it will produce all job descriptions.  Ex. E at Response to Request No. 3.  Defendant stated that no responsive documents exist as to Request Nos. 18 and 19.  Defendant did not respond to Request No. 20.  Defendant stated that it would produce a communication about the Café Manager reclassification in response to Request No. 21.  Defendant indicated that it will produce documents responsive to Request No. 31. Defendant also objected to Request No. 15 and the parties later conferred about this (see *infra* at 5-7).  **Notably, Defendant never stated that it withheld any responsive documents on the basis of any objection as required by Fed. R. Civ. P. 34(b)(2)(C) and did not provide a privilege log.**

On June 1, 2017, Defendant served amended responses to Plaintiffs' First Set of Requests for Production of Documents.  Defendant supplemented its non-response to Request No. 20 to state "Defendant is not currently aware of responsive documents in its possession."  Ex. F at p. 9.

4

On August 24, 2018, Defendant served its responses to Plaintiffs' Third Set of Requests for Production of Documents.  Ex. G.  Defendant stated that it would "conduct a narrow review of reasonably accessible e-mails to identify and produce any non-privileged e-mails concerning the time study conducted by Right Management and the Café Operations Workload Update."  *Id*. at Response to RFP No. 2.  Again, Defendant never stated that it withheld any responsive documents on the basis of any objection as required by Fed. R. Civ. P. 34(b)(2)(C) and did not provide a privilege log.

**C.     Defendant Repeatedly Denied That the Documents on the Privilege Log Exist**

After receiving Defendant's responses to Plaintiffs' March 2017 requests for production, Plaintiffs sent a discovery deficiency letter on May 26, 2017 asking Defendant to identify any responsive documents withheld and requested a privilege log for any documents withheld for privilege.  Ex. H.  Plaintiffs also asked for any documents or emails relating to the classification and reclassification of CMs.  *Id.*  On June 1, 2017, Defendant supplemented its discovery responses stating that it is unaware of any (1) time studies or audits, (2) documents that reflect the amount of time required to perform a given task, assignment, duty or function performed by CMs, and (3) documents relating to decisions to classify or re-classify CMs as non-exempt in or about October 2016, including any reviews, audits, e-mails, communications, or analyses in connection with such decisions.  Ex. F.  Defendant did not provide a privilege log indicating that any responsive documents were withheld.

On June 15, 2017, Defendant sent Plaintiffs a letter stating that it has "has produced all non-privileged emails responsive to" Request 21 which seeks: "Documents that refer or relate to the decision(s) to re-classify CMs as non-exempt in or about October 2016, including any reviews, audits, e-mails, communications, or analyses in connection with such decision(s)."  Ex.

5

I at p. 2.  Defendant also stated that it will provide a privilege log if any responsive documents were withheld.  Ex. I at p. 2.  No privilege log was provided.

On August 3, 2017, Plaintiffs sent Defendant another letter asking Defendant to produce the time and motion studies which were identified by Defendant's Rule 30(b)(6) designee in deposition but inexplicably were not produced.  Ex. J.  Plaintiffs again reiterated their request for production of all responsive documents or a privilege log for any documents withheld.  *Id.* Defendant again did not supplement or produce a privilege log to identify any of the documents on the September 24, 2019 privilege log.

On October 13, 2017, Plaintiffs sent Defendant another letter due to Defendant's failure to produce e-mails relating to the Right Management time study and documents relating to the classification and reclassification of CMs.  Ex. K.  Plaintiffs stated that it appeared that Defendant withheld responsive documents and did not provide a privilege log.  *Id*. at 2.  On October 16, 2017, Defendant responded stating Plaintiffs' claims are "baseless."  Ex. L.

After discovery reopened following the conditional certification decision, on July 19, 2018, Plaintiffs sent Defendant a letter asking Defendant to ensure that all responsive documents were produced and, if not, to supplement its responses.  Ex. M.  Plaintiffs also asked Defendant to confirm that "all responsive documents that have been or are being withheld are listed on Defendant's privilege log and that no further privileged, responsive documents are being withheld."  *Id.* at 4.  **On August 7, 2018, Defendant responded stating "except as otherwise indicated in our discovery responses, we did not withhold any responsive, non-privileged documents within the possession, custody or control of Barnes & Noble.  Any documents that we withheld on the basis of privilege are reflected on our Privilege Log."**  Ex. N at 1. Defendant also said in its August 7, 2018 letter that, "In any event, other than documents we

have already produced or identified on the Privilege Log, Barnes & Noble does not have, within

its possession, custody or control, written communications reflecting the decision to re-classify

Café Managers."  *Id*. at 4.

On December 20 and 21, 2018, the parties exchanged e-mail correspondence about

whether Defendant received advice of counsel relating to CMs' compensation and classification

(and, if yes, to identify the firms and attorneys who provided the advice).  Ex. O.  Defendant said:

"Without waiving any objections, after a reasonably diligent search we are not aware of any

communications in Defendant's possession in which Barnes & Noble received advice concerning

the propriety of classifying the Café Manager position as exempt."  Ex. O at 2.  Plaintiffs

followed up with the following questions:

> (1) "Did Defendant receive any advice of counsel relating to Café Managers'
> classification and compensation (not including your firm's advice in connection with the
> defense of this case)?"
>
> (2) "Does Defendant have any other documents (aside from communications) relating
> to advice of counsel it received relating to Café Managers' classification and
> compensation?"

Defendant responded no to both questions.  Ex. O at 1.

### D.    Defendant Told the Court that the Documents on the Privilege Log Did Not Exist

At the January 3, 2019 Court conference, Defendant made the following representations

to the Court:

> MR. AIKEN: And in that time, to my knowledge, no report was generated, okay. Also, to
> my knowledge, Your Honor, and I've searched myself, no advice was given with respect
> to whether the café managers should or should not be classified as exempt.
>
> THE COURT: No advice by?
>
> MR. AIKEN: Bryan Cave or anyone else that I would be aware.
>
> ****

7

MR. AIKEN: -- we've not received advice from Bryan Cave on this. And then beyond that, we're not aware of any advice from a law firm with respect to whether café managers should or should not be classified as exempt.

****

THE COURT: Okay. So just so I understand it. You've searched Barnes and Noble's records --

MR. AIKEN: Yes, ma'am.

THE COURT: -- to see whether or not Barnes and Noble received any advice from any firm, not just Bryan Cave, regarding classification of café managers?

MR. AIKEN: Yes, Your Honor. And I --

THE COURT: And you have found none?

MR. AIKEN: Yes. And I applied search terms that related to the law firms that could have been involved. I mean there are just thousands and thousands of emails. So I applied the -- I applied searches with respect to Vedder Price, Ogletree, and with respect to Bryan Cave to try and find anything that would be advice that says you should or should not do that.

THE COURT: And what time period did you search?

MR. AIKEN: 2004 to September 2016.

****

MR. AIKEN: And so she [Michelle Smith][3] did not identify outside counsel. We've not found any advice from outside counsel with respect to whether they should be classified as exempt or not.

******

MR. AIKEN: Thank you, Your Honor. You know, we searched Michelle Smith and Brad Fuhr's [*sic*] emails from the time 2004 and I believe -- I believe September 2016 is correct. And if that's not correct, it's October of 2016. But one of those is the right date. No, I would be really surprised to find anything on the issue beyond what we've searched. But we will, you know, at some point represent that we've done what we think is an exhaustive search.

---

[3] Michelle Smith is Defendant's Rule 30(b)(6) representative and the individual who Defendant identified as being responsible for making the classification decision for Café Managers. Exhibit P at 16:8-10.

Ex. P at 14:4-11, 14:23-15:1, 15:6-20, 19:1-3, 27:22-28:5.

Based on Defendant's representations that no documents addressing advice of counsel exist, the Court held that:

> I do take note, though, that you [Defendant] do not have a privilege log. And certainly to the extent that there was advice provided on classification, that would be potentially relevant in response to [plaintiffs'] discovery and should be on a privilege log with respect to the documents. But what I'm hearing from Mr. Aiken is that he searched. There's nothing so that for that reason, there is nothing on the privilege log.

Ex. P at 25:18-25.

The parties addressed this issue again on March 12, 2019. Plaintiffs asked again if the reason that there was no updated privilege log is because there were no privileged documents withheld. Ex. Q at 8:16-9:1. Defendant's counsel again confirmed that he is "not aware of anything that would constitute advice with respect to the [] exemption" and that his "entire exercise was to confirm the lack of any advice . . . And that's what I've done." Ex. Q at 10:17-21. Defendant stated that he would again confirm that no advice was received and produce a privilege log if any advice was located. Ex. Q at 10:11-13. The Court ordered Defendant to complete the review of Smith's e-mails and update the privilege log by the end of April. Ex. H at 10:24-11:4. Defendant agreed to do that. Ex. H at 11:5.

Nearly ten months passed since that January 3rd conference and five months since the deadline to update the privilege log in April. Defendant never supplemented its privilege log.

**E.**    **Defendant's September 24, 2019 Privilege Log**

Out of the blue, Defendant sent Plaintiffs' a 20-page privilege log consisting of about 320 entries. The entries include e-mails to and from the exact same custodians – Michelle Smith and Brad Feuer – whose e-mails Defendant previously said it searched back in 2018. Defendant has never explained why the documents are just now being listed on a privilege log when their e-mail

accounts were searched in 2018 and likely before that.  This privilege log contained many

examples of responsive documents which were requested in March 2017, withheld from

Plaintiffs for years, and not disclosed on a privilege log previously.  Such documents include:

- Numerous documents and e-mails regarding to the Right Management time study/audit of the Café Manager position which assessed the tasks Café Managers performed and the amount of time they spent on the tasks.  These documents are responsive to Plaintiffs' discovery requests.  *Compare* Ex. A (Privilege Log) at pp. 1-9 *with* Ex. B at Request Nos. 18, 19, 31 and Ex. D at Request No. 2.

- May 19, 2016 E-mail:  "Addressing new overtime ruling and proposed strategy to reclassify Café manager, and related issues, and attaching White Collar Exemption Impact FY17-18."

- May 19, 2016 E-mail:  "New Overtime Regulations – Addressing new overtime ruling and proposed strategy to reclassify Café manager, and related issues, and attaching White Collar Exemption Impact FY17-18."

- May 19, 2016 E-mail:  "Spreadsheet of projected impact of Café manager reclassification."

- August 17, 2016 E-mail:  "Scheduling meeting to discuss and forwarding e-mails (including with Jackson Lewis[4]) **regarding attorney advice and potentially reclassifying Café Managers** and related issues."

- August 17, 2016 E-mail:  "Fwd: FLSA Advice Addressing scheduling for a meeting to discuss and forwarding e-mails (including with Jackson Lewis) regarding attorney advice and potentially reclassifying Café Managers and related issues."

- August 17, 2016 E-mail:  "FLSA Advice Planning meeting to discuss and forwarding e-mails (including with Jackson Lewis) regarding attorney advice and potentially reclassifying Café Managers and related issues."

- August 17, 2016 E-mail:  "Addressing potential reclassification of Café Managers and current alleged misclassification nationwide class action, and forwarding e-mail exchange between Allison Spivak and other Barnes & Noble employees."

- August 18, 2016 E-mail:  "Planning meeting to discuss and forwarding e-mails (including with Jackson Lewis **regarding attorney advice and potentially reclassifying Café Managers** and related issues."

- August 18, 2016 E-mail:  "**Addressing potential reclassification of Café Mangers**

---

[4] Jackson Lewis is a national employment law defense law firm.

and current alleged misclassification nationwide class action**, and forwarding e-mail exchange between Allison Spivak [Defendant's former Director of Legal Affairs for Human Resources] and other Barnes & Noble employees."

- September 16, 2016 E-mail:  "Call regarding Café Manager Reclassification:  Inquiring about scheduling for call with General Counsel about Café Manager reclassification."

- September 20, 2016 E-mail:  "Addressing next steps and forwarding e-mails (including with Jackson Lewis) **regarding attorney advice and potentially reclassifying Café Managers** and related issues."

- September 20, 2016 E-mail:   "Providing input and forwarding emails (including with Jackson Lewis) **regarding attorney advice and potentially reclassifying Café Managers** and related issues."

- September 20, 2016 E-mail:  "Addressing and forwarding **emails regarding attorney advice, job descriptions and potential reclassification, and** forwarding emails between Allison Spivak and other Barnes & Noble employees."

- September 20, 2016 E-mail: "Notes on CBDM and Café Manager Exemption Issues: Recounting discussion with Kevin and Janet regarding reclassification and related legal issues."

- September 20, 2016 E-mail:  "Expressing gratitude for input and forwarding e-mails regarding attorney advice, job descriptions, and potential reclassification, and forwarding e-mails between Allison Spivak and other Barnes & Noble employees."

- September 20, 2016 E-mail:  "Addressing classification of Café managers, attorney advice and exemption, and forwarding e-mails between Allison Spivak and other Barnes & Noble employees."

- September 20, 2016 E-mail:  "Providing input into questions regarding exemptions, classification and attorney advice, and forwarding e-mails between Allison Spivak and other Barnes & Noble employees."

- September 20, 2016 E-mail:  "Addressing next steps with regard to exemptions, attorney advice and job descriptions, and forwarding e-mails between Allison Spivak and other Barnes & Noble employees."

*See* Ex. A (emphasis added).

## **ARGUMENT**

### A.    **Legal Standards**

Fed. R. Civ. P. 26(e) requires that a party must supplement its response to a request for

11

production "(A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court."  If documents are withheld on the basis of an objection, the "objection must state whether any responsive materials are being withheld on the basis of that objection."  Fed. R. Civ. P. 34(b)(2)(C).  The federal rules also require that a party list on a privilege log any responsive documents which were withheld on the basis of privilege.  Fed. R. Civ. P. 26(b)(5).  Local Rule 26.2(b) further requires that privilege logs be provided "in writing at the time of the response to such discovery or disclosure, unless otherwise ordered by the Court."

## B.    Failure to List Privileged Documents Timely on a Privilege Log Results in Waiver of the Privilege

"It should be clear to all attorneys that the Federal Rules of Civil Procedure and the Local Civil Rules are not starting points for a discussion concerning the handling of privileged documents nor are they merely suggested practice guidelines that attorneys are free to disregard. They are rules, and in the absence of a court Order or stipulation providing otherwise, they must be obeyed."  *FG Hemisphere Associates*, 2005 U.S. Dist. LEXIS 3523, at *14.  "As other judges in this District and I have repeatedly held, the unjustified failure to list privileged documents on the required log of withheld documents in a timely and proper manner operates as a waiver of any applicable privilege."  *Id.* (citing numerous authorities); *Bush v. Element Fin. Corp.*, No. 16 Civ. 1007, 2016 U.S. Dist. LEXIS 189318, at *14-15 (S.D.N.Y. Dec. 13, 2016) (Sullivan, J.) (same and fining counsel for failure to comply with rules); *Johannes v. Lasley*, No. 17 Civ. 3899, 2019 U.S. Dist. LEXIS 74440, at *13 (E.D.N.Y. May 2, 2019) ("'The failure of defendants to list the ... documents [in question] on a privilege log constitutes a waiver of any applicable privilege.'") (quoting *Kogut v. Cty. of Nassau*, No. 06-cv-6695, 2011 WL 13284714, at *4

(E.D.N.Y. Nov. 14, 2011)).

**C.**     **The Court Should Find that Defendant Waived Privilege as to All Documents on the September 24, 2019 Privilege Log**

The law is clear that parties must timely provide a privilege log indicating which responsive documents were withheld due to privilege assertions. *FG Hemisphere Associates*, 2005 U.S. Dist. LEXIS 3523, at *14; Local Rule 26.2(b). Failure to do so results in waiver of privilege as to all privileged documents. *Id.* (citing authorities); *Bush*, 2016 U.S. Dist. LEXIS 189318, at *14-15; *Johannes*, 2019 U.S. Dist. LEXIS 74440, at *13.

Here, Plaintiffs served Defendant with requests for production on March 2, 2017 which sought all of the documents listed on Defendant's September 24, 2019 privilege log. Defendant did not provide a privilege log with its responses as required by Local Rule 26.2(b). **Rather, Defendant waited two and a half years to identify these responsive documents on a privilege log.**

Prior to the January 3, 2019 Court conference, Defendant's counsel stated that Defendant reviewed the e-mails of Michelle Smith and Brad Feuer. Yet, none of these clearly relevant documents and e-mails from Ms. Smith and Mr. Feuer's e-mail accounts were listed on a privilege log until September 23, 2019. Even after the Court reminded Defendant of its obligation to provide a privilege log if any responsive documents were withheld on January 3rd, Defendant still cavalierly disregarded the Court's Order and the law and did not identify any of the approximately 320 documents on a privilege log. Defendant waited until discovery was about to close to identify all such documents on September 24, 2019.

The documents on the privilege log are not new. They are from 2004, 2005, and 2016. Plaintiffs requested these documents in March 2017 and the parties addressed these documents in numerous conferrals and in correspondence (*supra* at 3-9) and at the January 2, 2019 and March

13

12, 2019 court conferences.  Defendant knew for years that the Right Management study/audit, the Café Manager job analysis, and the classification and reclassification of Café Managers are relevant issues in this litigation.  Presumably, Defendant's counsel asked Defendant whether or not it had any documents relating to these issues when it represented to the Court and Plaintiffs' counsel multiple times that no such documents existed and no documents were being withheld on the basis of privilege.  Defendant's counsel even indicated that he personally searched the e-mails of Michelle Smith (Defendant's Vice President of Human Resources who made the classification decisions and who possesses the knowledge of Defendant's good faith defense) and Brad Feuer, Esq. (Defendant's General Counsel).  How is it possible that none of these documents were listed on a privilege log previously when Defendant claimed to have searched these custodians' documents and e-mails for responsive documents in 2018?  How is it possible that Defendant never indicated that it, in fact, discussed reclassifying CMs with multiple in-house attorneys and attorneys at Jackson Lewis?

There is no explanation for Defendant's discovery failures.  Nor will Defendant explain what happened and why its prior searches did not identify these 320 documents.  Defendant refuses to respond to questions about its search, when it first identified these documents as privileged, and why Defendant provided the privilege log on September 24, 2019.  Plaintiffs did not serve recent discovery requests to warrant a new privilege log.

The only explanation for this extremely late privilege log is that Defendant did not want Plaintiffs to know these documents existed because Defendant knew that Plaintiffs would attempt to obtain them in discovery.  Defendant waited until discovery was about to close so Plaintiffs would not have a meaningful opportunity to challenge the claimed privilege and use such documents in the litigation.  This hurt Plaintiffs' discovery efforts to obtain documents

14

relating to the CM time study, BN's state of mind, willfulness issues, BN's communications with counsel regarding the reclassification of CMs, BN's decision to reclassify CMs as exempt due to the impact on BN's budget and profits, and the duties and levels of discretion that CMs have.

Defendant clearly spoke with counsel about reclassifying CMs to non-exempt status and never disclosed that to the Court or Plaintiffs. The information is undoubtedly relevant despite Defendant's claim that it is not relying on advice of counsel and must be produced in light of Defendant's good faith affirmative defense. *E.g., Leviton Mfg. Co. v. Greenberg Traurig LLP*, No. 09 Civ. 8083, 2010 U.S. Dist. LEXIS 128849, at *7-8 (S.D.N.Y. Dec. 6, 2010) ("Courts have recognized that a party need not explicitly rely upon advice of counsel to implicate privileged communications. Instead, advice of counsel may be placed in issue where, for example, a party's state of mind, such as his good faith belief in the lawfulness of his conduct, is relied upon in support of a claim of defense."); *United States v. Bilzerian*, 926 F.2d 1285, 1291 (2d Cir. 1991) (a party's "conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent.").

Plaintiffs' discovery and arguments in motions have been shaped upon a belief that these documents did not exist. Defendant's unjustified failure to provide a timely privilege log harmed Plaintiffs' access to relevant evidence. The Court should find that Defendant waived privilege as it did not follow the law. *FG Hemisphere Associates*, 2005 U.S. Dist. LEXIS 3523, at *14; *Bush*, 2016 U.S. Dist. LEXIS 189318, at *14-15; *Johannes*, 2019 U.S. Dist. LEXIS 74440, at *13.

### D. The Court's Review of 50 Documents on the September 24, 2019 Privilege Log[5]

At the October 10, 2019 conference, the Court indicated that it would review 50 entries

---

[5] As noted above, Plaintiffs believe they are entitled to all of these responsive documents which bear on exemption issues and affirmative defenses (good faith and willfulness) but are adhering to the Court's request for Plaintiffs to identify 50 documents for *in camera* review.

on Defendant's September 24, 2019 privilege log and ordered Plaintiffs to select 50.  Plaintiffs

select the following entries which are identified by the "Control Number" on Defendant's

privilege log:

1.    PSTs06_00002126

2.    PSTs06_00002141 (with attachments)

3.    PSTs06_00002303

4.    PSTs06_00002760

5.    PSTs06_00002773

6.    PSTs17_0149490

7.    PSTs06_00002961

8.    PSTs06_00005216

9.    PSTs06_00006208 (with attachments)

10.   PSTs06_00006275 (with attachments)

11.   PSTs06_00006328

12.   PSTs06_00006518 (with attachments)

13.   PSTs06_00008667 (with attachments)

14.   PSTs06_00008668

15.   PSTs06_00009135

16.   PSTs06_00009138

17.   PSTs06_00009141

18.   PSTs06_00009148 (with attachments)

19.   PSTs06_00009150

20.   PSTs06_00009160

16

21.     PSTs06_00009162

22.     PSTs06_00009193

23.     PSTs06_00009198

24.     PSTs06_00009199

25.     PSTs06_00009219

26.     PSTs106_00007818 (with attachments)

27.     PSTs106_00008220

28.     PSTs114_0070744

29.     PSTs114_0070852

30.     PSTs114_0070930

31.     PSTs114_0071340

32.     PSTs114_0085594

33.     PSTs06_00009196

34.     PSTs114_0092860 (with attachments)

35.     PSTs114_0068246

36.     PSTs121_00371353 (with attachments)

37.     PSTs121_00371357

38      PSTs06_00006278

39.     PSTs17_0098995

40.     PSTs17_0148889 (with attachments)

41.     PSTs17_0149442 (with attachments)

42.     PSTs17_0149488

43.     PSTs17_0149489

44.     PSTs17_0151385

45.     PSTs17_0155198 (with attachments)

46.     PSTs17_0155201 (with attachments)

47.     PSTs17_0173160

48.     PSTs17_0173162

49.     PSTs17_0177363 (with attachments)

50.     PSTs17_0177364[6]

These documents address the Right Management study/audit for CMs, input regarding

exemptions, and the classification and reclassification of CMs including its impact on Defendant.

All of these documents are relevant and many address the good faith affirmative defense and

willfulness claims in the case.  Defendant should have to produce all of these documents because

(1) Defendant waived its right to claim privilege due to its untimely privilege log and (2)

Defendant cannot refuse to produce documents that relate to its good faith defense through a

privilege assertion.  *Leviton Mfg. Co.*, 2010 U.S. Dist. LEXIS 128849, at *7-8; *Bilzerian*, 926

F.2d at 1291; *see Scott v. Chipotle Mexican Grill, Inc*., 67 F. Supp. 3d 607, 616-17 (S.D.N.Y.

2014) ("Given the circumstances in this particular case, legal advice that the defendant received

may well demonstrate the falsity of its claim of good faith belief, putting Chipotle's state of mind

at issue. The plaintiffs are therefore entitled to know if the defendant ignored counsel's

advice. . . .  In the case at hand, Chipotle has pled a panoply of defenses aside from the two

affirmative defenses at issue.  If it does not wish to waive its privilege, it may seek leave to

---

[6] These documents identify relevant witnesses who were never identified previously including
attorneys who guided Defendant through the reclassification process.  Plaintiffs may seek to
depose some of these individuals.

18

amend its answer under Fed. R. Civ. P. 16(b) so that it can forego its good faith defenses and rely instead on its remaining 30 affirmative defenses.") (internal citations and quotations omitted).

### E.    The Court Should Award Fees and Costs to Plaintiffs

"Pursuant to Rule 37, if a motion to compel 'is granted -- or if the disclosure or requested discovery is provided after the motion was filed -- the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.'" *SEC v. Yorkville Advisors, LLC*, No. 12 Civ. 7728, 2015 U.S. Dist. LEXIS 24578, at *6 (S.D.N.Y. Feb. 27, 2015) (quoting Fed. R. Civ. P. 37(a)(5)(A)).  "An award of expenses is mandatory unless '(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust.'" *Id.* (quoting Fed. R. Civ. P. 37(a)(5)(A)). "Monetary sanctions under Rule 37(a)([5]) serve a dual purpose.  In part, they are intended to deter discovery abuses.  At the same time, they are designed to compensate the prevailing party for expenses it would not have incurred had the sanctioned party conducted itself properly."  *S J Berwin & Co. v. Evergreen Enter. Gr.*, No. 92 Civ. 6209, 1994 U.S. Dist. LEXIS 12897, at *4-5 (S.D.N.Y. Sept. 13, 1994).

Defendant cannot avoid the mandatory imposition of fees and costs.  *First*, despite conferral and Plaintiffs informing Defendant of the case law and Local Rules concerning privilege logs and waiver of privilege, Defendant maintained its privilege claim over these documents.  *Second*, Defendant has no substantial justification for withholding these documents.  "Substantial justification for refusing discovery is determined according to 'an objective standard of reasonableness and does not require that the party have acted in good faith.'" *Yorkville*

*Advisors, LLC*, 2015 U.S. Dist. LEXIS 24578, at *18 (quoting *Klein v. Torrey Point Grp., LLC*, 979 F. Supp. 2d 417, 442 (S.D.N.Y. 2013)).  In a similar case where a party failed to comply with the federal and local rules by providing a late privilege log, Magistrate Judge Pitman awarded fees and costs to the moving party, holding that the party was not substantially justified in its conduct.  *Yorkville Advisors, LLC*, 2015 U.S. Dist. LEXIS 24578, at *18-19.  In *Yorkville Advisors*, like this case, the party "failed to explain meaningfully why it did not provide adequate descriptions in a timely manner" and "untimely raised new privilege claims without justification."  *Id.* at *20-21.  Judge Pitman held that the party's attorneys are "deemed to have knowledge of the Court's rules," and that "reasonable persons would not disagree that the SEC's disclosures were insufficient pursuant to Rule 26(b)(5) and Local Civil Rule 26.2."  *Id.* at *20.  Moreover, in light of Defendant's good faith defense, it cannot withhold the documents relating to the Right Management study and the reclassification of the CM position.  *Leviton Mfg. Co.*, 2010 U.S. Dist. LEXIS 128849, at *7-8; *Bilzerian*, 926 F.2d at 1291; *see Scott*, 67 F. Supp. 3d at 616-17.

Lastly, there are no other circumstances which would make an award of fees and costs to Plaintiffs unjust.  Plaintiffs requested the documents on Defendant's September 24, 2019 privilege log in March 2017.  Defendant withheld these documents for two and a half years, stating repeatedly that it did not withhold any responsive documents and that it searched the custodians' e-mail files for all responsive documents and it found nothing beyond what was produced.  Plaintiffs' discovery and motion strategy and briefing were conducted under the assumption that Defendant produced all responsive documents and that the 320 documents on the privilege log did not exist.  Accordingly, the Court should award Plaintiffs attorneys' fees and

costs in connection with this motion, including the October 10th status conference and work

performed prior to the conference per Rule 37(a)(5)(A).

## <u>CONCLUSION</u>

Defendant's discovery abuses and failure to disclose hundreds of documents relating to

the claims and defenses in this case require serious discovery sanctions.  The Court should start

by finding that Defendant waived privilege with respect to all documents contained on its

September 24, 2019 privilege log and award Plaintiffs' counsel their fees and costs.

Dated: New York, New York  
      October 24, 2019

Respectfully submitted,

s/Michael J. Palitz

      Michael J. Palitz  
SHAVITZ LAW GROUP, P.A.  
800 3rd Avenue, Suite 2800  
New York, New York 10022  
Tel:    (800) 616-4000  
Fax:   (561) 447-8831

Gregg I. Shavitz*  
Camar Jones*  
SHAVITZ LAW GROUP, P.A.  
981 Yamato Road, Suite 285  
Boca Raton, Florida 33431  
Tel:    (561) 447-8888  
Fax:   (561) 447-8831

Marc S. Hepworth  
Charles Gershbaum  
David A. Roth  
Rebecca S. Predovan  
HEPWORTH, GERSHBAUM & ROTH, PLLC  
192 Lexington Ave, Suite 802  
New York, New York 10016  
Tel:    (212) 545-1199

***Attorneys for Plaintiffs and the Putative Class and Collective***

*admitted *pro hac vice*