UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| KELLY BROWN and TIFFANY STEWART, individually and on behalf of all others similarly situated, as Class/Collective representatives,<br><br>Plaintiffs,<br><br>v.<br><br>BARNES AND NOBLE, INC.,<br><br>Defendant. | **ECF CASE**<br><br>Case No. 16-cv-07333 (RA) (KHP)<br><br>Oral Argument Requested |

---

## DEFENDANT BARNES & NOBLE, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

---

DRINKER BIDDLE & REATH LLP

Daniel H. Aiken, Esq. (*pro hac vice*)
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103-6996
Telephone:  (215) 988-2942
Facsimile:  (215) 988-2757
E-mail:  daniel.aiken@dbr.com

William R. Horwitz, Esq.
1177 Avenue of the Americas, 41st Floor
New York, New York 10036-2714
Telephone:  (212) 248-3140
Facsimile:  (212) 248-3141
E-mail:  william.horwitz@dbr.com

Brooke Razor, Esq.
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103-6996
Telephone:  (215) 988-2936
Facsimile:  (215) 988-2757
E-mail:  brooke.razor@dbr.com

Attorneys for Defendant
Barnes & Noble, Inc.

121165063

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT:  PLAINTIFFS' MOTION TO COMPEL IS BASELESS. .................................. 2

    A.    The Timing of the Production of the Privilege Log was Appropriate and
           Communicated Well in Advance ........................................................................ 2

    B.    The 50 Sample Documents ............................................................................. 10

    C.    Plaintiffs' Frivolous Request for Sanctions ..................................................... 13

CONCLUSION ............................................................................................................ 15

121165063

## **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*In re Cty. of Erie*, 546 F.3d 222 (2d Cir. 2008) ..........................................................................11

121165063

## PRELIMINARY STATEMENT[1]

Having unsuccessfully challenged the privilege and work product designations of seven documents during the October 10 Status Conference, plaintiffs now seek to compel the production of all of the documents on the Privilege Log *including the seven documents that they initially challenged*. (Pl. Brf. at 15 n. 5). Plaintiffs advance arguments they know to be baseless and compound their bad faith by including an application for sanctions – despite the Court's instruction to limit their application to a Motion to Compel. Given plaintiffs' knowingly false accusations and persistent bad faith, Barnes & Noble respectfully requests fees and costs incurred in opposing this motion.

Despite its substantial length, the Motion to Compel essentially relies on just two points, both of which are demonstrably false: (1) plaintiffs contend that defense counsel was aware of privileged documents but failed to identify them on a Privilege Log for two and a half years; and (2) plaintiffs contend that documents described on the Privilege Log are communications from counsel advising Barnes & Noble as to the proper classification of Café Managers.

Regarding the first contention, plaintiffs advance it despite knowing it is false. Barnes & Noble only became aware of the documents set forth on the Privilege Log during the months after April 19, 2019, when the parties agreed to protocols for a search of ESI. During those ensuing months, Barnes & Noble conducted its searches, produced documents and served a Privilege Log by September 2019. Therefore, as plaintiffs know, Barnes & Noble did not improperly delay the production of a Privilege Log.

---

[1] Defendant Barnes & Noble, Inc. submits this Memorandum of Law in opposition to plaintiffs' Motion to Compel (Dkt. No. 256). We also incorporate by reference our October 30 letter, in which we confirmed our submission for *in camera* review of documents identified by plaintiffs from Barnes & Noble's Privilege Log. (Dkt. No. 263).

Regarding the second contention, as defense counsel has represented numerous times to plaintiffs' counsel and the Court, we are not aware of any document in the possession, custody or control of Barnes & Noble in which counsel advised Barnes & Noble as to the proper classification of Café Managers.  Having never seen Barnes & Noble's privileged documents, plaintiffs do not know for sure that they are falsely accusing defense counsel of lying, but the reckless certainty with which they level that serious accusation is troubling and sanctionable.  In any event, the Court's *in camera* review of the 50+ documents identified by plaintiffs will confirm the truth of defense counsel's repeated representations.

## ARGUMENT

## PLAINTIFFS' MOTION TO COMPEL IS BASELESS.

A.   **The Timing of the Production of the Privilege Log was Appropriate and Communicated Well in Advance.**

After identifying privileged and work product documents during searches of corporate e-mail accounts conducted pursuant to agreed-upon ESI protocols, Barnes & Noble promptly served plaintiffs with a Privilege Log in a timely manner.[2]  Nonetheless, in a knowing effort to mislead the Court, plaintiffs contend that Barnes & Noble concealed the existence of privileged documents for two and a half years before identifying them on a Privilege Log.  (Pl. Brf. at 1).  The record easily refutes this accusation.

By way of background, in a letter dated July 24, 2018, plaintiffs:  (1) acknowledged that the parties had not yet conducted discovery of the e-mails of corporate custodians; and (2) invited defense counsel to begin negotiating ESI protocols.  Specifically, the letter stated:  "As we did not

---

[2] The corporate e-mail accounts at issues were, as indicated in plaintiffs' letter to the Court of April 5, 2019:  Michelle Smith, Janet Brienza, Ryan Cardwell, Kevin Vilke and Steve Cornell.  (Dkt. No. 225).

seek ESI during the first phase of the collective action and agreed to defer ESI to this phase, we do not have any protocols in place.   We are writing to work with Defendant to establish an appropriate ESI protocol."[3]   (Exhibit 1).[4]

After defense counsel received that letter, the parties began negotiating ESI protocols.   On August 24, 2018, in an e-mail to plaintiffs, defense counsel recounted the following:   "When we spoke on August 9, you said that you want ESI searched for documents responsive to RFP Request Nos. 19-24. Subject to and without waiving any objection (including objections on the basis of privilege and work product), we have no reason to believe that documents exist that are responsive to Request Nos. 22, 23 or 24, but we are willing, within reason and proportional to the needs of the case, to identify custodians and conduct narrow searches of e-mails for non-privileged documents responsive to Request Nos. 19, 20 and 21." (Exhibit 2).[5]   From there, the negotiations over ESI moved forward.

On October 19, 2018, plaintiffs submitted a Joint Status Report to the Court.   (Dkt. No. 173).   In the Joint Status Report, plaintiffs provided the following update regarding the search of

---

[3] It was not technically accurate to state that plaintiffs had not sought ESI during the "first phase" of discovery.   Plaintiffs had requested and Barnes & Noble had produced extensive ESI regarding each plaintiff and opt-in.   However, the parties had not conducted ESI regarding corporate custodians.

[4] References to the documents attached to and the paragraphs of the accompanying Declaration of Daniel H. Aiken, Esq. (the "Aiken Declaration") are designated respectively as "(Exhibit __)" and "(Aiken Dec. ¶__)."

[5] Those requests sought the production of:   "Time studies, observational studies, and/or time and motion studies concerning time spent on tasks performed and/or hours worked by CMs" (Request No. 19); "Documents that refer or relate to the decision(s) to classify (including any decision(s) to maintain the classification) of CMs as exempt, including any reviews, audits, emails, communications, or analyses in connection with such decision(s)" (Request No. 20); and (3) "Documents that refer or relate to the decision(s) to re-classify CMs as non-exempt in or about October 2016, including any reviews, audits, e-mails, communications, or analyses in connection with such decision(s)" (Request No. 21).   (Exhibit 3).

corporate ESI: "In addition to Michelle Smith, Defendant identified the following corporate-level ESI custodians: Ryan Cardwell, Kevin Vilke, and Janet Brienza. The parties are conferring about additional corporate and regional-level custodians. If the parties are unable to reach an agreement, they will address these issues with the Court at the November 14, 2018 status conference." (*Id.*). On October 22, 2018, the Court issued a Scheduling Order directing the parties to complete "[a]ll ESI discovery" by December 10, 2018. (Dkt. No. 176).

Plaintiffs knew that completing negotiations regarding the ESI protocols was a prerequisite for defense counsel to review corporate-level e-mail accounts. Indeed, in a letter to the Court on October 31, 2018, plaintiffs complained that defense counsel was not accepting their positions regarding the ESI protocols, which was delaying the review and production of corporate ESI. (Dkt. No. 180). As set forth in that letter, by that date, Barnes & Noble had not yet searched or produced any corporate-level ESI. In fact, in the letter, plaintiffs complained about defense counsel's failure to agree with them on either the identities of the custodians or the search process. In the letter, plaintiffs stated: "To date, Defendant has produced no ESI from corporate-level custodians." (*Id.*).

Barnes & Noble filed opposition to plaintiffs' letter (Dkt. No. 183) and, on November 5, 2018, the Court conducted a telephone conference. (Dkt. No. 184). The Court issued an Order on November 6, 2018, directing the parties to, *inter alia*, "meet and confer on ESI discovery, after which Defendant shall produce a sample set of ESI documents for Plaintiffs' review." (*Id.*).

On December 14, 2018, defense counsel provided the Court with an update regarding the status of ESI discovery. (Dkt. No. 194). In the letter, defense counsel explained:

> The parties have made good progress and are continuing to confer on a protocol for the corporate-level accounts. The parties agree that Barnes and Noble will run searches, and provide hit reports, on certain additional search terms requested by Plaintiffs in order to further inform a protocol for these accounts. Barnes and Noble is currently awaiting a list of requested additional search terms,

including combination terms, and will provide hit reports for those terms when received.

(*Id.*).

Further demonstrating that negotiating ESI protocols delayed the substantive review of corporate e-mail accounts, in an e-mail on December 17, 2018, defense counsel indicated to plaintiffs: "the only custodian at issue who could, in theory, have emails from Bryan Cave related to the Café Manager exemption is Michelle Smith, *and we're still negotiating the protocol for those searches.*"  (Exhibit 4) (emphasis added).  Likewise, in an e-mail to defense counsel on December 20, 2018, plaintiffs proposed searches that they wanted defense counsel to conduct, as follows:

> Additionally, *we ask that you run searches* for the corporate HR custodians that go to classification, willfulness and Barnes and Noble's good faith defense without date restrictions.  *Please run the searches* without date restrictions using the highlighted terms contained in the attached hit report you provided for Smith.

(Exhibit 5) (emphasis added).

Clearly, plaintiffs understood that defense counsel had not yet conducted a formal search of corporate e-mail accounts.  Indeed, during a Court Conference on January 3, 2019, the parties informed the Court that they were negotiating ESI protocols with regard to the forthcoming search of various e-mail accounts.  At the end of the conference, the Court stated to the parties:  "I'd also like an update by the end of this month as to your final agreement with respect to ESI." (Tr. 1/3/19 at 34:16-17).[6]

On February 6, 2019, plaintiffs asked defense counsel when Barnes & Noble would be producing additional documents and providing a Privilege Log.  Specifically, plaintiffs stated:

---

[6] The transcript from the January 3 Court Conference is attached as Exhibit 6 to the accompanying Aiken Declaration.

"Defendant was ordered to conduct a more thorough search for responsive documents and provide a privilege log of any documents withheld. Can you please advise when we can expect the privilege log and additional responsive documents?" (Exhibit 7). On February 8, 2019, defense counsel responded: "we're in a holding pattern until we agree [on] a protocol." (Exhibit 8).

During a Case Management Conference on March 12, 2019, the parties informed the Court that they were still negotiating ESI protocols. The Court asked, "Do you anticipate being in a position to at least complete this protocol by the end of this month?" (Tr. 3/12/19 at 4:20-22).[7] Defense counsel explained that, because the ESI protocols were still unsettled, we had not yet reviewed and produced electronic documents or identified privileged documents from that review to identify on a Privilege Log. (Tr. 3/12/19 at 9:9-13). Defense counsel stated: "So when we have the protocol in place we're going to search. We're going to confirm. If anything else comes out then we'll produce a privilege log after that. That's our plan." (Tr. 3/12/19 at 9:3-13). Plaintiffs' counsel was already aware of this plan and did not object. Nor did plaintiffs voice the baseless theory upon which they rely now, that defense counsel had already – before the parties agreed on protocols – reviewed the ESI, identified privileged documents and unjustifiably failed to identify them on a Privilege Log.

On April 19, 2019, the parties informed the Court that they had "reached an agreement concerning the search and review of ESI of store-level and selected corporate custodians." (Dkt. No. 232). Barnes & Noble's review and production began with store-level accounts and then proceeded to corporate-level accounts (which is where we discovered privileged documents). Defense counsel explained in an e-mail to plaintiffs on May 30, 2019, "[o]ur current estimate to

---

[7] The transcript from the March 12 Court Conference is attached as Exhibit 9 to the accompanying Aiken Declaration.

complete the store-level production is next Wednesday" and "our corporate-level production will also follow shortly after the store level production." (Exhibit 10). Thus, as plaintiffs are fully aware, defense counsel did not even begin a substantive review of corporate-level ESI – which is the source of the privileged and work product documents identified on the Privilege Log – until, at the earliest, early June 2019.

On June 11, 2019, in a joint letter seeking to adjourn a Court Conference scheduled for June 17, plaintiffs' counsel informed the Court that "the parties do not have any issues to address before Your Honor." (Dkt. No. 238). On July 31, 2019, in a joint letter seeking to adjourn a Court Conference scheduled for August 6, plaintiffs' counsel informed the Court that, "[a]t present, the parties do not have any issues to address before Your Honor." (Dkt. No. 241).

Meanwhile, in May, June and July 2019, Barnes & Noble produced the vast majority of the documents from the review it had begun in mid-April. Barnes & Noble completed its document production from its review of store and corporate-level documents with the production of a small set of documents on September 23. The next day, on September 24, Barnes & Noble produced a Privilege Log reflecting privileged and work product documents from the review. (Aiken Declaration ¶¶5-7).

Again, plaintiffs are well aware of this history.[8] Nonetheless, they misleadingly and repeatedly insist that Barnes & Noble knew about the privileged documents in March 2017, when they served a Request for Production of Documents. (*See*, *e.g.*, Pl. Brf. at 9 ("This privilege log [produced in September 2019] 'contained many examples of responsive documents which were requested in March 2017, withheld from Plaintiffs for years, and not disclosed on a privilege log

---

[8] Plaintiffs feign ignorance when they flippantly remark, for example: "[i]nexplicably, at the close of discovery, Defendant magically located approximately 320 documents" and "[t]here is no explanation for Defendant's discovery failures." (Pl. Brf. at 1 and 14).

previously'"); Pl. Brf. at 13 ("**Defendant waited two and a half years to identify these responsive documents on a privilege log**") (emphasis in original)).

As plaintiffs are also aware, defense counsel identified the documents reflected on the Privilege Log during searches that began after April 19, 2019, of corporate-level custodian e-mail accounts.  Again, April 19 was the date on which the parties first notified the Court of their agreement on ESI search protocols.  (Dkt. No. 232).  Plaintiffs seek to convince the Court that Barnes & Noble undertook an e-mail review of corporate witness accounts before negotiating protocols for doing so.  Plaintiffs do not and cannot offer a basis for this theory.  Indeed, it makes no sense that defense counsel thoroughly reviewed e-mail accounts before reaching agreement on the protocols and then, presumably, reviewed those accounts again pursuant to the protocols.  That approach would have been expensive, inefficient and pointless.  And, defense counsel informed both plaintiffs' counsel and the Court that we were not proceeding in that way.  (Tr. 3/12/19 at 9:3-13).

Plaintiffs erroneously argue:  "Defendant has never explained why the documents are just now being listed on a privilege log when their e-mail accounts were searched in 2018 and likely before that." (Pl. Brf. at 9-10).  In support of their argument that Barnes & Noble searched e-mail accounts in 2018, plaintiffs point to comments made during a Court Conference on January 3, 2019.  At that time, defense counsel represented that he had preliminarily reviewed the e-mail accounts of Brad Feuer (General Counsel) and Michelle Smith (Vice President of Human Resources), using specific law firm names identified by plaintiffs as the search terms.

The question that prompted this representation by defense counsel was whether Barnes & Noble possessed any e-mails from counsel advising Barnes & Noble as to the proper classification of Café Managers.  It is important to recount the circumstances of how that issue arose.  On or

about November 28, 2018, plaintiffs served Barnes & Noble's counsel, Bryan Cave Leighton Paisner LLP, with a subpoena.  On December 21, 2018, Bryan Cave filed a Motion to Quash the Subpoena.  (Dkt. No. 197).  On December 22, plaintiffs filed opposition to the Motion to Quash. (Dkt. No. 202).  On December 26, the Court issued an Order indicating that the Motion to Quash would be addressed at a Court Conference on January 3, 2019.  (Dkt. No. 203).

In opposing the Motion to Quash, plaintiffs argued that Barnes & Noble had waived the privilege with regard to any advice it received from Bryan Cave regarding the classification of Café Managers.  (Dkt. No. 202 at p. 1).  In light of that argument, in advance of the January 3 Court Conference, defense counsel undertook a preliminary review of the e-mail accounts of the two individuals seemingly most likely to have received e-mails containing such advice.  Defense counsel did not conduct a thorough review of those accounts in order to find documents potentially relevant or responsive to any and all discovery requests.  To the contrary, the review was a narrowly-focused search for any e-mails containing advice from an attorney advising Barnes & Noble whether or not to reclassify Café Managers.

As reflected in the transcript of the January 3 conference, defense counsel said that, based on that preliminary review of the Feuer and Smith e-mail accounts, we did not believe that any e-mails existed in which an attorney advised Bares & Noble as to the proper classification of Café Managers.  Defense counsel made it clear that we had not yet conducted a formal review of those e-mails.  He said:  "But we will, you know, at some point represent that we've done what we think is an exhaustive search."  (Tr. 1/3/19 at 28:3-5).  The Court and plaintiffs' counsel recognized during the January 3 conference that defense counsel had not yet conducted a formal search of e-mail accounts or identified documents for a Privilege Log.  Indeed, the Court stated:  "Barnes and Noble should do a more thorough search, not a rushed one, since you said you only took a week

prior to Christmas, and to provide a privilege log or state that there were no such documents and make that representation as is required under the Federal Rules of Civil Procedure." (Tr. 1/3/19 at 26:14-19).

During the next Status Conference, on March 12, 2019, defense counsel reiterated that we had not searched the corporate e-mail accounts for all potentially-responsive documents, but had searched only for communications in which attorneys had given advice to Barnes & Noble regarding the proper classification of Café Managers. As defense counsel stated: "So my entire exercise was to confirm the lack of any advice." The Court responded "Right" and defense counsel confirmed "And that's what I've done." (Tr. 3/12/19 at 9:25 to 10:2). Defense counsel reiterated that the earlier search was preliminary. He referred to it as "maybe not [a] completely perfect search" and indicated that he had "conducted [it] basically over the holidays." (Tr. 3/12/19 at 11:7-10). Defense counsel said he had not "revisited" that preliminary search but "[w]e are going to do it and we are going to produce a privilege log." (Tr. 3/12/19 at 10:7-13). Again, however, defense counsel made clear that a formal search would not be conducted and a Privilege Log would not be produced until after the parties negotiated search protocols, which had not yet occurred. (Tr. 3/12/19 at 9:3-13).

In short, Barnes & Noble timely served a Privilege Log.

**B.**     **The 50 Sample Documents.**

Plaintiffs' Motion to Compel rests on the premise that the Privilege Log includes documents reflecting advice that Barnes & Noble received from counsel regarding whether Café Managers should be classified as exempt or non-exempt. Indeed, plaintiffs quote at length from the transcript of the January 3 Court Conference to make this point. (Pl. Brf. at 7-8). However, Barnes & Noble does not dispute that, as reflected in the transcripts, we have repeatedly made the

following representation:  we are unaware of any e-mails or other documents in which Barnes &

Noble received advice from counsel regarding the proper classification of Café Managers.[9]

Plaintiffs' motion must fail because this representation was and remains true.  We have

sent to the Court, for *in camera* review, a Privilege Log with hyperlinks to the 50+ documents

regarding which plaintiffs are challenging the privilege and work product designations.  Consistent

with our representations to the Court and opposing counsel, none of those documents contain

advice from an attorney to Barnes & Noble regarding whether Café Managers should be classified

as exempt or non-exempt.  In other words, the documents we have submitted confirm defense

counsel's repeated representations that we are not aware of documents containing advice from

counsel to Barnes & Noble as to the proper classification of Café Managers.  Plaintiffs have no

basis for disputing this representation – much less for accusing defense counsel of misconduct.

Significantly, given that Barnes & Noble is not asserting an advice of counsel defense,

even if Barnes & Noble possessed documents containing legal advice about the proper

classification of Café Managers (which, to our knowledge, it does not), plaintiffs would not be

entitled to obtain them.  *See In re Cty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) (to trigger a

waiver, "a party must *rely* on privileged advice from his counsel to make his claim or defense")

(emphasis in original); *see also* Dkt. No. 199.  In the absence of such documents, the point is moot.

Apparently beginning to belatedly accept that Barnes & Noble possesses no such

documents, plaintiffs now seem to seek production of other privileged communications and work

---

[9] Initially, this representation was based on a targeted review of emails conducted in late December 2018 that focused on correspondence between outside law firms and Barnes & Noble's General Counsel (Brad Feuer) or Barnes & Noble's Vice President of Human Resources (Michelle Smith). Although our review of documents expanded in scope through the parties' ESI protocols, the representation remains accurate.

product as well.  *See, e.g.*, Pl. Brf. at 18 (referring to "the Right Management study/audit for CMs, input regarding exemptions, and the classification and reclassification of CMs").  However, plaintiffs are certainly not entitled to receive other documents having nothing to do with advice regarding whether or not to classify Café Managers as exempt.  Nor do plaintiffs cite case law suggesting otherwise.

To be clear, Barnes & Noble has produced all non-privileged (and non-work product) documents responsive to plaintiffs' discovery requests regarding the Right Management study and the classification of the Café Manager position.  Notably, Barnes & Noble has produced non-privileged attachments to e-mails identified on the Privilege Log, such as documents regarding the Right Management analysis and reclassification cost projections.  By way of example, one of the 50+ documents plaintiffs identified for *in camera* review as part of their Motion to Compel is "PSTs114_0092860 (with attachments)."  (Pl. Brf. at 17).  As indicated on the Privilege Log, the attachment is titled "B&N White Collar Exemption Impact FY17-FY18.xlsx."  Barnes & Noble produced to Plaintiffs that attachment after carrying out the ESI protocol this Summer; it is stamped with production number B&N_0068157.  (Aiken Declaration at ¶8).

As explained in our October 30 letter (Dkt. No. 263), the documents that plaintiffs have identified for *in camera* review fall into four categories and none are discoverable.  The four categories are:  (1) documents related to the preparation of the 2005 Right Management study; (2) an e-mail regarding the 2005 Right Management study and work product from the *Reinard* litigation, which involved only California managers under California law; (3) documents related to the proposed Department of Labor regulations and the October 2016 reclassification of Café Managers; and (4) documents regarding *Hartpence v. Barnes & Noble, Inc.*, which involved

Pennsylvania Café Managers.  The documents are properly designated as privileged and/or work product and, in any event, are largely immaterial to the claims and defenses in this lawsuit.[10]

## C.   Plaintiffs' Frivolous Request for Sanctions.

Based on its *in camera* review during the October 10 Status Conference of seven documents challenged by plaintiffs, the Court upheld Barnes & Noble's privilege and work product designations (with one minor exception)[11] and stated to plaintiffs' counsel:  "So what [defense counsel] has said about these [e-mails] appear[s] to be correct."  The Court continued: "these particular ones that I've looked at don't appear to be material to proof that you would need for anything."  (Tr. 10/10/19 at 16:13-18).[12]

Nonetheless, the Court offered to review a larger sample of documents designated as privileged or work product.  The Court asked plaintiffs to identify 50 additional documents from the Privilege Log for *in camera* review.  The Court directed plaintiffs to identify the 50 documents in a Motion to Compel and directed plaintiffs to focus their briefing on the core issue of whether the privilege should apply:  "So the motion is a motion to compel production of documents that you believe are not privileged, that's the motion" (Tr. 10/10/19 at 37:13-15) and "the motion should focus on the documents, why you think they are relevant and not privileged."  (Tr. 10/10/19 at 38:2-4).

---

[10] As indicated in our October 30 letter, regarding the Right Management study, we are not aware of the existence of any other study of this type for Café Managers.  The communications relating to the Right Management study pertain to the need for, the scope of, and the conduct of the study. We have produced both the study and all of the underlying materials pertaining to the study (after obtaining them from the consultant) of which we are aware.  (Dkt. No. 263).

[11] The Court stated that one document (PSTs121-00371352), an e-mail from a Barnes & Noble in-house attorney to outside counsel, was not privileged because it sought to schedule a telephone call and did not solicit or contain legal advice.  (Tr. 23:15 to 24:1).

[12] The transcript from the October 10 Court Conference is attached as Exhibit 11 to the accompanying Aiken Declaration.

Consistent with those instructions, the Court issued an Order stating: "The motion should identify 50 documents from Defendant's privilege log that Plaintiffs believe should be produced. Defendant will have until October 30, 2019 to oppose the motion and to submit a privilege log with hyperlinks to the 50 documents identified by Plaintiffs to the Court for in camera review." (Dkt. No. 251).

On October 24, plaintiffs filed their Motion to Compel. Rather than simply identifying 50 documents from the Privilege Log for *in camera* review, plaintiffs submitted a 21-page Memorandum of Law and a Declaration with 17 exhibits, focusing almost entirely on their baseless accusations of discovery misconduct. (Dkt. No. 257). Indeed, plaintiffs do not even reach the list of documents for *in camera* review until page 15 of their brief.

Barnes & Noble has had to incur substantial costs in order to respond to plaintiffs' baseless allegations and excessive motion practice. Barnes & Noble respectfully requests that the Court award it fees and costs for having to do so.

## CONCLUSION

For the reasons set forth above, Barnes & Noble respectfully requests that the Court deny plaintiffs' Motion to Compel in its entirety and award fees and costs to Barnes & Noble.

Respectfully submitted,

DRINKER BIDDLE & REATH LLP

By: /s/ Daniel H. Aiken
      Daniel H. Aiken, Esq. (*pro hac vice*)
      One Logan Square, Suite 2000
      Philadelphia, Pennsylvania 19103-6996
      Telephone:  (215) 988-2942
      Facsimile:  (215) 988-2757
      E-mail:  daniel.aiken@dbr.com

      William R. Horwitz, Esq.
      1177 Avenue of the Americas, 41st Floor
      New York, New York 10036-2714
      Telephone:  (212) 248-3140
      Facsimile:  (212) 248-3141
      E-mail:  william.horwitz@dbr.com

      Brooke Razor, Esq.
      One Logan Square, Suite 2000
      Philadelphia, Pennsylvania 19103-6996
      Telephone:  (215) 988-2936
      Facsimile:  (215) 988-2757
      E-mail:  brooke.razor@dbr.com

Attorneys for Defendant
Barnes & Noble, Inc.