USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/23/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
KELLY BROWN and TIFFANY STEWART,
*Individually and on behalf of all others similarly
situated, as Class/Collective representative*,

                             Plaintiffs,

              -against-

BARNES AND NOBLE, INC.,
                            Defendant.
---------------------------------------------------------------X

**OPINION & ORDER**

**1:16-cv-07333 (RA) (KHP)**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

      Plaintiffs have moved to compel documents that Defendant Barnes & Noble, Inc. ("BN") has withheld on the grounds that they are protected by the attorney-client privilege or the work product doctrine. Plaintiffs also seek sanctions against BN for its delayed disclosure of its privilege log in the form of their attorneys' fees and costs associated with their Motion to Compel. BN opposes the Motion, contending that it did not unreasonably delay production of its privilege log and that the documents are properly designated as privileged and/or work product. BN also seeks its attorneys' fees and costs in connection with having to respond to Plaintiffs' Motion to Compel, contending that it was brought in bad faith.

**BACKGROUND**

      Plaintiffs bring this nationwide putative class and collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.,* and certain state laws, contending that BN improperly paid its Café Managers as exempt, salaried employees rather than hourly, overtime-eligible employees. During discovery, Plaintiffs learned that BN hired Right Management Consultants in 2005 to assist with a job analysis of the Café Manager position.

The purpose of the job analysis was to, among other things, assess whether Café Managers were properly classified as exempt from overtime. Plaintiffs also learned that, in 2016, BN reclassified Café Managers as non-exempt after the United States Department of Labor ("DOL") announced that the salary threshold to qualify for the FLSA executive exemption was going to increase to $47,476.[1] To date, BN has produced the Right Management study, all of the underlying materials pertaining to the study, and certain documents related to that reclassification decision. Defendants produced their privilege log to Plaintiffs on September 24, 2019—the very end of discovery.

The bulk of the documents Plaintiffs seek through the instant Motion pertain to the 2005 study and the 2016 reclassification decision. Additionally, one document relates to an email concerning a California lawsuit filed against BN, alleging that California Café Managers were improperly paid as exempt from overtime. Two other documents pertain to emails concerning a Pennsylvania lawsuit filed against BN, alleging that Pennsylvania Café Managers were improperly paid as exempt from overtime.

Plaintiffs argue that the emails listed on Defendant's privilege log should have been identified much earlier in discovery, given that the documents came from Michelle Smith, BN's Vice President of Human Resources, and Brad Feuer, BN's General Counsel, two custodians that BN knew had pertinent documents responsive to Plaintiffs' document requests. Specifically,

---

[1] A number of states and business organizations filed suit to enjoin the implementation of the 2016 rule. Ultimately, in August 2017, a court held that the DOL exceeded its authority in implementing the rule. While the suits were pending, the DOL started the process of seeking public comments on changes to the salary basis test for the so-called "white collar" exemptions, which include the executive exemption. The DOL announced the final rule on September 24, 2019, which raised the salary threshold for the white collar exemptions to $35,568 annually. The rule takes effect on January 1, 2020. *See* U.S. Dep't of Labor, *U.S. Department of Labor Issues Final Overtime Rule*, DOL.GOV (Sept. 24, 2019), https://www.dol.gov/newsroom/releases/whd/whd20190924.

Plaintiffs state that BN should have located and listed the documents on their log while collecting other documents pertaining to the 2005 study and 2016 reclassification decision and preparing Smith for her deposition. Plaintiffs argue that BN's late production of a privilege log, identifying what Plaintiffs believe are critical documents, has prejudiced them in discovery. Plaintiffs also contend that BN should be deemed to have waived privilege by virtue of their failure to comply with their discovery obligations and by asserting a good faith defense to Plaintiffs' FLSA claims.

BN has maintained that Smith made the decisions about whether Café Managers should be classified as exempt during the entire period relevant to this litigation. Smith interacted with BN's General Counsel, Brad Feuer, and other in-house lawyers (*e.g.*, Allison Spivak, former Director of Legal Affairs for Human Resources), as well as outside counsel on wage and hour issues. In-house attorneys commented on strategy concerning the 2005 study and how it might impact the wage and hour lawsuit pending in California at the time (the "*Reinard* Litigation") and also on draft documents and strategy pertaining to the 2016 reclassification of Café Managers. Additionally, Smith interacted with lawyers from Bryan Cave Leighton Paisner LLP in connection with the 2005 study and with lawyers from Jackson Lewis P.C. regarding the 2016 rule change announced by the DOL that precipitated the change to the Café Managers' classification from exempt to non-exempt. She also shared draft documents pertaining to the 2016 reclassification of Café Managers with lawyers from Jackson Lewis. Notwithstanding her consultation with attorneys regarding the 2005 job study and 2016 reclassification of Café Managers, BN submits that its good faith defense is based solely on Smith's decision-making

and not on advice from counsel. It, therefore, argues that it has not waived privilege because its good faith defense is not based on reliance on advice of counsel.

BN also vigorously disputes that it delayed production of a privilege log. It explains that it did not conduct a search of Smith's or Feuer's emails until the parties agreed on a protocol to search Electronically Stored Information ("ESI"). The parties did not reach an agreement on that protocol until April 2019. BN then reviewed and produced documents in tranches through September 2019. Plaintiffs learned of the documents at issue in this Motion when BN produced its privilege log in September 2019, days before the close of discovery.

## DISCUSSION

The purpose of discovery is to allow the parties to litigate based on complete information because "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). The Federal Rules of Civil Procedure (the "Rules") are designed to achieve this purpose in the most economic, efficient and fair way, and it is essential that parties follow the Rules. However, the Rules are designed to be general and flexible so they can be applied in the myriad cases before the federal courts. As a result, competing obligations under the Rules can create tension.

The present dispute highlights the problem with the current procedure for negotiating ESI protocols and the lack of clarity in the Rules about what constitutes a reasonable inquiry for purposes of responding to discovery requests prior to searching emails pursuant to a negotiated ESI protocol. Plaintiffs served discovery requests in 2017 that called for documents pertaining to any job studies or classification decisions for the Café Manager position. BN searched for such documents and produced them. BN also identified Smith and Feuer as

4

relevant custodians of records early on, and both witnesses no doubt assisted in the collection of relevant documents. These included documents pertaining to the 2005 study and 2016 reclassification decision, which were produced early in discovery. It is unclear where and how BN obtained all these documents. However, BN maintains that it did not undertake a formal review of Smith's or Feuer's emails — the location of the documents listed on their privilege log — until an agreed-upon ESI protocol was in place in order to conserve costs and avoid having to redo its search, review, and production process. Unfortunately, it took the parties six months to negotiate and agree on an ESI protocol. It then took BN an additional six months to review and produce documents from the relevant custodians, after which it produced its privilege log.

### A. Whether BN Conducted a Reasonable Inquiry for Relevant Documents

Several Rules are pertinent to the Court's resolution of the current dispute. The first relates to BN's obligation to conduct a reasonable inquiry for documents and information responsive to Plaintiffs' document requests. When BN produced certain documents pertaining to the 2005 study and 2016 reclassification decision, its attorneys certified, pursuant to Federal Rule of Civil Procedure 26(b), that they had made a reasonable inquiry and that BN's disclosures were complete and accurate when made. Fed. R. Civ. P. 26(g). "The duty to make a 'reasonable inquiry' is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances. It is an objective standard similar to the one imposed by Rule 11. . . . Ultimately, what is reasonable is a matter for the court to decide on the totality of the circumstances." Fed. R. Civ. P. 26 advisory committee's note to 1983 amendment.

The Court also notes that "[n]othing in Rule 26(g) obligates counsel to disclose the manner in which documents are collected, reviewed and produced in response to a discovery request." Karl Schieneman and Thomas C. Gricks III, *The Implications of Rule 26(g) on the Use of Technology-Assisted Review*, 7 FED. CTS. L. REV. 239, 254 (2013); *see also Entrata, Inc. v. Yardi Systems, Inc.*, 2:15-cv-00102, 2018 WL 5470454, at *6 (D. Utah Oct. 29, 2018) (upholding decision denying Yardi's motion to compel production of the methodology and results of Entrata's technology assisted review ("TAR") process); *Winfield v. City of New York*, 15-CV-05236 (LTS) (KHP), 2017 WL 5664852, at *9 (S.D.N.Y. Nov. 27, 2017) (discussing degree of transparency required by the producing party as to its ESI process).  Thus, a producing party arguably could choose to adopt the ESI protocol it deems best aimed at locating relevant documents, consistent with its obligation under Rule 26, without disclosing its process to the requesting party.

However, the Rules also require cooperation in discovery to achieve a just, speedy, and inexpensive determination of a case.  Where ESI is concerned, this typically means the parties are expected to meet and confer about custodians of relevant ESI, date ranges for searches of ESI, and other search parameters.  Fed. R. Civ. P. 1 and 26(f); *see also, e.g.*, *Winfield*, 2017 WL 5664852, at *7 (recognizing that collection, review and production of ESI requires cooperation between the parties); *UnitedHealthcare of Fla., Inc. v. American Renal Assocs. LLC*, No. 16-cv-81180-Marra/Matthewman, 2017 WL 4785457, at *4 (S.D. Fla. Oct. 20, 2017) ("Courts expect that counsel will endeavor to cooperate and reach agreements early in litigation regarding . . . the method of search (keyword, TAR, combination) . . . ." (internal quotation marks and citation omitted)).

Here, BN did not plow forward with ESI discovery without consulting with Plaintiffs; rather, the parties met and conferred on an ESI process. Although the process was time-consuming, the drawn-out negotiation and finalization of the ESI protocol was not caused by bad faith of either side. In this Court's experience, the negotiation of ESI protocols takes an inordinate amount of time and tends to delay, rather than expedite, discovery. Disputes frequently arise about which and how many custodians' records will be searched, search terms, the scope of so-called seed sets used in some active learning TAR processes, and appropriate sampling and quality control processes.

Furthermore, negotiations tend to be protracted because they often involve testing and refining of search parameters. Once documents are loaded onto a review platform, attorneys then must review the documents to train any predictive coding algorithms, and determine the documents that will be produced and those that will be withheld on privilege or work product grounds.[2] The review process itself is time-consuming. The average rate of review is about 40-60 documents per hour, though the rate of review can vary considerably based on the complexity of the documents and the experience of the reviewers. Assuming a case involves review of 100,000 documents, it would take 2000 hours for an attorney to review these documents for production if reviewing them at a rate of 50 documents per hour.[3] *See*

---

[2] Though Federal Rule of Evidence 502(d) has made it possible for parties to enter into so-called "quick peek" agreements without jeopardizing attorney-client and work product protection, many parties still review documents for privilege prior to production due to ethical concerns about the handling of confidential client information and strategical concerns about letting an adversary "under the hood."

[3] Because of the proliferation of electronic means of communication, the average case can involve the collection and/or review of 100 gigabytes of data, which is equivalent to 6.5 million pages of Microsoft Word documents. *See, e.g.*, Kristin Kolasinski, *E-Discovery Fact Week Day Four: Examining E-Discovery Data Volumes*, EXTERRO.COM (July 26, 2018), https://www.exterro.com/blog/e-discovery-fact-week-day-four-examining-e-discovery-data-volumes/.

*Blackrock Allocation Target Shares: Series S Portfolio v. Bank of New York Mellon*, 14 Civ. 9372 (GBD)(HBP), 2018 WL 2215510 (S.D.N.Y. May 15, 2018) (recognizing special challenges of ESI discovery, including voluminous data).

Finally, ESI collection and review can be expensive. ESI vendors charge for hosting and processing data, as well as testing and refining search protocols. And, depending on the hourly rates for the review team, the review process in the hypothetical case mentioned above involving 100,000 documents could cost $500,000 or more. One recent study reported that legal document review can represent 70 percent or more of the cost of a litigation. *See* Jennifer Booton, *Don't send another email until you read this*, MARKETWATCH (Mar. 9, 2015), https://www.marketwatch.com/story/your-work-emails-are-now-worth-millions-of-dollarsto-lawyers-2015-03-06. The cost involved makes it imperative that reviewer time not be wasted by having to repeatedly redo searches and reviews of documents. Technology is improving and ultimately may provide tools at lower costs that provide greater efficiency and may eliminate the need for negotiated ESI protocols. In the meantime, however, litigants, who often distrust that their adversaries are searching in all the right places and in all the right ways for relevant documents, must engage in the time-consuming process of meeting and conferring about eDiscovery. Requesting parties who engage in this process must be mindful of the costs and time associated with ESI production, consistent with their obligation under Rule 1.

Here, the parties cooperated and updated the Court regularly on their progress with the ESI protocol. Prior to conducting its formal ESI search, BN searched for documents responsive to Plaintiffs' discovery requests and produced significant quantities of documents. It is unclear what process it undertook, but the Court has no reason to doubt BN's representation that it did

not locate the documents on its privilege log until earlier this year, when it implemented the agreed upon search protocol on Smith's and Feuer's email. The question, then, is whether BN's failure to locate the privileged emails earlier rendered its prior inquiry unreasonable in contravention of Rule 26(g).

Plaintiffs contend that BN easily could have located the emails by asking Smith and Feuer to simply review their emails from their desks and forward all emails pertaining to the 2005 study and the 2016 reclassification decision. This would have resulted in a two-step ESI collection process and potentially altered metadata in the emails that were forwarded for production or changed folder locations. Altered metadata and changed folder locations may adversely impact the ability to utilize some eDiscovery efficiency tools that utilize native metadata such as deduplication technology. Such a non-forensically sound method of collection, therefore, is not ideal. It also can expose a party to accusations that it has not properly preserved data.[4] Accordingly, BN explains that it did not conduct a thorough review of email accounts before reaching an ESI protocol because such an approach would have been expensive and inefficient. Plaintiffs did not protest this and were aware of the delay in the search.[5] Based on this Court's knowledge of the discovery process in this case, and in light of

---

[4] While the parties could have agreed to this type of "short cut" collection, in lieu of a forensically sound ESI collection procedure, that is not the approach they took in this case. The Court takes no position on whether such a short cut procedure would have been appropriate.

[5] A producing party generally has an obligation to collect and review ESI pursuant to its own search protocol (that is, prior to reaching a negotiated ESI protocol) and to provide the requesting party with the names of custodians whose ESI was searched, date ranges for the searches, and any search terms applied. Such information is properly included in written responses to document requests pursuant to Rule 34's specificity requirements. Rather than insisting on weighing in on an ESI protocol before an ESI search is done, a requesting party may rely on a producing party to do its own search to expedite ESI production and the discovery process. A producing party is usually in the best position to know where to find relevant documents. Moreover, attorneys have an obligation to certify that they have conducted a reasonable inquiry under Rule 26(g). If problems are found with the search, a requesting

the costs and realities of the eDiscovery process that the parties agreed to undertake, the Court finds that BN complied with its obligations to conduct a reasonable search for documents throughout the litigation, including prior to the implementation of the agreed upon ESI protocol.

### B. Whether BN Timely Produced a Privilege Log

The next issue is whether BN timely produced a privilege log, as required by Federal Rules of Civil Procedure 26(b)(5) and 26(e) and Local Rule 26.2. The Local Rule expressly requires that privilege logs be provided "at the time of the response to such discovery or disclosure, unless otherwise ordered by the Court." Local Rule 26.2; *see also* Fed. R. Civ. P. 26. The unjustifiable failure to timely provide a privilege log operates as a waiver of any applicable privilege. *See FG Hemisphere Assocs., L.L.C. v. Republique Du Congo*, No. 01 Civ. 8700 (SAS)(HBP), 2005 WL 545218, at *6 (S.D.N.Y. Mar. 8, 2005) (collecting cases).

BN states that it learned of the documents at issue as it was conducting its review from April through September 2019. BN started its review with store-level custodial accounts and first produced tranches of emails from these accounts. It completed its ESI review by reviewing corporate-level accounts, including Smith's and Feuer's emails. On May 30, 2019, BN informed Plaintiffs that it expected to complete store-level production within a week and would begin producing documents from the corporate-level accounts in June. The privileged emails were discovered at some point between June and September. BN apparently produced documents in June and July, although it is unclear whether those productions included documents from

_____

party can raise them afterwards. The rub here, of course, is that such a two-step process may result in increased costs for the producing party.

Smith and Feuer. BN's last document production was on September 23, 2019 and it provided its privilege log on September 24, 2019.

Plaintiffs allege that BN waited for two and a half years before finally providing its privilege log. However, it appears that, at most, BN delayed production of its log by a few months, insofar as it did not provide a log with each tranche of its ESI production from its corporate-level custodians. This Court does not condone waiting on the production of a privilege log until the end of a rolling ESI production. Producing parties should provide a log with each production tranche and/or on a rolling basis. This allows the receiving party to timely raise issues about withheld documents. It also allows for the review of smaller subsets of documents and smaller *in camera* reviews (if necessary), allowing for early clarification of privilege issues. Such a process is fairer to the requesting party, more efficient, and less costly. Additionally, Rule 26 contemplates the supplementation of privilege logs throughout discovery. Fed. R. Civ. P. 26(e).

On the other hand, it is unclear whether the documents in question were discovered in time to be placed on a log with the June or July productions. The last production, which occurred in September, was accompanied by the privilege log. This case does not involve violations like the ones resulting in waiver of privilege cited by Plaintiffs. *See, e.g.*, *Johannes v. Lasley*, 17-CV-3899 (CBA)(AYS), 2019 WL 1958310 (E.D.N.Y. May 2, 2019) (defendants failed to serve privilege log altogether); *FG Hemisphere Assocs., L.L.C.*, 2005 WL 545218 (no privilege log produced at time of production or for six months thereafter, in contravention of court order). And, the Court is unaware of cases finding that a log produced in similar situations was untimely and resulted in a waiver.

Further, the Court does not believe the waiver rule was contemplated for the circumstance here. The Committee Note to Local Rule 26.2 recognizes that, with the proliferation of emails and email chains, traditional privilege logs are expensive and time-consuming to prepare. The Committee Note also states that parties should cooperate to develop efficient ways to communicate the information required by Local Rule 26.2 without the need for a traditional log and otherwise proceed in accordance with Rule 1 to ensure a just, speedy and inexpensive termination of the case. Here, BN cooperated with Plaintiffs and timely updated the Court and Plaintiffs of the progress of its ESI production and Plaintiffs agreed to this process. BN also produced a traditional, detailed log in conformance with Local Rule 26.2 at the time of its September 2019 production. In these circumstances, a finding of waiver of privilege is inappropriate. The proper remedy is to provide Plaintiffs additional time for discovery, to the extent needed, based on any documents improperly withheld as privileged.

### C. *Whether the Documents Were Properly Withheld on the Basis of Privilege and Work Product*

#### 1. Legal Standards

BN has withheld certain documents on the grounds of attorney-client privilege and others because they are purportedly work product. The party withholding a document on the basis of attorney-client privilege or the work product doctrine bears the burden of establishing facts to demonstrate applicability of the protective rule. *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224–25 (2d Cir. 1984). Federal Rule of Civil Procedure 26(b)(5) and Local Civil Rule 26.2 require the party withholding a document to prepare a privilege log, which BN has done. "The standard for testing the adequacy of the privilege log is whether, as to each document, it sets forth specific facts that, if credited, would suffice to establish each element of

the privilege that is claimed."  *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 274

F.R.D. 106, 112 (S.D.N.Y. 2011) (internal quotation marks and citation omitted)*; Orbit One*

*Commc'ns, Inc. v. Numerex Corp.,* 255 F.R.D. 98, 109 (S.D.N.Y. 2008) (a party must justify its

assertion of privilege by providing sufficient information for its adversary to assess any

potential objections).

The attorney-client privilege protects communications between client and counsel made

for the purpose of obtaining or providing legal advice that were intended to be, and in fact

kept, confidential.  *See In re County of Erie*, 473 F.3d 413, 418–19 (2d Cir. 2007); *United States v.*

*Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996).  The privilege is narrowly

construed because it renders relevant information undiscoverable.  *See Fisher v. United States*,

425 U.S. 391, 403 (1976); *In re County of Erie*, 473 F.3d at 418.  The privilege also applies to a

company's communications with its external and in-house lawyers.  However, in light of the

two hats often worn by in-house lawyers, communications between a corporation's employees

and its in-house counsel, though subject to the attorney-client privilege, must be scrutinized

carefully to determine whether the predominant purpose of the communication was to convey

business advice and information or, alternatively, to obtain or provide legal advice.  If the

former, the communication is not protected by the attorney-client privilege.  *See In re County of*

*Erie*, 473 F.3d at 418, 420; *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731

F.2d 1032, 1036–37 (2d Cir. 1984).

Pursuant to Rule 26(b)(3) of the Federal Rules of Civil Procedure, documents and

tangible things prepared by a party or its representative in anticipation of litigation are

protected under the work product doctrine.  *See* Fed. R. Civ. P. 26(b)(3)(A); *Welland v. Trainer,*

No. 00 Civ. 0738(JSM), 2001 WL 1154666, at *2 (S.D.N.Y. Oct. 1, 2001) (if a document was

prepared "in anticipation of litigation," it is eligible for work product protection (citing *United

States v. Adlman,* 134 F.3d 1194, 1202 (2d Cir. 1998)), *aff'd sub nom. Welland v. Citigroup Inc.*,

116 F. App'x 321 (2d Cir. 2004); *see also Hickman v. Taylor*, 329 U.S. 495 (1947) (establishing

and articulating application of the work product doctrine).  "The key factor in determining

applicability of this doctrine is whether the documents or things were prepared 'with an eye

toward' or 'in anticipation of' or 'because of the prospect of litigation.'"  *Pearlstein v. BlackBerry

Ltd.*, No. 13-CV-07060 (CM)(KHP), 2019 WL 1259382, at *5 (S.D.N.Y. Mar. 19, 2019) (first

quoting *Hickman*, 329 U.S. at 508, 510–11; then quoting *Schaeffler v. United States*, 806 F.3d

34, 43 (2d Cir. 2015)); *see also Adlman*, 134 F.3d at 1202.

  "[T]he doctrine is not satisfied merely by a showing that the material was prepared at

the behest of a lawyer or was provided to a lawyer. Rather the materials must result from the

conduct of 'investigative or analytical tasks to aid counsel in preparing for litigation.'"  *In re

Symbol Techs., Inc. Sec. Litig.*, No. 05-3923 (DRH) (AKT), 2017 WL 1233842, at *8 (E.D.N.Y. Mar.

31, 2017) (quoting *Wultz v. Bank of China Ltd.,* 304 F.R.D. 384, 393–94 (S.D.N.Y. 2015)).  Thus, a

court must determine if the material "'would have been prepared in essentially similar form

irrespective of litigation.'"  *Id*. at *8 (quoting *Allied Irish Banks v. Bank of Am.*, *N.A.*, 240 F.R.D.

96, 106 (S.D.N.Y. 2007) (quoting *Adlman*, 134 F.3d at 1202)); *see also Clarke v. J.P. Morgan

Chase & Co.*, No. 08 Civ. 2400(CM)(DF), 2009 WL 970940, at *7 (S.D.N.Y. Apr. 10, 2009).  But,

unlike the rule for invoking attorney-client privilege, the predominant purpose of the work

product need not be to assist with litigation; rather, the work product need only have been

prepared or obtained because of the "prospect of litigation."  *Adlman*, 134 F.3d at 1202

(internal quotation marks and citation omitted); *see also In re Symbol Techs., Inc. Sec. Litig.*, 2017 WL 1233842, at *8.

The work product doctrine is not absolute.  Fact work product is subject to disclosure upon "a showing of substantial need and inability to obtain the equivalent without undue hardship."  *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981); *see also Hickman*, 329 U.S. at 511; *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183–84 (2d Cir. 2007); *Adlman*, 134 F.3d at 1204.  "A substantial need exists 'where the information sought is 'essential' to the party's defense, is 'crucial' to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues.'" *Gucci Am., Inc. v. Guess?*, Inc., 271 F.R.D. 58, 74–75 (S.D.N.Y. 2010) (quoting *National Congress for Puerto Rican Rights v. City of New York*, 194 F.R.D. 105, 110 (S.D.N.Y. 2000)).

Finally, a party may be deemed to have waived privilege or work product protection by asserting a defense of good faith reliance on counsel.  This type of waiver is sometimes referred to as the at-issue waiver or the fairness doctrine.  *See generally Pearlstein*, 2019 WL 1259382, at *7–8.  The rule is that a party cannot assert reliance on counsel as a defense or selectively proffer protected information in litigation without waiving privilege.  Fairness requires waiver in these circumstances so a party's adversary may fully explore the validity of the good faith defense and prepare cross examination.  *In re County of Erie*, 546 F.3d at 228–29 (2d Cir. 2008); *In re Grand Jury Proceedings*, 219 F.3d 175, 190–91 (2d Cir. 2000); *In re Lehman Bros. Holdings, Inc.*, No. 10 Civ. 6200(RMB)(FM), 2011 WL 2651812, at *2 (S.D.N.Y. June 22, 2011); *In re Omnicom Grp., Inc. Sec. Litig.*, 233 F.R.D. 400, 413–414 (S.D.N.Y. 2006).

Generally, to trigger a waiver, "a party must *rely* on privileged advice from his counsel to make his claim or defense." *In re County of Erie*, 546 F.3d at 229. However, courts have found that "advice of counsel may be placed in issue where, for example, a party's state of mind, such as his good faith belief in the lawfulness of his conduct, is relied upon in support of a claim of defense." *Leviton Mfg. Co. v. Greenberg Traurig LLP*, 09 Civ. 8083(GBD)(THK), 2010 WL 4983183, at *3 (S.D.N.Y. Dec. 6, 2010). In these situations, courts have found that a finding of implied waiver was warranted. *See Scott v. Chipotle Mexican Grill, Inc.*, 67 F. Supp. 3d 607 (S.D.N.Y. 2014) (in case alleging that salaried apprentices were misclassified and entitled to overtime pay, defendant claimed good faith defense of reliance on applicable regulations; court recognized that legal advice might demonstrate falsity of good faith defense and held that plaintiffs were entitled to know if defendant ignored counsel's advice about the classification of apprentices); *Wang v. Hearst Corp.*, 12 CV 793(HB), 2012 WL 6621717 (S.D.N.Y. Dec. 19, 2012) (in case alleging that interns were misclassified and were due minimum wages and overtime pay, defendant asserted good faith defense; court found that fairness doctrine warranted production of documents bearing on defendant's state of mind and ordered production of privilege log and submission of documents for *in camera* review). A defendant may not avoid waiver by attempting to frame its good faith defense as "not formed on the basis of legal advice." *Wang*, 2012 WL 6621717, at *2 ("Defendant's assurance that it would 'limit any good faith defense to one in which the state of mind was not formed on the basis of legal advice' amounts to little more than semantics . . . . I find it difficult to imagine that a good faith defense regarding the FLSA raised by a corporation as large and as sophisticated as Hearst would not involve the advice of its legal department . . . ."); *Favors v. Cuomo*, 285 F.R.D. 187, 199 (E.D.N.Y.

2012) ("[I]t would be unfair for a party asserting contentions [of good faith] to then rely on its privileges to deprive its adversary of access to material that might disprove or undermine the party's contentions." (internal quotation marks and citation omitted)).  When determining that fairness requires a finding of waiver, a court must exercise caution based on the facts of the case and specific context in which privilege has been asserted.  *See Leviton Mfg. Co., Inc.*, 2010 WL 4983183, at *3.

## 2. Documents at Issue

In total, there are 320 documents that BN has withheld as privileged.  As directed by the Court, Plaintiffs have identified 50 documents on BN's privilege log as a sample for *in camera* review.  The documents are set forth in the following chart:

| CATEGORY | CONTROL NUMBERS |
|:---:|:---|
| 1 | PSTs06_00002126;  PSTs06_00002141;  PSTs06_00002303; PSTs06_00002760;  PSTs06_00002773;  PSTs06_00002961; PSTs06_00005216;  PSTs06_00006208;  PSTs06_00006275; PSTs06_00006328;  PSTs06_00006518;  PSTs06_00008667; PSTs06_00008668;  PSTs06_00009135;  PSTs06_00009138; PSTs06_00009141;  PSTs06_00009148;  PSTs06_00009150; PSTs06_00009162;  PSTs06_00009193;  PSTs06_00009198; PSTs06_00009199;  PSTs06_00009219;  PSTs06_00009196; PSTs06_00006278 |
| 2 | PSTs06_00009160 |
| 3 | PSTs17_0149490; PSTs106_00007818; PSTs106_00008220; PSTs114_0070744; PSTs114_0070852; PSTs114_0070930; PSTs114_0071340; PSTs114_0085594; PSTs114_0092860; PSTs114_0068246; PSTs121_00371353; PSTs121_00371357; PSTs17_0098995; PSTs17_0148889; PSTs17_0149442; PSTs17_0149488; PSTs17_0149489; PSTs17_0151385; PSTs17_0173160; PSTs17_0173162; PSTs17_0177363; PSTs17_0177364 |
| 4 | PSTs17_0155198; PSTs17_0155201 |

Documents in Category 1 pertain to the 2005 job study.  All of these documents have been withheld on the basis of attorney-client privilege.  Additionally, documents ending in Bates numbers 5216 and 8667 are withheld on the basis that they are work product.  The document in Category 2 pertains to the *Reinard* Litigation and has been withheld on the basis of the attorney-client privilege and work product doctrine.  Documents in Category 3 pertain to the 2016 reclassification decision.  These documents are all marked as privileged attorney-client communications, except that the documents ending in Bates numbers 151385 and 8220 are also marked as work product.  Documents in Category 4 pertain to a Pennsylvania litigation involving Café Managers (the "*Hartpence* Litigation") and are marked as work product.

The vast majority of the documents this Court reviewed are not, in fact, subject to the attorney-client privilege because they do not seek or convey legal advice.  For example, many are emails forwarding drafts or other documents or contain general comments about a draft document that do not appear to reflect the request for or giving of legal advice.

However, the following documents on the log are protected by attorney-client privilege and/or the work product doctrine:

- Documents ending in Bates Numbers 149488, 149489, 149490, 0173160, 0173162, 70744, 70852, 70930, and 85594 pertain to legal advice regarding state law requirements for meeting state exemptions to overtime pay for CBDM sales positions and/or advice concerning reclassification of Café Managers.  To the extent the email chains concern the CBDM positions, they are not relevant to this litigation.

- Documents ending in Bates Numbers 151385, 0008220, and 71340 reflect a request for legal advice, insofar as they are communications between in-house counsel and external counsel about a meeting requested to discuss wage and hour issues.  They arguably also constitute work product, to the

extent the meeting was requested in the context of defending nationwide misclassification class action pertaining to café managers.

- The document ending in Bates number 6278 is an attachment to an email from Right Management Consultants to Smith and Feuer reflecting the results of the study with respect to the amount of time spent by Café Managers on various tasks. The study itself was conducted at the suggestion of outside counsel, in part, in connection with the defense of the *Reinard* Litigation, and the document itself is labeled privileged and confidential. To the extent the study was conducted because of the California litigation, the document arguably reflects fact work product as well. However, BN has not demonstrated that this document would not have been prepared in the same way but for the California litigation or that it pertains only to California Café Managers. Therefore, BN has failed to meet its burden to demonstrate that this document is work product.

- The document ending in Bates number 371357 includes notes of inhouse counsel and reflect attorney-client communications about the classification of the CBDM and Café Manager positions. Portions of the document concerning the CBDM position are not relevant to this litigation.

- The document ending in Bates number 8668 is an attorney-client communication and work product because it is outside counsel's proposal to conduct an audit to assist with the strategy for the *Reinard* Litigation.

- The document ending in Bates number 9160 is an attorney-client communication regarding the conduct of the 2005 audit of Café Managers and is also work product, insofar as it was made due to the *Reinard* Litigation.

- The document ending in Bates number 5216 appears to reflect work product, insofar as it reflects the strategy for selection of Café Managers in California for interviews as dictated by legal counsel involved in the *Reinard* Litigation in California.

- Documents ending in Bates numbers 0155198 and 0155201 are fact work product pertaining to the *Hartpence* Litigation.

Nonetheless, although some of the documents on the log were properly labeled as

attorney-client communications and/or work product, BN has impliedly waived protection

insofar as it has asserted a good faith defense. The good faith defense, if successful, allows a

defendant to avoid liability for failure to pay overtime if the defendant "pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation" of the administrator of the Wage and Hour Division of the Department of Labor. 29 U.S.C. § 259. The FLSA also allows an employer found liable for past wages to avoid liability for liquidated damages by proving a reasonable, good-faith belief that it was not violating the FLSA. 29 U.S.C. § 260.

The employer's burden of providing good faith is difficult; "double damages [are] the norm and single damages the exception." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999) (citing *Reich v. Southern New England Telecomm. Corp.,* 121 F.3d 58, 71 (2d Cir. 1997)), *holding modified by Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61 (2d Cir. 2003). To establish the requisite subjective "good faith," an employer must show that it took "active steps to ascertain the dictates of the FLSA and then act to comply with them." *Id*. (citing *Reich,* 121 F.3d at 71). Finally, an employer's lack of willfulness and/or good faith shortens the statute of limitations for claims under the FLSA from three to two years. 29 U.S.C. § 255(a).

Courts in this District have found an implied waiver of attorney-client privilege and work product protection in cases where the claim involves the proper classification of a position under the FLSA. The rationale for finding waiver is that a plaintiff is entitled to explore whether the defendant acted contrary to legal advice when classifying a position as exempt from overtime or minimum wage requirements. Such evidence would undermine the defense of good faith. A waiver has been found even when the defendant asserted that it was not relying on advice of counsel. *See, e.g., Scott*, 67 F. Supp. 3d at 616–17; *Wang*, 2012 WL 6621717, at *3.

Thus, I find that BN has waived privilege, to the extent the communications at issue pertain to the Café Manager position.[6]  However, to the extent the privileged information and/or work product pertains to the CBDM position, that content can be redacted because it is not relevant to the instant litigation and there has been no waiver of privilege or work product with respect to the CBDM position.

### D.  Imposition of Attorneys' Fees and Costs

Federal Rule of Civil Procedure 37 provides that if a motion to compel is granted, the court must, after giving the parties an opportunity to be heard, require the party whose conduct necessitated the motion to pay the movant's reasonable expenses incurred in making the motion.  Fed. R. Civ. P. 37.  An award of expenses is mandatory unless the movant filed the motion before attempting in good faith to obtain the disclosure, the nondisclosure or objection was substantially justified, or other circumstances make an award of expenses unjust.  Fed. R. Civ. P. 37(a)(5)(A).  The imposition of Rule 37(a)(5) sanctions for failure to comply with discovery demands must be weighed in light of the full record.  *See Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures,* 602 F.2d 1063, 1068 (2d Cir. 1979).  When a court grants a motion to compel in part, a court may award attorneys' fees in addition to costs in its discretion.  *See SEC v. Yorkville Advisors, LLC*, 12 Civ. 7728 (GBD)(HBP), 2015 WL 855796, at *3–4 (S.D.N.Y. Feb. 27, 2015).

---

[6] The Court notes that none of the documents reviewed contain advice from BN's lawyers as to the proper classification of Café Managers during the relevant period; rather, they pertain to communications about their classification and/or a study to help determine their classification, but none contain an opinion that Café Managers should or should not be classified as exempt.  Thus, there is no basis for finding that BN or its lawyers made false representations to the Court about the content of the documents.

Here, Plaintiffs' counsel met and conferred with Defendant prior to bringing the instant Motion. Thus, Plaintiffs made a good faith effort to obtain discovery of the documents on the log without court intervention. The next issue is whether BN was substantially justified in refusing to turn over the documents in its log. This is determined based on an objective standard of reasonableness. *See id*. at *7. Because the standard does not require that the party resisting disclosure to have acted in bad faith, a prevailing party on a motion to compel can secure an expense sanction award even if the losing party offers proof that it acted in subjective good faith. *Id*. In this case, I do not find that BN acted in bad faith with regard to documents pertaining to the CBDM position. However, I note that BN presented no real argument against Plaintiffs' allegation that, by virtue of asserting a good faith defense, BN waived privilege and work product protection as to communications pertaining to the Café Manager position. BN did not address the wage and hour cases in this District that are on point on this issue. As such, I find that an award of fees and costs is appropriate, as there are no other circumstances that would make an award of fees and costs associated with this motion unjust. Plaintiffs shall file an application for fees and costs, supported by time records, by **January 10, 2019**. BN shall have 30 days to respond. No reply will be permitted. BN's request for attorneys' fees and costs is denied.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Compel is granted, in part, insofar as the documents on the log pertain to the Café Manager position, and denied, in part, insofar as the documents on the log (or portions thereof) pertain to the CBDM position. BN is directed to review the remaining documents on its log and produce documents to the extent consistent

with this decision.  BN shall produce the documents by no later than **January 15, 2020.**

Plaintiffs shall file a letter with the Court within a week after receiving the documents to let the

Court know whether any additional follow-up discovery is needed and the reasons therefore.

**SO ORDERED.**

Dated: December 23, 2019
      New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge