UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KELLY BROWN and TIFFANY STEWART, individually and on behalf of all others similarly situated, as Class/Collective representatives, | **ECF CASE** |
| Plaintiffs, | Case No. 16-cv-07333 (RA) (KHP) |
| v. | |
| BARNES AND NOBLE, INC., | |
| Defendant. | |

_____

**DEFENDANT BARNES & NOBLE, INC.'S MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**
_____

FAEGRE DRINKER BIDDLE & REATH LLP

Daniel H. Aiken, Esq. (*pro hac vice*)
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103-6996
Telephone:  (215) 988-2942
Facsimile:  (215) 988-2757
E-mail:  daniel.aiken@faegredrinker.com

Brooke Razor, Esq.
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103-6996
Telephone:  (215) 988-2936
Facsimile:  (215) 988-2757
E-mail:  brooke.razor@faegredrinker.com

William R. Horwitz, Esq.
1177 Avenue of the Americas, 41st Floor
New York, New York 10036-2714
Telephone:  (212) 248-3140
Facsimile:  (212) 248-3141
E-mail:  william.horwitz@faegredrinker.com

Attorneys for Defendant
Barnes & Noble, Inc.

122337702

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

PROCEDURAL HISTORY ..............................................................................................1

ARGUMENT...................................................................................................................4

I.      THERE IS NO BASIS FOR PLAINTIFFS' $100,000 FEE REQUEST..............4

          A.      The Court Rejected Plaintiffs' Main Arguments. .....................................5

                 1.      The Court's Rejection of Plaintiffs' Contention that Barnes & Noble Delayed Disclosure of the Privilege Log Bars Recovery of Fees. ...........................................................................6

                 2.      The Court's Rejection of Plaintiffs' Argument That Barnes & Noble Withheld Documents Containing Advice from Counsel Bars Recovery of Fees. ..................................................8

          B.      The Law Firms Performed Unnecessary Work in Order to Inflate Any Fee Recovery. ...............................................................................9

          C.      The Rates the Law Firms Seek Are Exorbitant.......................................10

          D.      Top-Heavy Distribution of Work...........................................................13

          E.      The Hours Billed Are Excessive ...........................................................14

          E.      Other Abusive Billing Practices.............................................................17

          F.      The Billing Practice and Irregularities Are Especially Concerning Given That the Law Firms Have Been Criticized in Other Cases for Them._...........................................................................................21

          G.      The Law Firms Cannot Recover Costs Without Substantiation. .............22

          H.      The Award. ..........................................................................................22

II.     ANY AWARD OF FEES SHOULD BE AWARDED AT THE CONCLUSION OF THE CASE......................................................................24

CONCLUSION...............................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                                                 **Page(s)**

*Alexander Interactive Inc. v. Adorama, Inc.*,
    2014 WL 4058705 (S.D.N.Y. Aug. 14, 2014) ........................................................................6

*Ansoumana v. Gristede's Operating Corp.*,
    2004 WL 504319 (S.D.N.Y. Jan. 7, 2004) ..........................................................................20

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany
    Cty. Bd. of Elections*, 522 F.3d 182 (2d Cir. 2008) ..........................................................4, 12

*Barfield v. New York City Health & Hosps. Corp.*,
    537 F.3d 132 (2d Cir. 2008) ..............................................................................................21

*Bergerson v. New York State Office of Mental Health, Cent. New York Psychiatric
    Ctr.*, 652 F.3d 277 (2d Cir. 2011) ......................................................................................10

*Cabrera v. Schafer*,
    2017 WL 9512409 (E.D.N.Y. Feb. 17, 2017) ....................................................................22

*CDO Plus Master Fund Ltd. v. Wachovia Bank, N.A.*,
    2011 WL 4526132 (S.D.N.Y. Sept. 29, 2011) ...................................................................19

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*,
    188 F. Supp. 3d 333 (S.D.N.Y. 2016) ...............................................................................20

*Costa v. Sears Home Improvement Products, Inc.*,
    178 F.Supp.3d 108 (W.D.N.Y. 2016) ................................................................................12

*Douyon v. NY Med. Health Care, P.C.*,
    49 F. Supp. 3d 328 (E.D.N.Y. 2014) .................................................................................22

*In re Eastman Kodak Erisa Litig.*,
    213 F. Supp. 3d 503 (W.D.N.Y. 2016) ..............................................................................13

*Elliott v. Vozzcom, Inc.*,
    2009 WL 10667818 (S.D. Fl. 2009) ..................................................................................21

*Estrada v. Security Roofing Sys.*,
    2009 WL 10668280 (S.D. Fl. May 21, 2009) ....................................................................21

*Godoy v. New River Pizza, Inc.*,
    565 F.Supp.2d 1345 (S.D. Fl. 2008) ..................................................................................22

*Grant v. Martinez*,
    973 F.2d 96 (2d Cir. 1992) .................................................................................................15

*Haley v. Pataki*,
    106 F.3d 478 (2d Cir. 1997) ............................................................15

*Hop Hing Produces Inc. v. X & L Supermarket, Inc.*,
    2013 WL 1232919 (E.D.N.Y. Mar. 4, 2013), R & R adopted, 2013 WL
    1232483 (E.D.N.Y. Mar. 27, 2013) .....................................................20

*Industrial Aircraft Lodge 707 v. United Technologies Corp., Pratt & Whitney
    Aircraft Division*, 104 F.R.D. 471 (D. Conn. 1985)............................................24

*Joe Hand Promotions, Inc. v. Elmore*,
    2013 WL 2352855 (E.D.N.Y. May 12, 2013) ......................................22

*Kirsch v. Fleet St., Ltd.*,
    148 F.3d 149 (2d Cir. 1998) ...................................................... 15, 18

*Lunday v. City of Albany*,
    42 F.3d 131 (2d Cir. 1994) ............................................................15

*MASTR Adjustible Rate Mortgages Trust 2006-OA2 v. UBS Real Estate Securities
    Inc.*, 2013 WL 5437354 (S.D.N.Y. Sept. 27, 2013)............................ 5, 10, 13, 19

*Mayo-Coleman v. American Sugar Holding, Inc.*,
    2016 WL 7378767 (S.D.N.Y. Nov. 16, 2016) .......................................5

*McKenzie v. Lindstrom Air Condition, Inc.*,
    2010 WL 11505840 (S.D. Fl. Aug 6, 2010) ........................................21

*Okyere v. Palisades Collection, LLC*,
    300 F.R.D. 149 (S.D.N.Y. 2014) .....................................................12

*Ost-West-Handel Bruno Bischoff GmbH v. M/V Pride of Donegal*,
    1997 WL 231126 (S.D.N.Y. May 7, 1997) ...........................................6

*Perez Garcia v. Hirakegoma Inc.*,
    2020 WL 1130765 (S.D.N.Y. Mar. 9, 2020).................................... 10, 15

*Piedra v. Ecua Rest., Inc.*,
    2018 WL 1136039 (E.D.N.Y. Jan. 31, 2018) ......................................22

*Pig Newton, Inc. v. The Bds. of Dirs. of The Motion Picture Indus. Pension Plan*,
    2016 WL 796840 (S.D.N.Y. Feb. 24, 2016)........................................13

*Ravina v. Columbia Univ.*,
    2020 WL 1080780 (S.D.N.Y. Mar. 6, 2020) .......................................19

*Reiter v. Maxi-Aids, Inc.*,
    2019 WL 1641306 (E.D.N.Y. Apr. 16, 2019) .................................. 10, 22

*Rody v. Pierce Mfg., Inc.*,
    2009 WL 3418241 (M.D. Fl. Oct. 20, 2009) .........................................................21

*Rozell v. Ross-Holst*,
    576 F. Supp. 2d 527 (S.D.N.Y. 2008) .................................................................20

*Samms v. Abrams*,
    198 F.Supp.3d 311 (S.D.N.Y. 2016) ...................................................................15

*Savoie v. Merch. Bank*,
    166 F.3d 456 (2d Cir. 1999) ...............................................................................4

*Scott v. Chipotle Mexican Grill, Inc.*,
    67 F. Supp. 3d 607 (S.D.N.Y. 2014) ...................................................................15

*SEC v. Yorkville Advisors, LLC*,
    2015 WL 855796 (S.D.N.Y. Feb. 27, 2015)......................................................5, 11

*Shabazz v. City of New York*,
    2015 WL 7779267 (S.D.N.Y. Dec. 2, 2015) ........................................................4

*Sid Bernstein Presents, LLC v. Apple Corps Ltd.*,
    2018 WL 1587125 (S.D.N.Y. Mar. 29, 2018) ......................................................18

*Stadmire v. Sawyer Property Management of Florida, LLC*,
    2010 WL 3702532 (M.D. Fl. Sept. 16, 2010).......................................................21

*Star Ins. Co. v. A&J Constr. of New York, Inc.*,
    2018 WL 6177857 (S.D.N.Y. Nov. 26, 2018).......................................................20

*In re Stock Exchanges Options Trading Antitrust Litig.*,
    2006 WL 3498590 (S.D.N.Y. Dec. 4, 2006) ........................................................12

*Tatum v. City of New York*,
    2010 WL 334975 (S.D.N.Y. Jan. 28, 2010) .........................................................18

*Williams v. Metro-North R.R. Co.*,
    2018 WL 3370678 (S.D.N.Y. June 28, 2018) .......................................................20

**STATUTES, RULES & REGULATIONS**

Fed. R. Civ. P. 37(a)(5)(C) .......................................................................................5, 6

RPC Rule 3.3(a)(1) .......................................................................................................6

RPC Rule 8.4(c) ...........................................................................................................6

iv

## PRELIMINARY STATEMENT

In deciding plaintiffs' Motion to Compel the Production of Documents, the Court rejected their two main arguments, accepted only the argument to which plaintiffs devoted relatively little attention in their brief, and granted the motion only "in part." The Court had instructed plaintiffs to submit a simple motion identifying 50 documents that should be produced and an explanation as to the reason. Instead, the two law firms representing plaintiffs and opt-ins (the "Law Firms") spent hours preparing a lengthy motion filled with unfounded accusations of impropriety and devoted less than a page to the substance requested by the Court. For this, they seek to recover approximately $100,000. To reach that exorbitant total, the Law Firms (1) calculated their fees at unreasonably high rates; (2) billed time at Partner rates for work that should have been performed by Associates or Paralegals at much lower rates; (3) included time they allegedly spent performing unwarranted work that the Court did not request; and (4) engaged in other questionable billing practices. In order to account for these factors, any fees the Law Firms recover should be reduced to a small fraction of the demand. In addition, payment should be delayed until the end of the case.

## PROCEDURAL HISTORY

During a Court Conference on January 3, 2019, plaintiffs' counsel argued for the production of Barnes & Noble's communications with counsel conveying advice as to the classification of Café Managers. Plaintiffs stated: "If there was advice, it needs to be produced." (1/3/19 Tr. 6:15-16).[1] Defense counsel responded: "I've searched myself, no advice was given [by counsel] with respect to whether the café managers should or should not be classified as exempt." (1/3/19 Tr. 14:6-8). Defense counsel reiterated: "we're not aware of any advice from a law firm with respect to whether café managers should or should not be classified as exempt."

---

[1] The transcript of the January 3, 2019, Court Conference is attached as Exhibit 1 to the accompanying Declaration of Daniel H. Aiken, Esq.

(1/3/19 Tr. 14:24 to 15:1).  Based on the lack of any such advice, which was and remains true, the Court denied plaintiffs' request for Barnes & Noble's communications with its counsel.

The parties appeared for another Court Conference on March 12, 2019, and the focus again was on whether any communications existed from counsel advising Barnes & Noble as to the proper classification of Café Managers.  Defense counsel affirmed that he had conducted a review of Barnes & Noble e-mails and found no e-mails from counsel conveying advice to Barnes & Noble as to the proper classification of Café Managers.  (Tr. 3/12/19 at 9:25 to 10:2).[2]

Barnes & Noble continued to accurately represent that no such documents existed. However, plaintiffs—without any basis—insisted otherwise, essentially stating that defense counsel was lying.  *See* ECF 273 at p. 8 ("Defendant misrepresented to the Court and Plaintiffs' Counsel that it never received such advice").  During a Status Conference on October 10, 2019, the Court conducted an *in camera* review of seven documents selected by plaintiffs from the Barnes & Noble Privilege Log.  Following the review, the Court upheld the designations (with one minor exception) and stated:  "So what [defense counsel] has said about these [e-mails] appear[s] to be correct."  The Court continued:  "these particular ones that I've looked at don't appear to be material to proof that you would need for anything."  (Tr. 10/10/19 at 16:13-18).[3]

The Court then ordered Barnes & Noble to submit 50 additional documents, to be selected by plaintiffs, for *in camera* review.  (ECF No. 251).  The Court directed the Law Firms to identify the 50 documents in a Motion to Compel and to focus their briefing on the issue of whether the privilege should apply:  "So the motion is a motion to compel production of documents that you

---

[2] The transcript of the March 12, 2019, Court Conference is attached as Exhibit 2 to the accompanying Declaration of Daniel H. Aiken, Esq.

[3] The transcript of the October 10, 2019, Court Conference is attached as Exhibit 3 to the accompanying Declaration of Daniel H. Aiken, Esq.

believe are not privileged, that's the motion" (Tr. 10/10/19 at 37:13-15) and "the motion should focus on the documents, why you think they are relevant and not privileged." (*Id.* at 38:2-4). Similarly, following the hearing, the Court provided that "[t]he motion should identify 50 documents from Defendant's privilege log that Plaintiffs believe should be produced. Defendant will have until October 30, 2019 to oppose the motion and to submit a privilege log with hyperlinks to the 50 documents identified by Plaintiffs to the Court for in camera review." (ECF No. 251).

As evidence of the Court's expectation that this should be a simple process, the Court initially gave plaintiffs seven days to prepare the motion and Barnes & Noble six days to respond. (Tr. 10/10/19 at 35:9-17). However, plaintiffs' counsel requested an "extra week" because the attorney who would be "intimately working on the motion," Charles Gershbaum, was going to be unavailable. (Tr. 10/10/19 at 35:18 to 36:2). In response to this request, the Court lengthened plaintiffs' time to file their submission. (Tr. 10/10/19 at 36:5-11). The billing records reveal that Mr. Gershbaum actually spent zero time on the submission, but other attorneys at the Law Firms billed time throughout the two-week period. (ECF 300-1 at pp. 3-4; ECF No. 301-1 at pp. 1-2). It seems the Law Firms used the additional time to prepare an unnecessarily lengthy motion that ignored the Court's instructions. (ECF Nos. 257 and 258). In their papers, the Law Firms argued that defense counsel: (1) improperly delayed production of the Privilege Log in order to prejudice plaintiffs; and (2) concealed documents reflecting legal advice as to the proper classification of Café Managers, which must be produced. (ECF No. 257).

Barnes & Noble submitted the 50 documents, reiterating that none contain advice as to the proper classification of Café Managers. *See* ECF No. 264 and 268. Barnes & Noble also explained in detail that "the timing of the production of the Privilege Log was appropriate and communicated well in advance." (ECF No. 268).

In its decision on the Motion to Compel, the Court rejected plaintiffs' argument that Barnes & Noble had improperly delayed production of the Privilege Log (ECF No. 276 at p. 12) and rejected plaintiffs' repeated insistence that the documents on the Privilege Log contained advice from Barnes & Noble's lawyers as to the proper classification of Café Managers. (*Id.* at p. 21 n. 6). The Court ordered production of documents on the Privilege Log, but on other grounds. (*Id.* at pp. 18-19). Barnes & Noble filed a Motion for Reconsideration, which the Court denied on March 5, 2020. (ECF No. 295). In denying the Motion for Reconsideration, the Court indicated that Barnes & Noble had not acted in bad faith. (*Id.* at p. 5).

## ARGUMENT

## I.     THERE IS NO BASIS FOR PLAINTIFFS' $100,000 FEE REQUEST.

A party seeking to recover fees bears "'the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.'" *Shabazz v. City of New York*, 2015 WL 7779267, *2 (S.D.N.Y. Dec. 2, 2015) (*quoting Savoie v. Merch. Bank*, 166 F.3d 456, 463 (2d Cir. 1999)). "Complex cases requiring particular attorney skills and experience may command higher attorney rates, as may cases requiring retention of a firm with the resources needed to prosecute a case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 185-87 (2d Cir. 2008).

Here, according to their billing records, the Law Firms staffed and billed time on the Motion to Compel as if it were a complex matter involving abstract legal issues. It was not. It was a straightforward discovery motion in an area in which they have prior experience. Nonetheless, the Law Firms contend that they have devoted over 155 hours of attorney time to the Motion to Compel. It is clear, however, that their claimed rates are exorbitant and they seek fees for excessive and unnecessary work. Moreover, they should not receive fees for their arguments that the Court rejected or for their many billing irregularities.

4

A.    **The Court Rejected Plaintiffs' Main Arguments.**

Although the Court granted, in part, the relief plaintiffs sought in their Motion to Compel, the Court rejected virtually all of their arguments.  According to the Court, based on its *in camera* review of documents on the Privilege Log, many should either be produced:  (1) because they did not constitute privileged or work product communications; or (2) because, despite not constituting specific advice as to the proper classification of Café Managers, the fairness doctrine required their production.   In reaching this conclusion, the Court rejected the arguments that took up approximately 85% of the Law Firms' brief.[4]

Rule 37(a)(5)(C) of the Federal Rule of Civil Procedure provides that, when a motion to compel is granted in part and denied in part, the Court may apportion reasonable expenses for the motion.  In apportioning expenses, Courts routinely reduce fees to account for the extent to which a party prevailed.  *See SEC v. Yorkville Advisors, LLC*, 2015 WL 855796, *4 (S.D.N.Y. Feb. 27, 2015) (apportioning fees and costs because "the motion was granted in part and denied in part"); *Mayo-Coleman v. American Sugar Holding, Inc.*, 2016 WL 7378767, * 1 (S.D.N.Y.  Nov. 16, 2016) (requiring each party to "bear their own motion-related expenses, including attorneys' fees incurred in connection with the motion to compel" because (i) plaintiff's motion was only partially successful; and (ii) the court determined that the defendants were substantially justified in failing to disclose one of the categories of information sought through the plaintiff's motion); *MASTR Adjustible Rate Mortgages Trust 2006-OA2 v. UBS Real Estate Securities Inc.*, 2013 WL 5437354,

---

[4] The substantive content of plaintiffs' brief in support of their Motion to Compel was 21 pages long.  (ECF No. 257).  From page 16 to 18, plaintiffs listed the 50 documents for *in camera* review.  From the middle of page 18 to the top of page 19, plaintiffs explained why documents should be produced under the fairness doctrine.  Thus, that argument occupied less than one page in total.  Plaintiffs devoted the rest of the brief to arguments that the Court squarely rejected.  Even the section of the brief arguing for an award of fees and costs (pages 19-21) relied on the arguments about defense counsel misconduct that the Court rejected.  Thus, plaintiffs devoted about three pages—or roughly 15% of the brief—to listing the 50 documents and explaining why they should be produced under the fairness doctrine.  Plaintiffs devoted less than 5% of the brief to explaining why documents should be produced under the fairness doctrine, and about 85% of the brief to arguments that the Court rejected.

*2 (S.D.N.Y. Sept. 27, 2013) (declining to award sanctions because the defendant did not act in bad faith and F.R.C.P. 37(a)(5)(C) grants the court the discretion to apportion sanctions where a motion is granted in part and denied in part); *Ost-West-Handel Bruno Bischoff GmbH v. M/V Pride of Donegal*, 1997 WL 231126, *2 (S.D.N.Y. May 7, 1997) (lowering a fee award from $7,930.00 to $4,000.00).

Here, plaintiffs obtained the relief they sought, in part, but the overwhelming amount of time for which the Law Firms seek fees played no role in achieving that partial victory. Any award of fees should be limited to the fraction of the work that the Law Firms performed that actually resulted in their partial success, which was the limited submission the Court requested in the first place.

## 1. The Court's Rejection of Plaintiffs' Contention that Barnes & Noble Delayed Disclosure of the Privilege Log Bars Recovery of Fees.

The Law Firms seek to recover fees for time they spent leveling false accusations against defense counsel. Specifically, the Law Firms contended in open court and in public filings that defense counsel was aware of privileged documents but failed to identify them on a Privilege Log for two and a half years. In so doing, the Law Firms violated their ethical obligations. *See* Rules of Professional Conduct (22 NYCRR 1200.0) Rule 8.4(c) (prohibiting conduct involving dishonesty, fraud, deceit or misrepresentation) and Rule 3.3(a)(1) (prohibiting making a false statement of fact to the court); *Alexander Interactive Inc. v. Adorama, Inc.*, 2014 WL 4058705, *1 (S.D.N.Y. Aug. 14, 2014) (based on the Rules of Professional Conduct, adopting Memorandum and Order providing that "incivility among counsel [would] not be tolerated").

By way of background, after identifying privileged and work product documents during searches of corporate e-mail accounts conducted pursuant to agreed-upon ESI protocols, Barnes & Noble served plaintiffs with a Privilege Log in a timely manner. Nonetheless, the Law Firms

6

spent a considerable part of their brief, and apparently their preparation of the brief, contending that Barnes & Noble concealed the existence of privileged documents for two and a half years before identifying them on a Privilege Log. *See, e.g.,* ECF No. 257 at pp. 13-14 ("[t]he only explanation for this extremely late privilege log is that Defendant did not want Plaintiffs to know these documents existed because Defendant knew that Plaintiffs would attempt to obtain them in discovery").

The Law Firms devoted the vast majority (roughly three quarters) of their Motion to Compel to arguing this baseless point. (ECF No. 257 at pp. 1-15). Indeed, in the Motion to Compel, even their argument for fees and costs rested largely on this point. (ECF No. 257 at pp. 19-20). Although the record plainly refuted this accusation, the Law Firms compelled Barnes & Noble to refute it, which Barnes & Noble did at length in its opposition brief (which is incorporated herein by reference). *See* ECF No. 268 at pp. 2-10.

The Court appropriately rejected this, plaintiffs' primary argument: "Based on the Court's knowledge of the discovery process in this case, and in light of the costs and realities of the eDiscovery process that the parties agreed to undertake, the Court finds that [Barnes & Noble] complied with its obligations to conduct a reasonable search for documents throughout this litigation, including prior to the implementation of the agreed upon ESI protocol." (ECF No. 276 at pp. 9-10). The Court further ruled: "[Barnes & Noble] cooperated with Plaintiffs and timely updated the Court and Plaintiffs of the progress of its ESI production and Plaintiffs agreed to this process. BN also produced a traditional, detailed log in conformance with Local Rule 26.2 at the time of its September 2019 production. In these circumstances, a finding of waiver of privilege is inappropriate." (ECF No. 276 at p. 12).

The Law Firms' choice to focus almost exclusively on making false accusations against defense counsel is especially egregious, and unworthy of an award of fees, given that, at the October 10 Court Conference, the Court expressly directed the attorneys "to be professional and civil to each other and to focus [in their papers] on whether it's privileged or not privileged." (Tr. 10/10/19 at 37:5-23).

Any fees and costs that the Law Firms recover should be substantially reduced because the majority of their work was spent on accusations against defense counsel that the Court squarely rejected.  The fact that the Law Firms made those allegations without regard for their truth necessitates a further reduction in order to discourage such conduct.

2.     **The Court's Rejection of Plaintiffs' Argument That Barnes & Noble Withheld Documents Containing Advice from Counsel Bars Recovery of Fees.**

In their Motion to Compel, the Law Firms' secondary argument was that the Barnes & Noble Privilege Log included documents reflecting advice that Barnes & Noble received from counsel regarding whether Café Managers should be classified as exempt or non-exempt.  Again, the Law Firms accused defense counsel of lying, this time about whether Barnes & Noble was withholding documents containing advice as to the proper classification of Café Managers. Indeed, plaintiffs quoted at length from the transcript of the January 3 Court Conference to make that point (ECF No. 268 at pp. 7-8), which they reinforced by quoting from the Privilege Log and adding bold to the text that, they contended, described documents containing legal advice as to the classification of Café Managers (ECF No. 268 at pp. 10-11).

Having never seen Barnes & Noble's privileged documents, the Law Firms did not know for sure that they were falsely accusing defense counsel of lying, but the reckless certainty with which they leveled that serious accusation was troubling and sanctionable.  The Court conducted

an *in camera* review and confirmed Barnes & Noble's consistent position: no documents contain advice of counsel regarding the proper classification of Café Managers (ECF No. 276 at p. 21 n.6).

Any award of fees should be reduced to account for the Court's rejection of this argument, particularly in light of the Law Firms' disregard for professional conduct in asserting it.

**B.    The Law Firms Performed Unnecessary Work in Order to Inflate Any Fee Recovery.**

As set forth below, the Law Firms performed (or at least billed for) far more work than warranted. Any fee award should be reduced to account for this unnecessary work.

During an October 10, 2019, Status Conference, the Court asked the Law Firms to identify 50 documents from the Privilege Log for *in camera* review and explain why, according to plaintiffs, "they are relevant and not privileged." (Tr. 10/10/19 at 38:2-4). Consistent with those instructions, the Court issued an Order stating: "The motion should identify 50 documents from Defendant's privilege log that Plaintiffs believe should be produced." (ECF No. 251).

On October 24, the Law Firms filed their Motion to Compel. Despite the Court's instructions, they submitted a 21-page Memorandum of Law and a Declaration with 17 exhibits, focusing almost entirely on their accusations of discovery misconduct—which was not what the Court had ordered. (ECF No. 257). Indeed, the Law Firms did not even reach the list of documents for *in camera* review until page 15 of their brief and spent less than a page explaining why they should be produced under the fairness doctrine. (*Id.* at p. 18). The Law Firms also submitted a Reply Brief—even though the Court's Order had not provided for one. (ECF Nos. 251, 273).

Barnes & Noble had to incur substantial costs in order to respond to the Law Firms' baseless allegations and arguments, which were unsuccessful. The Law Firms could have achieved the same partial victory on the Motion to Compel by following the Court's instructions. The Law Firms should not recover fees for work contrary to the Court's instructions. Especially given the

Court's rejection of the arguments in unsolicited briefing that the Law Firms submitted, Barnes & Noble respectfully requests that any fee award account for the unnecessary work performed by the Law Firms.

### C.     The Rates the Law Firms Seek Are Exorbitant.

Lawyers seeking reimbursement of their fees bear the burden of demonstrating the "reasonableness" of the "rates charged." *Reiter v. Maxi-Aids, Inc.*, 2019 WL 1641306, *4 (E.D.N.Y. Apr. 16, 2019). In an application for fees, the rate sought should be "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Bergerson v. New York State Office of Mental Health, Cent. New York Psychiatric Ctr.*, 652 F.3d 277, 289 (2d Cir. 2011) (citations and internal quotation marks omitted).

The Law Firms seek fees at rates far above what has been deemed reasonable in this district. With their fee application, the Law Firms include lists of their requested hourly rates. This chart sets forth the rates sought by the Law Firms:

| NAME | TITLE | RATE |
|---|---|---|
| Marc Hepworth | Partner | $775 |
| Gregg Shavitz | Partner | $700 |
| Michael Palitz | Partner | $575 |
| Rebecca Predovan | Associate | $525 |

The requested rates are far outside the norm in the Southern District. As a Court in this district observed just last month, "[i]n this district, courts generally award experienced wage-and-hour attorneys between $300 to $400 per hour." *Perez Garcia v. Hirakegoma Inc.*, 2020 WL 1130765, *12 (S.D.N.Y. Mar. 9, 2020).

It bears emphasizing that the Law Firms are unable to cite any authority supporting their contention that their exorbitant billable rates are reasonable. Rather, the Law Firms resort to a

transcript from a court appearance in which a Judge approved a settlement in a case in which one of the Law Firms participated. Even in that context—in which no one objected to the rates and the attorneys' fees were an agreed-upon and an integral element of the settlement—the Court still only approved rates as high as $700. (ECF No. 300-1 at pp. 39-40).[5] In addition to citing to an irrelevant transcript, the highest billable rate the Law Firms were able to find in an actual decision (albeit unpublished) is in the securities litigation case *S.E.C. v. Yorkville Advisors, LLC*, 2015 WL 855796, *19 (S.D.N.Y. Feb. 27, 2015), in which the Court observed: "The prevailing market rates for attorneys and paralegals in the Southern District of New York for fees incurred on discovery motions range from $450 to $600 for partners, $220 to $400 for associates and $100 to $200 for paralegals."

If the Court were to apply that high-billable rate approach here, there is no basis for assuming that all of their Partners are entitled to the highest rate of $600. To the contrary, according to the Law Firms, Partner Hepworth's work warrants the highest rate. Partner Shavitz's work warrants a rate that is 9.68% lower. And Partner Palitz's work warrants a rate that is 25.81% lower.[6] Thus, if the Court accepts Mr. Hepworth at the highest rate of $600, Mr. Shavitz's rate should be $541.92 and Mr. Palitz's rate should be $445.14—all of which are still higher than the recognized range for experienced wage and hour attorneys in this district, but far closer to reasonable than the exorbitant rates that the Law Firms seek. Assigning Associate Predovan to the highest Associate rate would be $400.[7]

---

[5] The Law Firms contend that the rates were lower because the litigation was old, but the settlement was approved in April 2019 and there is no indication in the transcript that the Judge applied historical rates. (ECF No. 300-1 at p. 20).

[6] Mr. Palitz was an Associate when this case began and only became a Partner in January 2018. *See* https://www.linkedin.com/in/michael-palitz-b070a437/.

[7] In his Declaration in support of this application, Marc Hepworth assures the Court that his $775 billable rate and Rebecca Predovan's $525 billable rate "have been approved by multiple courts," but he fails to provide legal citations

In an attempt to insulate their rates from attack, the Law Firms assert that, if Barnes &
Noble "challenges [their] hourly rates," then "Defendant should be required to provide the hourly
rates that its attorneys charge for their services" (ECF No. 299 at p. 6 n.1).  However, fees and
hours are only relevant and discoverable when a party puts its fees at issue by "using their own
hours and rates as yardsticks by which to assess the reasonableness of those sought by [the moving
party]." *Costa v. Sears Home Improvement Products, Inc.*, 178 F.Supp.3d 108, 113 (W.D.N.Y.
2016).  Otherwise, the non-moving party's fees are not discoverable.  *See Okyere v. Palisades
Collection, LLC*, 300 F.R.D. 149, 152 n.2 (S.D.N.Y. 2014) (given that "the hourly rate awarded to
plaintiff must be the rate that would be paid by a client 'who wishes to pay the least amount
necessary to litigate the case effectively,'" defense counsel's rate was irrelevant because there was
"no evidence in the record" that "defense counsel … were charging fees at the lowest possible end
of the range of reasonable market rates") (*quoting Arbor Hill Concerned Citizens Neighborhood
Ass'n v. Cty. of Albany*, 522 F.3d 182 (2d Cir. 2008)); *Costa v. Sears Home Improvement Products,
Inc.*, 178 F.Supp.3d 108, 113 (W.D.N.Y. 2016) ("[t]he examination of opposing counsel's records
and how it allocated its defense work offers little assistance to the Court in its consideration of the
substantive reasonableness of Plaintiff's fee petition and the contents of Defendants' objections.
… Indeed, it often arises that defendants have reason to devote far greater resources to defending
a suit than plaintiff has to prosecuting it") (citations and internal quotation marks omitted).

Notably, in a fee application, a party is supposed to seek fees at the rates that it customarily
charges paying clients.  *In re Stock Exchanges Options Trading Antitrust Litig.*, 2006 WL
3498590, *10 (S.D.N.Y. Dec. 4, 2006).  Here, the Law Firms provide no redacted invoices or other

---

to or copies of those decisions.  (ECF No. 301 at 4 n. 2).  If Mr. Hepworth's assertion is true, those cases likely
involved settlements in which the rates were uncontested and fees were integral to the negotiated resolution.

equally-competent evidence demonstrating that the exorbitant rates they seek are the same rates they customarily charge to paying clients.

In short, the rates requested by the Law Firms are too high and should be reduced substantially. Because it is impractical to adjust the rates and recalculate the fees using the records that the Law Firms provided, a reasonable and fair approach is to apply a 50% reduction to their rates across the board. Although the rates would still be high – especially given the straightforward nature of the Motion to Compel – they would at least be roughly in line with top permissible rates.

### D.   Top-Heavy Distribution of Work.

Courts reduce the fee requests of law firms that assign work to high-billing partners and other senior attorneys rather than junior attorneys and paralegals who bill at lower rates. *See Pig Newton, Inc. v. The Bds. of Dirs. of The Motion Picture Indus. Pension Plan*, 2016 WL 796840, *7 (S.D.N.Y. Feb. 24, 2016) ("the division of labor was at times unreasonable, with multiple partners involved in the same task and, perhaps more troubling, partners performing work better assigned to associates or paralegals"); *see also In re Eastman Kodak Erisa Litig.*, 213 F. Supp. 3d 503, 508 (W.D.N.Y. 2016) ("the hours claimed by counsel point to a less-than-efficient distribution of labor: the overwhelming majority of the work performed by legal professionals at the six firms representing plaintiffs … was performed by partners and comparably senior counsel rather than by associates or paralegals, a troublingly 'top-heavy' distribution of labor").

The chart below demonstrates the "top-heavy" distribution of labor. The chart sets forth the rate and hours information for the attorneys who billed time.

| NAME | TITLE | RATE | ALLEGED HOURS | PERCENTAGE OF TOTAL HOURS | TOTAL FEES CLAIMED |
|---|---|---|---|---|---|
| **Michael Palitz** | **Partner** | **$575** | **113.3** | **72.86%** | **$65,147.50** |
| **Marc Hepworth** | **Partner** | **$775** | **34.4** | **22.12%** | **$26,660** |
| Gregg Shavitz | Partner | $700 | 4.7 | 3.02% | $3,290 |

13

| Rebecca Predovan | Associate | $525 | 3.1 | 1.99% | $1,627.50 |
| Totals | | | 155.5 | 100% (rounded) | $96,725 |

As the above chart makes clear, partners with high billable rates handled a disproportionately large share of the work. Indeed, Partners Palitz and Hepworth, with claimed rates of $575 and $775, respectively, performed approximately ***95% of the work*** for which the Law Firms seek fees. The next highest biller was Mr. Shavitz, another Partner. According to the Law Firms' records, Associates performed less than two percent of the work and Paralegals did nothing at all. Indeed, the Law Firms even seek fees for time that Partner Palitz supposedly spent on such tasks as drafting a Notice of Motion (ECF No. 300-1 at p. 4, 10/22/19 entry) and "Shepardizing" their brief (ECF No. 300-1 at p. 4, 10/24/19 entry)—tasks that should have been performed by a Paralegal or Legal Assistant.

The Law Firms insist that it is "in-line" with defense counsel's staffing. (ECF No. 300 at ¶54). In this regard, they assert that the defense team includes a Partner and a Counsel. (ECF No. 300 at ¶ 54). Defense counsel is not seeking fees. Further, plaintiffs' application for fees is not subject to reduction because the Law Firms assigned experienced attorneys to the case, but because they are now seeking fees after assigning virtually all of the work on a discovery motion to Partners.

The Motion to Compel was a straightforward matter that did not require Partner-level plaintiffs' attorneys with special skill or expertise. Indeed, the Court mostly rejected plaintiffs' arguments so the top-heavy imbalance did not benefit plaintiffs at all. Accordingly, any fees that the Law Firms collect should be greatly reduced to account for this top-heavy distribution.

### E.   The Hours Billed Are Excessive.

When evaluating the number of hours that attorneys claim to have spent, Courts make "a conscientious and detailed inquiry into the validity of the representations that a certain number of

hours were usefully and reasonably expended." *Haley v. Pataki*, 106 F.3d 478, 484 (2d Cir. 1997) (citations omitted).  The Second Circuit has explained that "[h]ours that are excessive, redundant, or otherwise unnecessary, are to be excluded." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal citations and quotation marks omitted).  In evaluating whether hours are excessive, "the critical inquiry is whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Samms v. Abrams*, 198 F.Supp.3d 311, 322 (S.D.N.Y. 2016) (*quoting Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)).  In reaching this decision, Courts perform "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994); *see also Perez Garcia v. Hirakegoma Inc.*, 2020 WL 1130765, at *12 (S.D.N.Y. Mar. 9, 2020).

Here, the hours billed are excessive on their face.  In total, the Law Firms seek fees for 155.50 hours for this straightforward discovery dispute.  To put that vast amount of time in perspective, if an attorney worked eight hours a day, every day, it would take him or her over 19 days—almost three weeks—to bill the amount of time that the Law Firms contend they spent on the Motion to Compel.

One particularly glaring area of excessive billing in this fee application is legal research. The Law Firms should not have had to conduct much legal research in connection with their Motion to Compel.  In fact, they have litigated the same issue in other cases (*see*, *e.g.*, *Scott v. Chipotle Mexican Grill, Inc.*, 67 F. Supp. 3d 607 (S.D.N.Y. 2014)) and in this case.  *See* ECF No. 202 (plaintiffs' opposition to Motion to Quash subpoena to Barnes & Noble's law firm).

Moreover, in their application for fees, the Law Firms contend that, on September 25, 2019, they "provided Defendant's Counsel with case law demonstrating that Defendant did not have a

lawful basis to withhold the documents on its privilege log due to its assertion of its good faith defense." (ECF No. 299 at p. 2). Thus, by September 25, the Law Firms must have completed all of their legal research into the issue of privilege and waiver, subject to any recently-issued decisions and appropriate follow-up.

Nonetheless, the Law Firms contend that Partner Michael Palitz spent another 20-plus hours researching this same issue. The chart below shows time that Mr. Palitz billed on or after September 25, 2019, to research the waiver issue. (ECF No. 300-1 at pp. 2-5).

| DATE | DESCRIPTION | HOURS BILLED | FEES SOUGHT |
|------|-------------|--------------|-------------|
| 9/25/19 | "researching law about waiver of privilege issues re good faith defense" | 1.40 | $805 |
| 9/26/19 | "researching case law regarding waiver of privilege due to good faith affirmative defense" | 0.70 | $402.50 |
| 9/26/19 | "continued research into case law surrounding implied waiver of privilege due to assertion of good faith affirmative defense" | 1.60 | $920 |
| 9/27/19 | "researching case law regarding late privilege logs and waiver for call with defense counsel regarding same" | 0.70 | $402.50 |
| 10/2/19 | "researching law regarding waiver of privilege issues for documents on privilege log and implied waiver of privilege and good faith defense" | 1.20 | $690 |
| 10/7/19 | "legal research to support letter motion to compel documents on privilege log and addressing good faith issues" | 1.80 | $1,035 |
| 10/9/19 | "additional legal research regarding letter motion to compel documents on the privilege log addressing defendant's anticipated reliance argument" | 1.10 | $632.50 |
| 10/9/19 | "continued legal research on waiver of privilege issues for court conference tomorrow" | 0.80 | $460 |
| 10/11/19 | "legal research to support arguments to find that defendant waived its ability to keep documents on privilege log" | 0.90 | $517.50 |
| 10/14/19 | "legal research regarding waiver of privilege issue for motion to compel" | 1.10 | $632.50 |

16

| DATE | DESCRIPTION | HOURS BILLED | FEES SOUGHT |
|---|---|---|---|
| 10/15/19 | "additional review of case law addressing Second Circuit Erie decision and how the assertion of a good faith defense bring privilege issues into play; searching for cases that counter defendant's argument that it is not relying on advice of counsel received so it does not need to produce the documents" | 2.20 | $1,265 |
| 10/22/19 | "reviewing cited cases addressing waiver issue for documents listed on privilege log and confirming that Erie Second Circuit case does not apply to this case due to good faith defense" | 0.60 | $345 |
| 11/15/19 | "reviewing case law in defendant's opposition to motion to compel for reply brief work" | 1.40 | $805 |
| 11/19/19 | "legal research re reply to motion to compel privilege log addressing defendant's argument re good faith defense and related waiver of privilege issue" | 1.90 | $1,092.50 |
| 11/20/19 | "additional legal research addressing good faith waiver of privilege for reply to motion to compel" | 0.90 | $517.50 |
| 11/21/19 | "additional review of case law to rebut defendant's legal arguments for reply brief" | 1.20 | $690 |
| 1/11/20 | "additional legal research addressing good faith and implied waiver case law for opposition to motion for reconsideration" | 1.10 | $632.50 |
| 1/12/20 | "research to find case law supporting Gregg Shavitz's point about types of document on privilege log which relate to good faith affirmative defense" | 0.60 | $345 |
| **TOTAL** | | **21.20** | **$12,190** |

The 21.20 hours that the Law Firms claim to have spent researching a legal issue that they contended they already researched is excessive and any award should exclude it, especially given relatively small amount of space devoted to the issue in their brief.

### E.    Other Abusive Billing Practices.

The Law Firms also pursued other abusive billing strategies to maximize their recovery. For example, they used vague block billing.  Because block billing "may make it exceedingly difficult for courts to assess the reasonableness of the hours billed … block billing combined with

vague descriptions in the sparest of terms ... can justify the deduction of a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Sid Bernstein Presents, LLC v. Apple Corps Ltd.*, 2018 WL 1587125, *6 (S.D.N.Y. Mar. 29, 2018) (citation and internal quotation marks omitted).  By way of example, on September 27, 2019, Partner Hepworth block billed 3.00 hours (and seeks $2,325 in fees) for alleged work he described as follows:

> communications from DA re MP email and discussion of same with team immediately after as to responses and getting the issues immediately infront iof ct.  Read oldtranscript re same to see what mistruths dan is saying.  Look in crresp to see old communicatiosn and emails and rogs a to whatsaid have and not have

(ECF No. 301-1 at p. 1).

Other time entries that are not block-billed are similarly indecipherable.  For example, on October 22, 2019, Mr. Hepworth billed 1.75 hours ($1,356.25) for "docs I think we need versus others" (ECF No. 301-1 at p. 1).   On October 8, 2019, Mr. Hepworth described three hours he spent as "go over MP prep sheet of issues and discuss with MP the time line of lies and deceptions" and described another 1.2 hours he spent that same day as "receipt of DA letter to court and cant explain away deceptions and mistruths and why priv log so late."  (ECF No. 301-1 at p. 1).  It is impossible to determine with clarity what, if any, work Mr. Hepworth actually performed for 4.2 hours ($3,255) that day.  One might speculate that he was wasting time searching for support— that did not exist—for baseless allegations about defense counsel.  In any event, "Courts may deny compensation where the billing information submitted is 'too vague to sufficiently document the hours claimed.'"  *Tatum v. City of New York*, 2010 WL 334975, *7 (S.D.N.Y. Jan. 28, 2010) (*quoting Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998)).  Accordingly, "Courts in this district have reduced the number of compensable hours when the time records fail to establish with

sufficient particularly the nature of the work performed." *Ravina v. Columbia Univ.*, 2020 WL 1080780, *9 (S.D.N.Y. Mar. 6, 2020) (collecting cases).

Any fees awarded to the Law Firms should be reduced to account for block billing and vagueness. *See CDO Plus Master Fund Ltd. v. Wachovia Bank, N.A.*, 2011 WL 4526132, *4 (S.D.N.Y. Sept. 29, 2011) ("a party seeking attorneys' fees bears the burden of properly documenting the hours worked and that obligation is not satisfied by a vague entry such as 'conference with' or 'call to' a particular person").

When evaluating the billing entries submitted by the Law Firms in support of their fee application, the Court is largely left to take the Law Firms at their word regarding time they supposedly spent on various tasks. However, internal inconsistencies raise additional questions. The Law Firms seek to recover time for a conference call between three Partners, Mr. Hepworth, Mr. Palitz and Mr. Shavitz, on October 3, 2019. The chart below sets forth each Partner's description of the call and the amount of time he recorded:

| ATTORNEY | HOURS BILLED | DESCRIPTION | RATE | FEES SOUGHT |
|---|---|---|---|---|
| Marc Hepworth | 1.1 | "1 pm call with team as to MP letter re priv and make sure we are all on same page" (ECF No. 301-1 at p. 1) | $775 | $852.50 |
| Michael Palitz | 0.9 | "prepare for and participate in call with team regarding late privilege log and how documents identified on the log were not disclosed despite being requested previously" (ECF No. 300-1 at p. 3) | $575 | $517.50 |
| Gregg Shavitz | 0.5 | "team conference call about strategy and submission to court; review of bill horowitz request" (ECF No. 300-1 at p. 3) | $700 | $350 |
| TOTAL | 2.5 | -- | -- | $1,720 |

As set forth on the above chart, Mr. Shavitz recorded his time in block format, thereby making it impossible to determine the duration of the call. However, we can tell from his entry

that it lasted for less than half an hour (0.5), while Mr. Hepworth billed 1.1 hours for the same call. Mr. Palitz included some preparation time for the call, but still only billed .9 hours.

Beyond the fact that the Law Firms' submissions raise real questions about the accuracy of their records, they should not be permitted to collect fees for internal communications at all.  *See Star Ins. Co. v. A&J Constr. of New York, Inc.*, 2018 WL 6177857, *6 (S.D.N.Y. Nov. 26, 2018) (reducing fee request for, *inter alia*, "an excessive number of time entries devoted to internal conferences"); *Hop Hing Produces Inc. v. X & L Supermarket, Inc.*, 2013 WL 1232919, *7 (E.D.N.Y. Mar. 4, 2013), R & R adopted, 2013 WL 1232483 (E.D.N.Y. Mar. 27, 2013) (reducing fee request for, *inter alia*, "excessive time spent on conferences between attorneys"); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 188 F. Supp. 3d 333, 342 (S.D.N.Y. 2016) (reducing fees requested on motion for fees for successful motion for sanctions, because "the submitted records reveal that Savad, Sobel, Storzer, and Stepanovich spent approximately 16 hours conferring with one another … yet it is not clear that such staffing was objectively necessary").

This Court has criticized law firms for this very practice.  *See Williams v. Metro-North R.R. Co.*, 2018 WL 3370678 (S.D.N.Y. June 28, 2018) ("it is highly unlikely counsel would be able to bill a client for this quantity of internal conferences").  In *Williams*, this Court reduced time billed to internal correspondence and conferences by 75%.  *Id.* at *10; *see also Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 541 (S.D.N.Y. 2008) (reducing time "spent on [internal] conferences"); *Ansoumana v. Gristede's Operating Corp.*, 2004 WL 504319, *4 (S.D.N.Y. Jan. 7, 2004) ("too many lawyers billed for services, and too much time was expended in briefings and meetings of too many people").

The Law Firms' decision to assign the work on the Motion to Compel to four attorneys no doubt greatly increased the frequency of internal communications. Any fees awarded to the Law Firms should be reduced substantially to account for this practice.

The Law Firms also seek to inflate their fees by billing their full rates for travel time. Pursuant to "established court custom," attorney travel time should be compensated at half-rate. *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 139 (2d Cir. 2008). Moreover, the Law Firms buried their travel time in other billing entries, precluding Barnes & Noble or the Court from adjusting their calculations. By way of example, the billing records include a five hour charge for attorney Marc Hepworth on October 10, 2019, for "ct conference re priv log and memo to file after and travel to and from and continued prep for same" (ECF No. 301-1 at p. 1). The Law Firms' fees should be reduced for their failure to separate and charge half rates for travel time.

### F. The Billing Practice and Irregularities Are Especially Concerning Given That the Law Firms Have Been Criticized in Other Cases for Them.

Several courts have criticized the Shavitz Law Group (which billed over 75% of the time sought on this application) for pursuing many of the same billing strategies they pursued here. *See, e.g., Stadmire v. Sawyer Property Management of Florida, LLC*, 2010 WL 3702532, *1 (M.D. Fl. Sept. 16, 2010) ("excessive" hours); *McKenzie v. Lindstrom Air Condition, Inc.*, 2010 WL 11505840, *3-4 (S.D. Fl. Aug 6, 2010) (excessive hours, lack of billing judgment and duplication of work); *Rody v. Pierce Mfg., Inc.*, 2009 WL 3418241, *1-2 (M.D. Fl. Oct. 20, 2009) (excessive hourly rates and lack of billing judgment); *Elliott v. Vozzcom, Inc.*, 2009 WL 10667818, *2 (S.D. Fl. 2009) (excessive rates and vague billing descriptions); *Estrada v. Security Roofing Sys.*, 2009 WL 10668280, *1, *5-12 (S.D. Fl. May 21, 2009) (excessive billing, inefficient staffing, duplication of work); *Godoy v. New River Pizza, Inc.*, 565 F.Supp.2d 1345, 1348 (S.D. Fl. 2008) (inconsistencies in billing records "inexplicable and sanctionable").

G.    **The Law Firms Cannot Recover Costs Without Substantiation.**

In seeking to recover their costs, the Law Firms bear the burden of demonstrating the "reasonableness" of "each charge." *Reiter*, 2019 WL 1641306 at *6 (citations omitted).  Their "failure to provide adequate documentation of costs incurred will limit, or even defeat, recovery." *Piedra v. Ecua Rest., Inc.*, 2018 WL 1136039, *20 (E.D.N.Y. Jan. 31, 2018).  Accordingly, "it is incumbent upon the party seeking reimbursement of its costs to provide the Court adequate substantiation in the form of receipts and other documents not only showing such costs were incurred, but that they were paid." *Cabrera v. Schafer*, 2017 WL 9512409, *4 (E.D.N.Y. Feb. 17, 2017).  A party that fails to adequately substantiate its costs are not entitled to recover them. *Reiter*, 2019 WL 1641306 at *6 (citations omitted); *Douyon v. NY Med. Health Care, P.C.*, 49 F. Supp. 3d 328, 352 (E.D.N.Y. 2014) ("with this record, the Court has no way of confirming that these costs … were incurred by counsel"); *Joe Hand Promotions, Inc. v. Elmore*, 2013 WL 2352855, *12 (E.D.N.Y. May 12, 2013) (declining to award costs due to inadequate documentation).

Here, the Law Firms assert in conclusory manner that they incurred $110.53 in FedEx costs.  (ECF No. 299 at p. 6).  In addition to the fact that nothing in their Motion to Compel required the use of FedEx, no award for costs should be issued to the Law Firms given that they have provided no receipts and, in any event, any such award should be reduced to reflect that they only prevailed in part on the Motion to Compel.

H.    **The Award.**

The Law Firms should not receive any award of fees or costs.  If the Court nonetheless issues an award, that award should be subject to an across-the-board reduction that accounts for:

- The Court's express finding that Barnes & Noble acted in good faith in connection with the Motion to Compel;

- The failure of the Law Firms to prevail on their primary argument:  that defense counsel improperly withheld the Privilege Log;

- The failure of the Law Firms to prevail on their secondary argument: that Barnes & Noble possessed advice from counsel regarding the proper classification of Café Managers;

- Knowingly making false accusations against defense counsel;

- Unreasonably high billing rates;

- Unnecessary work performed contrary to the Court's directions;

- The straightforward nature of this discovery dispute;

- The top-heavy manner in which the Law Firms assigned work;

- The excessive time that the Law Firms billed;

- Internal communications;

- Inconsistencies in the billing records;

- Block billing and indecipherable time entries;

- Billing in separate 0.1 increments for reading an ECF notice of filing;

- Billing full (instead of half) rate for travel time;

- Billing for tasks not related to the Motion to Compel; and

- No support for alleged costs.

The Law Firms seek an award of fees totaling $96,725 and costs totaling $110.53. For the reasons set forth above, a 50% reduction in the billable rates is appropriate in order to bring the rates within the norm. Applying that reduction results in total fees of $48,362.50, which should have been the starting point for the Law Firms' fee application. Given the failure of the Law Firms to prevail on their arguments and the amount of over-lawyering and billing irregularities, applying a further reduction of 95% is appropriate as the Law Firms spent less than 5% of their Motion to Compel explaining why documents should be produced under the fairness doctrine. The Law Firms should not recover costs, as they failed to provide support for them.

In total, the 95% reduction would result in fees of $2,418.13.  As set forth in Section II, that award should not be payable until the conclusion of the case.

## II.    ANY AWARD OF FEES SHOULD BE AWARDED AT THE CONCLUSION OF THE CASE.

The Court has discretion to decide the timing of the payment of discovery awards. *Industrial Aircraft Lodge 707 v. United Technologies Corp., Pratt & Whitney Aircraft Division*, 104 F.R.D. 471, 473 (D. Conn. 1985) ("A trial court has considerable discretion in determining which of the available discovery sanctions is most appropriate in a particular situation.  This discretion surely includes the power to determine when an award of costs imposed as a discovery sanction shall be paid").

The individual plaintiffs and opt-ins in this case will not receive any of the fees that the Law Firms currently seek.  Indeed, even if plaintiffs and opt-ins prevail in this case, their compensatory damages cannot approach the amount of the fees that the Law Firms have requested.  Meanwhile, Barnes & Noble is a nationwide employer dealing with a historic global health and economic crisis.  The impact of the current global pandemic is unprecedented and was unforeseeable.  At present, and as reported in the *New York Times* just today, all primarily brick and mortar, non-grocery retailers (such as Barnes & Noble) are and will be struggling with cash-flow interruptions in the near and medium term.[8]  The United States is presently experiencing events that it last experienced over a century ago.

Under these unusual circumstances, combined with the overreaching of the Law Firms—from the failed arguments they presented to the Court on their Motion to Compel to the

---

[8] "'Pretty Catastrophic' Month for Retailers, and Now a Race to Survive" by Sapna Maheshwari and Ben Casselman, April 15, 2020, updated at 12:58 p.m. ET (https://www.nytimes.com/2020/04/15/business/economy/coronavirus-retail-sales.html).

questionable billing practices—Barnes & Noble respectfully requests that any award of fees require payment as part of the final judgment in the lawsuit.

## <u>CONCLUSION</u>

For the reasons set forth above, Barnes & Noble respectfully requests that the Court deny plaintiffs' Motion for Fees and Costs or, in the alternative, to award a tiny fraction of the amount requested and schedule the timing for the conclusion of the case.

Respectfully submitted,

FAEGRE DRINKER BIDDLE & REATH LLP

By:  <u>/s/ Daniel H. Aiken</u>
     Daniel H. Aiken, Esq. (*pro hac vice*)
     One Logan Square, Suite 2000
     Philadelphia, Pennsylvania 19103-6996
     Telephone:  (215) 988-2942
     Facsimile:  (215) 988-2757
     E-mail:  daniel.aiken@faegredrinker.com

     William R. Horwitz, Esq.
     1177 Avenue of the Americas, 41st Floor
     New York, New York 10036-2714
     Telephone:  (212) 248-3140
     Facsimile:  (212) 248-3141
     E-mail:  william.horwitz@faegredrinker.com

     Brooke Razor, Esq.
     One Logan Square, Suite 2000
     Philadelphia, Pennsylvania 19103-6996
     Telephone:  (215) 988-2936
     Facsimile:  (215) 988-2757
     E-mail:  brooke.razor@faegredrinker.com

     Attorneys for Defendant
     Barnes & Noble, Inc.