**SHAVITZ LAW GROUP, P.A.**
800 3rd Avenue | Suite 2800 | New York, NY 10022
Tel 800-616-4000 | Fax 561-447-8831
www.shavitzlaw.com

February 25, 2021

**VIA ELECTRONIC CASE FILING**
Hon. Katharine H. Parker
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 17D
New York, NY 10007-1312

     Re:    *Brown, et al. v. Barnes & Noble, Inc.*, No. 16-cv-7333 (KHP)

Dear Judge Parker:

The parties submit this joint letter in support of the settlement in the above-referenced Fair Labor Standards Act ("FLSA") case. (Dkt. No. 340). The settlement agreement is attached as Exhibit A (the "Settlement Agreement"). The parties believe the settlement is a fair and reasonable resolution of disputed issues in the litigation and warrants approval under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). The parties are also submitting a proposed Order which is attached as Exhibit B.

    **I.**    **Summary of Claims, Defenses, and Negotiations**

Having been involved in the resolution of the case, we believe the Court is well aware of the litigation history that has led to the proposed settlement, making a comprehensive recitation of that history unnecessary. For context, we provide a brief procedural history.

On September 20, 2016, Plaintiff Kelly Brown initiated this lawsuit with the filing of a Complaint against Defendant Barnes & Noble, Inc. ("BN"). In the Complaint, Brown alleged that, during her employment as a Café Manager, BN had misclassified her as exempt and denied her overtime pay in violation of the FLSA and Illinois state law. (Dkt. No. 1). She sought to pursue claims on behalf of herself and on behalf of a putative class and a putative collective. (*Id.*). On November 9, 2016, Brown filed an Amended Complaint, adding Tiffany Stewart as a named plaintiff and adding claims under the New York Labor Law. (Dkt. No. 18). On November 22, 2016, Brown and Stewart (together, the "Named Plaintiffs") filed a Motion to Conditionally Certify a Collective Action and Issue Court-Authorized Notice. (Dkt. No. 25). On or about January 11, 2017, the parties participated in a Court-ordered mediation, however no agreement was reached. (Dkt. No. 33). Meanwhile, new individuals opted into the lawsuit (the "Opt-In Plaintiffs"). On May 2, 2017, the Court issued an Order denying the Motion for Conditional Certification and Court-Authorized Notice without prejudice. (Dkt. No. 51).

The parties then pursued discovery. On November 17, 2017, the Named Plaintiffs filed a Renewed Motion to Conditionally Certify a Collective Action and Issue Court-Authorized Notice. (Dkt. No. 105). On June 25, 2018, the Court denied Plaintiffs' Renewed Motion. (Dkt. No. 132).

The parties continued to pursue discovery with respect to the two Named Plaintiffs and 34 Opt-In Plaintiffs.

Throughout this litigation, the parties conducted a substantial amount of discovery regarding the claims and defenses in this case. Defense counsel deposed the Named Plaintiffs and ten Opt-In Plaintiffs. Plaintiffs' counsel deposed two BN corporate witnesses. The parties served and responded to hundreds of interrogatories and requests for production of documents. The parties also produced a combined total of approximately 80,000 pages of documents including electronically-stored information ("ESI"). They exchanged documents relating to various issues including café operations, Café Manager training and job duties, schedules, and personnel files.

Throughout the discovery period, the parties litigated many disputes including a motion to compel third-party discovery (Dkt. No. 166); motions to compel party discovery (Dkt. No. 178, 256); a motion for reconsideration (Dkt. No. 277); a motion for attorneys' fees and costs (Dkt. No. 298); and a motion to quash subpoenas (Dkt. No. 197). These motions resulted in many orders addressing hard fought discovery issues. There were also numerous Court conferences with Your Honor to discuss discovery issues, ESI, subpoenas, depositions, and good faith defenses. (*See*, *e.g.*, Dkt. Nos. 250, 267, 328, and 334). The Court also conducted a formal settlement conference on April 6, 2020, during which the parties tried unsuccessfully to resolve the claims.

In November and December 2020, with the Court's encouragement, the parties engaged in settlement discussions to try to reach a resolution of the claims. This time, counsel for the parties agreed to explore the possibility of settling on an individual (rather than a class) basis. The parties reached agreement on the settlement payment for the Named Plaintiffs and Opt-In Plaintiffs, and then reached agreement on the settlement payment for attorneys' fees and costs. On December 30, 2020, the parties submitted a Notice of Settlement to the Court. (Dkt. 339). On January 21, 2021, counsel for the parties filed a Consent to Jurisdiction by a U.S. Magistrate Judge. (Dkt. 343). The parties executed the Settlement Agreement and now seek approval of the negotiated settlement.

## II. Settlement Terms

The proposed settlement resolves the claims of the Named Plaintiffs and Opt-in Plaintiffs identified in Schedule A to the Settlement Agreement. (Ex. A). Certain key terms of the settlement are as follows:

Settlement Payment and Allocation: Barnes and Noble will make a total payment in the gross amount of $210,000.00 (less applicable withholding) to settle the claims of all Named Plaintiffs and Opt-In Plaintiffs. (Exhibit A at § 1). Of this amount, Brown and Stewart will each receive a service payment of $5,000. The remaining amount ($200,000) will be allocated to the Named Plaintiffs and Opt-In Plaintiffs, less applicable withholding, on a *pro rata* basis based on the number of workweeks each Named Plaintiff and Opt-In Plaintiff worked as a Barnes & Noble Café Manager during the relevant time period. In calculating allocations, a three-year period was used for non-New York Named Plaintiffs and Opt-In Plaintiffs, and a six-year period was used for New York Named Plaintiffs and Opt-In Plaintiffs. The longer time period was used for New York

Café Managers to account for the six-year statute of limitations under the New York Labor Law. Under the Settlement Agreement, BN will pay each Named Plaintiff's and Opt-In Plaintiff's share of the settlement amount in two checks. The gross amount of each check will constitute 50% of the total share allocated to the individual. One check will constitute payment for wages, subject to regular payroll deductions, and the other check will constitute payment for non-wage liquidated damages and interest. (*Id.* at § 2). Subject to certain conditions (such as receipt of required tax forms and no pending appeal), BN will deliver all payments from the $210,000.00 settlement amount (less applicable withholding) within 45 days after the Court issues an Order approving the settlement. (*Id.* at § 8).

Attorneys' Fees and Costs: The parties have agreed that BN will pay $700,000.00 to Plaintiffs' attorneys in full satisfaction of all claims for attorneys' fees and costs. (Ex. A at § 1.b).

Release and Dismissal of Claims: Each Named Plaintiff and Opt-In Plaintiff has agreed to dismiss his or her individual claims with prejudice in exchange for the settlement payments provided in the Settlement Agreement. (Ex. A at § 6). The release covers claims asserted (or that could have been asserted, based on the allegations of the Amended Complaint) in this case. The Settlement Agreement states:

> Each Plaintiff who executes this Agreement releases and forever discharges BN and its parents, subsidiaries, affiliates, predecessors, successors and assigns, and each of their respective past and present officers, directors, agents, representatives, attorneys and employees (collectively with BN, the "Released Parties") from any and all claims asserted or that could have been asserted in the Action against the Released Parties based on the factual allegations in the Amended Complaint arising under federal, state or local law at any time before the Plaintiff executes this Agreement including, without limitation, claims for failure to pay overtime, failure to pay wages, failure to pay minimum wage, and related claims including claims for penalties, interest, liquidated damages, sanctions, attorneys' fees, costs and expenses.

*Id.* at § 6.

The Settlement Agreement does not include a release of any claims unrelated to the factual allegations in the Amended Complaint. *Id.* Further, the Settlement Agreement does not contain a confidentiality provision.

### III. The Proposed Settlement is Fair and Reasonable

A court may approve a settlement of FLSA claims where it "reflect[s] a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Babayeva v. Halstead Mgmt. Co., LLC*, No. 16 Civ. 3794, 2018 WL 5997919, at *1 (S.D.N.Y. Nov. 15, 2018) (citation omitted); *see also Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). The parties here agree – and the Court has seen first-hand – that *bona fide* disputes exist over such issues as: (1) whether the Named Plaintiffs and Opt-In Plaintiffs were properly classified as exempt from overtime pay; (2) whether the Named Plaintiffs and Opt-In Plaintiffs worked more than 40 hours per week; (3) if the Named Plaintiffs

and Opt-In Plaintiffs worked more than 40 hours per week, the frequency with which they did so; (4) if Named Plaintiffs and Opt-In Plaintiffs worked more than 40 hours per week, the number of hours they worked; (5) whether the two-year (non-willful) or three-year (willful) statute of limitations should apply under the FLSA; and (6) if they prevail on the merits, whether Named Plaintiffs and Opt-In Plaintiffs would be able to recover liquidated damages.

When reviewing the fairness and reasonableness of FLSA settlements, courts consider the totality of circumstances including: (1) a plaintiff's range of possible recovery; (2) balancing burdens and costs of litigation with risks on liability; (3) whether the settlement was the result of arm's-length negotiations; (4) the possibility of fraud or collusion; (5) the likelihood that plaintiffs' circumstances will recur; and (6) whether a *bona fide* dispute exists as to the unpaid wage claims. *Wolinsky*, 900 F. Supp. 2d at 335.

### A. The Proposed Settlement Satisfies the *Wolinsky* Factors

Considering the *Wolinsky* factors, this is a very fair and reasonable settlement that ends four years of contested litigation. Absent settlement, it is likely that the parties would have had to litigate these claims for at least another year. With 36 Named Plaintiffs and Opt-In Plaintiffs, the trial would be a large and costly undertaking for both sides.

### 1. Range of Possible Recovery; Seriousness of Litigation Risks; *Bona Fide* Dispute (Factors 1, 2, and 6)

The parties agreed to resolve the Named Plaintiffs and Opt-In Plaintiffs' claims for $210,000. The Settlement Agreement provides for $5,000 service payments to be paid to the two Named Plaintiffs who brought this litigation to recognize their contribution to the result. The remaining $200,000 is allocated to the 36 Named Plaintiffs and Opt-In Plaintiffs primarily on a per workweek basis.[1] (Ex. A at Schedule A). The settlement amount per workweek is $96.37. According to Plaintiffs' counsel, based on their experience litigating manager misclassification claims such as the ones in this case, this is a great recovery.

When they worked as Café Managers for BN during the relevant time period, the Named Plaintiffs and Opt-In Plaintiffs earned an average annual salary of about $39,000. Converting that salary into an hourly rate would result in a rate of approximately $18.75 per hour. The overtime rate would be about $28 per hour using a time and a half calculation or about $9 per hour using a half time rate calculation. The parties dispute how to determine the overtime rate of pay, and the law is unsettled in the Second Circuit. Plaintiffs' counsel argued that any damages should be calculated using the time and one-half rate for overtime and defense counsel argued that the half-time measure of damages would apply. Depending on which approach one were to follow, for a workweek with five overtime hours, a Named Plaintiff or Opt-In Plaintiff's damages could range from $45 to $140. However, BN argued that, even if Named Plaintiffs and Opt-In Plaintiffs

---

[1] Two Opt-In Plaintiffs (Jacob Russo and Jimmy Rivers, Jr.) did not work at all as Café Managers for Barnes & Noble during the applicable FLSA period. However, the parties agreed to resolve their claims with a $250 payment to each.

sometimes worked more than 40 hours in a week, they did not regularly work as many as 45 hours per week. If a jury returned a verdict in favor of the Named Plaintiffs and Opt-In Plaintiffs but awarded damages based only on, for instance, two overtime hours per week rather than five, the recovery would only total between $16 and $56 per workweek.

Moreover, BN maintains that it properly classified Named Plaintiffs and Opt-In Plaintiffs as exempt employees and that they were not owed any overtime wages at all. Under these circumstances, a settlement for $96.37 per workweek for every Named Plaintiff and Opt-In Plaintiff is a reasonable compromise in balancing the risks.

This settlement also provides payment for all three years under the FLSA, despite risks that Named Plaintiffs and Opt-In Plaintiffs faced in proving a willful violation to extend the statute of limitations from two to three years. BN maintained that its Vice President of Human Resources monitored the classification of Café Managers and ensured that BN complied with the law. BN produced evidence of the role of the Vice President of Human Resources in this regard. Even if a jury had found in favor of the Named Plaintiffs and Opt-In Plaintiffs, such evidence could have convinced the jury that the purported violation was not willful and, as a result, that the FLSA's two-year statutory period should apply, greatly reducing the recovery.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (citations omitted). Furthermore, "[i]t is well settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Com'n of City & Cty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982). Instead, "there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank*, 228 F.R.D. 186. When a settlement assures quick payment of significant amounts, "even if it means sacrificing speculative payment of a hypothetically larger amount years down the road," settlement can be reasonable. *Schaubeck v. Morris Pharmacy, Inc.*, No. 17 Civ. 3909, 2018 WL 5292127, at *3 (S.D.N.Y. Oct. 25, 2018); *see also Ceesae v. TT's Car Wash Corp.*, No. 17 Civ. 291, 2018 WL 1767866, at *2 (E.D.N.Y. Jan. 3, 2018), *adopted by*, 2018 WL 741396, (net settlement of 50% of FLSA plaintiff's maximum recovery is reasonable); *Chowdhury v. Brioni America, Inc.*, No. 16 Civ. 344, 2017 WL 5953171 at *2 (S.D.N.Y. Nov. 29, 2017) (net settlement of 40% of FLSA plaintiffs' maximum recovery is reasonable); *Redwood v. Cassway Contracting Corp.*, No. 16 Civ. 3502, 2017 WL 4764486 at *2 (S.D.N.Y. Oct. 18, 2017) (net settlement of 29.1% of FLSA plaintiffs' maximum recovery is reasonable); *Santiago v. Church Avenue Express Inc.*, 2020 WL 597320, at *3 (E.D.N.Y., 2020). Moreover, courts have recognized that trial practice may "meaningfully decrease possible recovery for plaintiffs." *Flores v. Mama Lombardi's of Holdbrook, Inc.*, 2015 WL 2374515 at *5 (E.D.N.Y. May 18, 2015).

The proposed settlement here represents a fair and reasonable compromise, reached through extensive negotiations over contested issues. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes, and "regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Flores,* 104 F. Supp. 3d at 304-05 (E.D.N.Y. 2015). Where the proposed settlement

reflects a "reasonable compromise over contested issues," the court should approve a settlement agreement. *Id.*

A settlement now means that Named Plaintiffs and Opt-In Plaintiffs are assured a good outcome without the need to vigorously litigate each of their individual claims. BN denied (and continues to deny) all of the allegations. This settlement is fair and reasonable and reflects Plaintiffs' counsel's thorough assessment of the litigation risks on both sides.

### 2. Arm's-Length Bargaining Between Experienced Counsel; Absence of Fraud or Collusion; Unlikelihood that Plaintiffs' Claims Would Recur (Factors 3, 4, and 5)

The proposed settlement is the product of protracted arm's-length negotiations between the parties including during multiple mediations and settlement conferences. This was a fiercely and heavily contested litigation. Both sides were both represented by experienced wage and hour counsel who advocated aggressively on their clients' behalf, eliminating any concerns of fraud or collusion. *See Rodriguez-Hernandez v. K Bread & Co., Inc.*, No. 15 Civ. 6848, 2017 WL 2266874, at *4 (S.D.N.Y. May 23, 2017) (settlement approved where "plaintiff and defendant [were] represented by attorneys experienced in wage-and-hour litigation"); *Santos v. Yellowstone Props., Inc.*, No. 15 Civ. 3986, 2016 WL 2757427, at *3 (S.D.N.Y. May 10, 2016) (same). The fact that Plaintiffs' counsel negotiated a settlement for the Plaintiffs separately from their own attorneys' fees and costs also demonstrates that there was no collusion. *See In re MetLife Demutualization Litig.,* 689 F. Supp. 2d 297, 341 (E.D.N.Y. 2010) ("the absence of a specific determination of attorneys' fees as part of the Settlement favors the Settlement by demonstrating a lack of collusion between the parties"); *Slaughter v. Sykes Enterprises, Inc.*, No. 17 Civ. 2038, 2019 WL 529512, at *8 (D. Colo. Feb. 11, 2019) ("The parties negotiated the Fees and Expenses separately from, and after, they negotiated the Collective Members' settlement amount, and therefore the amount of the Collective Members' recovery was not reduced to account for Plaintiff's fees, and Plaintiff's Counsel's loyalty to their clients was not undermined by a simultaneous negotiation") (internal quotation marks omitted).

Lastly, there is no likelihood that the claims asserted in this case will recur because BN reclassified the Café Manager position from exempt to non-exempt status in October 2016 (before the lawsuit was filed).

### IV.   The Attorneys' Fees and Costs Settlement Is Fair and Reasonable

Plaintiffs' counsel and defense counsel negotiated an agreement for attorneys' fees and costs totaling $700,000, which includes the $25,300 in fees that the Court awarded Plaintiffs' counsel during discovery. (Dkt. No. 318). As a result of the recovery that Named Plaintiffs and Opt-In Plaintiffs will receive pursuant to this settlement, they are entitled to this reasonable fee and cost award under 29 U.S.C. § 216(b) of the FLSA. The parties reached agreement on the amount of the attorneys' fees and costs payment after agreeing to the amount that the Named Plaintiffs and Opt-In Plaintiffs would receive under the settlement. Plaintiffs' counsel has vigorously worked on this case for approximately four and a half years. They achieved a favorable settlement for

their clients with an average per-person recovery of $5,555. This figure will not be reduced by attorneys' fees or costs because the parties separately negotiated the fees and costs payment. *Id*.

According to Plaintiffs' counsel, to achieve this result, they expended significant resources including, but not limited to, investigating the claims; drafting pleadings; engaging in significant motion practice; attending numerous meet and confer sessions with defense counsel; filing multiple motions to compel discovery; attending multiple court conferences; reviewing approximately 80,000 pages of documents produced in discovery; conducting extensive ESI discovery; attending court ordered mediation and settlement conferences; preparing mediation submissions; taking and defending many depositions throughout the United States, and engaging in lengthy negotiations with defense counsel.

According to Plaintiffs' counsel, their lodestar totals $1,725,052.50 and their total costs are $68,971.34. (Declaration of Gregg I. Shavitz at ¶ 25). After deducting costs, Plaintiffs' counsel seek approval of a fee award of $631,028.66, which includes the $25,300 in attorneys' fees previously awarded by the Court in connection with Plaintiffs' motion to compel (ECF No. 318). According to Plaintiffs' counsel, this amount represents 36.6% of the actual incurred lodestar for 3,267 hours of work. (Declaration of Gregg I. Shavitz at ¶ 30). The accompanying declarations of Gregg I. Shavitz and Charles Gershbaum detail the work performed by Plaintiffs' counsel, summarize the hours worked by attorneys and staff members, and outline the costs incurred. (Declaration of Gregg I. Shavitz at ¶¶ 4-14, 23-30); (Declaration of Charles Gershbaum at pp. 3-7).[2]

According to Plaintiffs' counsel, they represented Named Plaintiffs and Opt-In Plaintiffs on a contingency basis and were not paid for any of their fees or any of the litigation costs. (Declaration of Gregg I. Shavitz at ¶¶ 31-32); (Declaration of Charles Gershbaum at p. 2). According to Plaintiffs' counsel, they took on great risk in bringing this case. As the record makes clear, defense counsel has litigated this case aggressively for more than four years. Plaintiffs' counsel litigated without assurances that they would receive any payment for their time or reimbursement of their out-of-pocket litigation expenses. (Declaration of Gregg I. Shavitz at ¶¶ 31-32); (Declaration of Charles Gershbaum at p. 2). According to Plaintiffs' counsel, they also had to turn down other litigation because of the massive effort needed to litigate this case. (Declaration of Gregg I. Shavitz at ¶ 31); (Declaration of Charles Gershbaum at p. 2). The Court should factor in this lost opportunity cost into its decision.

The FLSA requires courts to award prevailing plaintiffs "a reasonable attorney's fee . . . and costs of the action." 29 U.S.C. § 216(b). Here, Plaintiffs' counsel obtained a favorable result for each of their clients. Plaintiffs' counsel is entitled to recover fees and costs, because that work was instrumental in securing the positive result.

---

[2] If the Court would prefer, Plaintiffs' counsel can submit their time entries. In that event, Plaintiffs' counsel would request permission to submit them under seal because they include details about communications with clients and litigation strategy discussions.

Hon. Katharine H. Parker  
Page 8 of 8  
February 25, 2021  

    **V.**    **Conclusion**

    For the foregoing reasons, the parties respectfully request the Court approve the settlement as a fair and reasonable compromise of disputed issues.

                                    Respectfully submitted,

                                    Michael Palitz

cc:    Counsel of Record (*via ECF*)